**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ACCURIDE CORPORATION, *et al.*,[1] | ) | Case No. 24-12289 (JKS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DECLARATION OF
CHARLES MOORE, THE
DEBTORS' CHIEF RESTRUCTURING
OFFICER, IN SUPPORT OF DEBTORS'
MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING AND (B) USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) GRANTING LIENS AND
SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, (V)
SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

I, Charles Moore, hereby declare under penalty of perjury as follows:

1. I am a Managing Director at Alvarez & Marsal North America, LLC ("A&M") and the Chief Restructuring Officer of the above-captioned debtors and debtors in possession (collectively, the "Debtors").

2. I submit this declaration (this "Declaration") in support of the relief requested in the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay,*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Accuride Corporation (9077); Accuride Group Holdings, Inc. (4531); Accuride Intermediate Co., Inc. (9045); Accuride Distributing, LLC (3124); Accuride EMI, LLC (0389); Accuride Erie L.P. (4862); Accuride Henderson Limited Liability Company (8596); AKW General Partner, L.L.C. (4861); AOT, LLC (3088); Armor Parent Corp. (6684); Bostrom Holdings, Inc. (9282); Bostrom Seating, Inc. (7179); Gunite Corporation (9803); KIC LLC (6356); Transportation Technologies Industries, Inc. (2791); and Truck Components, Inc. (5407). The location of the Debtors' service address is: 38777 Six Mile Road, Suite 410, Livonia, MI 48152.

*(V) Scheduling a Final Hearing, and (VI) Granting Related Relief* (the "<u>DIP Motion</u>").[2] The DIP Motion seeks approval of the DIP Facility in the aggregate principal amount of $103 million. The DIP Facility comprises DIP New Money Loans in aggregate principal amount of $30 million (the "<u>DIP New Money Loans</u>"), of which $20 million will be available upon entry of the Interim Order. The DIP Facility also provides for DIP Roll-Up Loans in an aggregate principal amount of approximately $73 million, representing a roll-up and conversion on a cashless, dollar-for-dollar basis, of a corresponding amount of Prepetition Bridge Loans. The Debtors' Prepetition ABL Lenders and Prepetition Term Lenders also agreed, in connection with the DIP Facility, to the consensual use of Cash Collateral on the terms and conditions set forth in the Interim Order.

3.     I am over the age of 18 and authorized to submit this Declaration on behalf of the Debtors. Except as otherwise indicated, this Declaration is based upon my personal knowledge, my discussions with members of the Debtors' management team and advisors, and my review of relevant documents and information concerning the Debtors. If called as a witness, I would testify as follows.

## Professional Background and Qualifications

4.     I have served as the Chief Restructuring Officer of Accuride since June 26, 2024. I have thirty years of experience providing turnaround consulting and advisory services to organizations in a variety of industries, including as Managing Director at A&M.

5.     I have substantial experience serving either in senior management positions or as a restructuring advisor in large organizations and in assisting companies with stabilizing their financial condition, analyzing their operations, and developing a business plan to accomplish restructuring objectives. I am recognized for my work in the automotive industry and have advised

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Motion.

more than seventy-five companies in the industry across all parts segments.  I regularly advise Tier I and Tier II automotive suppliers, along with secured lenders and equity investors, on matters such as liquidity management, cost reductions, mergers & acquisitions, negotiations with customers and unions, and strategic planning.  I have served as Chief Restructuring Officer, for, among others, FirstEnergy Solutions, The Budd Company, Cynergy Data, Inc., and National Real Estate Information Services, Inc.  Additionally, I served as Chief Restructuring Advisor to Greektown Holdings, LLC and Greektown Casino, LLC during their chapter 11 proceedings and as Lead Operational Restructuring Advisor to the City of Detroit during its chapter 9 proceedings.

6. I received my Bachelor's degree and MBA from Michigan State University.  I am a Certified Public Accountant, a Certified Turnaround Professional, and am certified in Financial Forensics.  Prior to joining A&M, I was a Senior Managing Director at Conway MacKenzie, Inc., served as Chief Financial Officer for Horizon Technology Group (an automotive supplier), and began my career in the Management Solutions & Services group at Deloitte & Touche LLP.

7. I am familiar with the Debtors' capital structure, day-to-day operations, business and financial affairs, liquidity forecasts, and books and records.  Members of the A&M team and I have assisted the Debtors with their cash management and cash forecasting efforts, including contingency planning efforts, preparing thirteen-week budgets for the Debtors (including the initial Budget attached to the proposed Interim Order), and preparing financial forecasts to size the DIP Facility, among other things.

### A&M's Engagement

8. A&M has advised the Debtors since June 11, 2024. Over the course of its engagement, A&M has evaluated the Debtors' operations and cash requirements to operate their businesses, including by assisting in the development of the Debtors' near-term cashflow forecasts. In addition, A&M has assisted the Debtors in the development of their business plan, the

assessment of strategic alternatives, and financing-related workstreams. A&M has worked closely with the Debtors' management and other restructuring professionals and has become well-acquainted with the Debtors' capital structure, liquidity needs, cash flows, business operations, borrowing base reporting, and general operating details.

9. As part of an evaluation of the Debtors' liquidity position, A&M assisted in the development of the Debtors' thirteen-week cashflow forecasts as well as an analysis of the Debtors' longer-term liquidity needs. These forecasts take into account anticipated cash receipts and disbursements during the projected period and consider the effects of the chapter 11 filing, including incremental administrative costs of a complex chapter 11 filing, payments in connection with vendor-related motions, and chapter 11 financing-related assumptions. A&M ran a series of analyses to assess the Debtors' potential liquidity needs both during and following these chapter 11 cases.

## The Debtors' Immediate Need for DIP Financing and Access to Cash Collateral

10. Accuride is a highly complex multi-national business with global manufacturing and distribution operations. The Debtors enter these chapter 11 cases following an extended period of liquidity constraints driven by significant industry-wide and operational headwinds. Recent headwinds include demand shocks and supply chain pressure during and following the COVID-19 pandemic, prepetition vendor contraction resulting from prepetition liquidity management initiatives, and various international and litigation-related challenges, as described in my First Day Declaration. Further, as described in the First Day Declaration, although the Prepetition Bridge Loans provided the Debtors with crucial incremental liquidity, a portion of the cash proceeds of those Prepetition Bridge Loans were allocated to pay down the Debtors' and certain of their non-Debtor affiliates' existing Prepetition ABL Obligations to remain "in formula" under the Prepetition ABL Facility while the Debtors prepared to file these chapter 11 cases.

11. As part of the Debtors' chapter 11 preparations, the Debtors and their advisors reviewed and analyzed the Debtors' anticipated go-forward liquidity needs and the amount of postpetition financing required to support the Debtors' ongoing business operations and fund chapter 11 process costs. This analysis is reflected in the negotiated Approved 13-Week Cash Flow attached as <u>Exhibit 2</u> to the proposed Interim Order. The Approved 13-Week Cash Flow contains projections of the Debtors' anticipated cash receipts and disbursements during the thirteen-week period following the Petition Date. The analysis takes into account a number of factors, including (but not limited to) the effect of the chapter 11 filings on the Debtors' business operations, operational expenses and other payments anticipated to be made to the extent the Court approves certain first-day motions, the fees and interest expense associated with the DIP Facility, restructuring costs (including professional fees and adequate protection payments), required operational payments, and the potential acceleration of liquidity demands through working capital contraction.

12. Based on this analysis, the Debtors require incremental liquidity to prudently fund postpetition operations and chapter 11 process costs and show trade partners, customers, employees, and other constituents that the Debtors will continue to operate in the ordinary course and have sufficient liquidity to do so. Based on the Debtors' forecasts, the Debtors would be unable to generate sufficient levels of operating cash flow in the ordinary course of business to cover the projected restructuring costs of these chapter 11 cases without access to the postpetition financing provided by the DIP Facility.

13. As described in the First Day Declaration, the Debtors enter these chapter 11 cases with an agreement with their key economic stakeholders, including the DIP Lenders and the Prepetition ABL Lenders on the terms of a comprehensive restructuring of the Debtors' balance

sheet.  Through these chapter 11 cases, the Debtors seek to expeditiously propose and confirm a chapter 11 plan that will deleverage their balance sheet through an equitization of Prepetition Term Loans and provide access to exit financing, both of which are critical pillars of the Debtors' reorganization and eventual emergence from chapter 11.  Without access to Cash Collateral and the proceeds of the DIP Facility, I do not believe the Debtors will be able to avoid a near-term, value-destructive interruption to their businesses, to the detriment of the Debtors' estates, including the collateral packages of their secured lenders.

14. The additional liquidity provided by the DIP Facility and access to Cash Collateral are necessary for the Debtors to conduct their operations in the ordinary course, avoid significant business disruption, and minimize distractions as the Debtors' management and advisors continue to advance their restructuring efforts.  Access to a portion of this liquidity at the outset of these chapter 11 cases will convey a positive message to all stakeholders that the Debtors are adequately funded with the ability to satisfy operational obligations in the ordinary course.

## **Conclusion**

15. The DIP Facility and access to cash collateral are necessary to a successful chapter 11 process.  They will send a strong message to vendors, trade partners, and employees that the Debtors will continue to operate in the ordinary course and have sufficient liquidity to do so.  They are in the best interests of the Debtors' estates and all parties in interest.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Dated:  October 10, 2024                               */s/ Charles Moore*
                                                                              Charles Moore
                                                                              Chief Restructuring Officer
                                                                              Accuride Corporation