## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ACCURIDE CORPORATION, *et al.*,[1] | ) | Case No. 24-12289 (JKS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 24** |

### THIRD INTERIM ORDER
### (I) AUTHORIZING DEBTORS
### TO (A) OBTAIN POSTPETITION SENIOR
### SECURED FINANCING AND (B) USE CASH COLLATERAL,
### (II) GRANTING ADEQUATE PROTECTION, (III) GRANTING LIENS
### AND SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY,
### (V) SCHEDULING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of Accuride Corporation and the other above-captioned debtors and debtors in possession, as debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363, 364, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking, among other things, entry of interim and final orders:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Accuride Corporation (9077); Accuride Group Holdings, Inc. (4531); Accuride Intermediate Co., Inc. (9045); Accuride Distributing, LLC (3124); Accuride EMI, LLC (0389); Accuride Erie L.P. (4862); Accuride Henderson Limited Liability Company (8596); AKW General Partner, L.L.C. (4861); AOT, LLC (3088); Armor Parent Corp. (6684); Bostrom Holdings, Inc. (9282); Bostrom Seating, Inc. (7179); Gunite Corporation (9803); KIC LLC (6356); Transportation Technologies Industries, Inc. (2791); and Truck Components, Inc. (5407). The location of the Debtors' service address is: 38777 Six Mile Road, Suite 410, Livonia, MI 48152.

[2] On October 11, 2024, the Court entered the *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Senior Secured Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Granting Liens*

A.    authorizing (x) the DIP Borrower to obtain senior secured postpetition financing on a superpriority basis in the aggregate principal amount of up to $110 million (the "**DIP Facility**"), consisting of (1) up to $37 million of new money term loans (the "**DIP New Money Loans**")[3] and (2) roll-up loans in an aggregate principal amount of approximately $73 million representing a roll-up and conversion in full, on a cashless, dollar-for-dollar basis, of the Prepetition Bridge Loans (as defined below), and all accrued and unpaid interest, fees, and expenses with respect thereto (the "**DIP Roll-Up Loans**" and, together with the DIP New Money Loans, the "**DIP Loans**") upon entry of the First Interim Order, in each case, pursuant to the terms and conditions of that certain *Senior Secured Superpriority Debtor-in-Possession Credit Agreement* (as the same may be amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**DIP Credit Agreement**" and, together with any exhibits and schedules attached thereto and the other Loan Documents (as defined in the DIP Credit Agreement), the "**DIP Documents**"), by and among Accuride Corporation, as the borrower (in such capacity, the "**DIP Borrower**"), Armor Parent Corp., as holdings ("**Holdings**"), Accuride Intermediate Co., Inc., ("**MidCo**"), Accuride Group Holdings, Inc. ("**TopCo**"), Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "**DIP Agent**"), and the lenders party thereto from time to time (in such capacities, the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), substantially in the form attached to the First Interim Order as <u>Exhibit 1</u> and (y) each of the Debtors other than the DIP Borrower (collectively in such capacities, the "**DIP Guarantors**"), to guaranty the DIP Borrower's (and each other DIP Guarantors') obligations under the DIP Facility and under, or secured by, the DIP Documents (such obligations, together with all "Obligations" as defined in the DIP Credit Agreement, the "**DIP Obligations**");

B.    authorizing the Debtors to execute and enter into the DIP Documents and to perform such other acts as may be necessary or appropriate in connection with the same;

C.    authorizing the DIP Borrower to borrow up to an additional $7 million of DIP New Money Loans upon entry of this third interim order (the "**Third Interim Order**," and, together with the First Interim Order and the Second Interim Order

---

*and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 88] (the "**First Interim Order**"). On December 5, 2024, the Court entered the *Second Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Senior Secured Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief* [Docket No. 401] (the "**Second Interim Order**").

[3]    On December 23, 2024, the Court entered an order [Docket No. 496] approving the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief* [Docket No. 461] (the "**DIP Amendment Motion**"), which authorized the Debtors to amend the DIP Credit Agreement to increase the size of the DIP Facility by $7 million.

the "**Interim Orders**"), to avoid immediate and irreparable harm to the Debtors' estates;

D.    authorizing the roll-up and conversion of approximately $73 million in aggregate principal amount and accrued and unpaid interest, fees, and expenses with respect thereto of Prepetition Bridge Loans into DIP Roll-Up Loans upon the Closing Date (as defined in the DIP Credit Agreement);

E.    granting the DIP Obligations the status of allowed superpriority administrative expense claims in each of the Chapter 11 Cases, which, for the avoidance of doubt, shall be subject to the Carve Out (as defined below) in all respects;

F.    granting to the DIP Agent, for the benefit of the DIP Secured Parties, to secure the DIP Obligations, valid, enforceable, binding, non-avoidable, and fully perfected first priority priming liens on and security interests in all of the DIP Collateral (as defined below), including, without limitation, all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), which liens shall have the priorities set forth herein and shall be subject to the Carve Out; provided that in no event shall DIP Collateral include DIP Excluded Property (as defined herein) or funds held in the Funded Reserve Account (other than the Debtors' reversionary interest, if any, therein, after all Allowed Professional Fees benefitting from the Carve Out have been indefeasibly paid in full, in cash);

G.    authorizing and directing the Debtors to pay the principal, interest, premiums, fees, expenses, and other amounts payable under the DIP Documents as such become due and payable, including:

    (i)    upon entry of the First Interim Order:  (a) an upfront fee equal to 5.00% of the aggregate principal amount of the New Money DIP Loans, payable in kind, ratably to each DIP Lender; and (b) a backstop fee equal to 5.00% of the aggregate amount of the Term Commitments, payable in kind, to Jefferies Capital Services LLC in its capacity as fronting lender, which will be distributed to certain backstop parties;

    (ii)    subject to entry of the Final Order:  (a) an exit fee equal to 2.00% of the aggregate principal amount of DIP Loans that are repaid on the Maturity Date or on any other date on which DIP Loans are repaid; and (b) a sale premium equal to 10.00% of the sum of (1) the Term Commitments (as defined in the DIP Credit Agreement) and (2) the aggregate principal amount of the DIP Roll-Up Loans, in each case, made available on the closing date of the DIP Credit Agreement, payable in cash upon the consummation of a sale or sales of substantially all of the assets or equity of the Debtors;

H.    authorizing the Debtors to execute, deliver, and perform under the ABL Fee Letters with the Prepetition ABL Secured Parties (as may be amended, restated,

supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**ABL Fee Letters**");

I.    authorizing the Debtors to use the Prepetition Collateral (as defined below) of the Prepetition Secured Parties (as defined below), including Cash Collateral, and provide adequate protection, as and to the extent set forth herein, to the Prepetition Secured Parties against any diminution in value of their respective interests in the Prepetition Collateral from and after the Petition Date, including, as applicable, with respect to the Cash Collateral (any such diminution, "**Diminution in Value**");

J.    authorizing the Debtors to renew letters of credit and obtain cash management services from the Prepetition ABL Secured Parties, granting the Postpetition ABL Obligations the status of allowed superpriority administrative claims in the Chapter 11 Cases, granting the Prepetition ABL Agent the liens set forth herein to secure the Postpetition ABL Obligations and authorizing and directing the Debtors to pay obligations under the Postpetition ABL Obligations as such amounts become due and payable in accordance with the terms thereof;

K.    lifting and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents;

L.    subject to entry of the Final Order (as defined below), waiving the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or any of the DIP Collateral, as applicable;

M.    subject to entry of the Final Order, waiving the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral;

N.    scheduling a date for the hearing (the "**Final Hearing**") to consider the Motion on a final basis and the entry of a final order (the "**Final Order**") authorizing and approving the transactions described in the foregoing clauses and the Motion; and

O.    waiving any applicable stay with respect to the effectiveness and enforceability of the Interim Orders (including a waiver pursuant to Bankruptcy Rule 6004(h)).

This Court having reviewed the Motion and the exhibits attached thereto, the DIP Amendment Motion, the *Declaration of Charles M. Moore, Chief Restructuring Officer of Accuride Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"), the *Declaration of Alexander Svoyskiy in Support of the Debtors' Motion for Entry*

4

*of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "**Svoyskiy Declaration**"), the *Declaration of Charles M. Moore in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "**Moore Declaration**") and the *Declaration of Charles Moore, Chief Restructuring Officer of Accuride Corporation, in Support of the Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief* [Docket No. 491] (the "**DIP Amendment Declaration**" and, together with the Svoyskiy Declaration and the Moore Declaration, the "**DIP Declarations**"), and the evidence submitted at the interim hearing on the Motion held on October 11, 2024 (the "**Interim Hearing**");; and notice of the Motion, the Interim Hearing, and the DIP Amendment Motion having been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules; and this Court having determined that the legal and factual bases set forth in the Motion and the DIP Amendment Motion establish just cause for the relief granted herein and that such relief is in the best interests of the Debtors and their estates and creditors and all parties in interest and is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing; and any objections to the Motion having been withdrawn or overruled on the merits; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[4]

A.      **Petition Date**.    On October 9, 2024 (the "**Petition Date**"), the Debtors each commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.

B.      **Debtors in Possession**.    The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed in these Chapter 11 Cases.

C.      **Jurisdiction and Venue**.    This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.    Venue for the Chapter 11 Cases and proceeding on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      **Committee Formation**.    On October 22, 2024, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**") pursuant to section 1102 of the Bankruptcy Code [Docket No. 127].

E.      **Notice**.    Notice of the Motion, the Interim Hearing, and the DIP Amendment Motion has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules, and the

---

[4]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.    To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.    To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Local Rules, and no other or further notice of the Motion or the DIP Amendment Motion with respect to the relief requested at the Interim Hearing or the entry of this Third Interim Order shall be required. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, for purposes of Bankruptcy Rule 4001.

   F. **<u>Debtors' Stipulations</u>**. Without prejudice to the rights of any other party in interest specifically set forth in, and subject to the limitations thereon contained in, paragraph 44 below, the Debtors admit, acknowledge, agree, and stipulate to the following, which stipulations were binding, effective upon entry of the First Interim Order, and, upon entry of this Third Interim Order, shall hereby remain binding, on the Debtors, the Debtors' estates, and all other parties in interest (collectively, the "**Debtors' Stipulations**"):

    i. *Prepetition ABL Facility*. Pursuant to that certain Amended and Restated ABL Credit Agreement, dated as of June 1, 2018 (as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**Prepetition ABL Credit Agreement**" and, together with the other Loan Documents, Secured Hedge Agreements and Secured Cash Management Agreements (each as defined in the Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**Prepetition ABL Documents**"), among, *inter alios*, (I) Accuride Corporation, as the U.S. borrower (in such capacity, the "**Prepetition ABL U.S. Borrower**"), (II) Accuride Wheels Troyes SAS, a simplified joint stock company (*société par actions simplifiée*) existing under the laws of France, Accuride Wheels Solingen GmbH, a limited liability company (*Gesellschaft mit beschränkter Haftung*) existing under the laws of Germany,

Accuride Wheels Ebersbach GmbH, a limited liability company (*Gesellschaft mit beschränkter Haftung*) existing under the laws of Germany, and Accuride Wheels Ronneburg GmbH, a limited liability company (*Gesellschaft mit beschränkter Haftung*) existing under the laws of Germany (collectively, the "**Prepetition ABL Foreign Borrowers**" and, together with the Prepetition ABL U.S. Borrower, the "**Prepetition ABL Borrowers**"), (III) Holdings, (IV) Bank of America, N.A., as administrative agent and collateral agent (in such capacities, the "**Prepetition ABL Agent**"), and (V) the lending institutions party thereto from time to time, including the L/C Issuers (as defined in the Prepetition ABL Credit Agreement) (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agent and all other holders of Prepetition ABL Obligations (as defined herein), the "**Prepetition ABL Secured Parties**"), the Prepetition ABL Lenders provided revolving loans, swingline loans, letters of credit and other financial accommodations to, or for the benefit of, the Prepetition ABL Borrowers (collectively, the "**Prepetition ABL Facility**"). Pursuant to (i) that certain Amended and Restated Guaranty, dated as of June 1, 2018 (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "**Prepetition ABL U.S. Guaranty**"), Holdings and certain U.S. subsidiaries of Holdings (in such capacities, the "**Prepetition ABL U.S. Guarantors**" and, together with the Prepetition ABL U.S. Borrower, the "**Prepetition ABL U.S. Obligors**") guaranteed the Obligations (as defined in the Prepetition ABL Credit Agreement) and (ii) that certain Guaranty, dated as of June 1, 2018 (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "**Prepetition ABL German Guaranty**"), certain German subsidiaries of Holdings (in such capacities, the "**Prepetition ABL German Guarantors**" and, together with the Prepetition ABL Foreign Borrowers, the "**Prepetition ABL Foreign Obligors**"; the Prepetition ABL Foreign

Obligors, together with the Prepetition ABL U.S. Obligors, the "**Prepetition ABL Obligors**") guaranteed the Foreign Obligations (as defined in the Prepetition ABL Credit Agreement).

        ii.    *Prepetition ABL Obligations*. As of the Petition Date, the Prepetition ABL Obligors were lawfully indebted to the Prepetition ABL Secured Parties, without defense, counterclaim, or offset of any kind, in an amount of not less than (i) $52,849,691.80 in aggregate principal amount of revolving loans made to the Prepetition ABL U.S. Borrower, $20,265,099.60 in undrawn U.S. Letters of Credit (as defined in the Prepetition ABL Credit Agreement) and all Secured Cash Management Obligations (as defined in the Prepetition ABL Credit Agreement), *plus* accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), cash management obligations, indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL U.S. Obligors' obligations pursuant to the Prepetition ABL Documents, including all "U.S. Obligations" (as defined in the Prepetition ABL Credit Agreement), in each case, whether arising before, on or after the Petition Date (collectively, the "**Prepetition ABL U.S. Obligations**"), and (ii) €22,885,824.34 in aggregate principal amount of revolving loans made to the Prepetition ABL Foreign Borrowers, *plus* accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition ABL Foreign Obligors' obligations pursuant to the Prepetition

ABL Documents, including all "Foreign Obligations" (as defined in the Prepetition ABL Credit Agreement), in each case, whether arising before, on or after the Petition Date (collectively, the "**Prepetition ABL Foreign Obligations**" and, together with the Prepetition ABL U.S. Obligations, the "**Prepetition ABL Obligations**"), all of which Prepetition ABL Obligations shall constitute allowed secured claims under sections 502 and 506 of the Bankruptcy Code against each of the Debtors' estates except for the estates of Accuride Group Holdings, Inc. and Accuride Intermediate Co., Inc.

   iii. *Prepetition ABL Liens and Prepetition ABL Collateral*. Pursuant to the Prepetition ABL Documents, as of the Petition Date, (i) the Prepetition ABL U.S. Obligations are secured by valid, binding, perfected, and enforceable security interests in and continuing liens on all "U.S. Collateral" (as such term is defined in the Prepetition ABL Credit Agreement), whether now owned or existing or hereafter acquired or arising (the "**Prepetition ABL U.S. Collateral**"; the liens on and security interests in the Prepetition ABL U.S. Collateral, the "**Prepetition ABL U.S. Liens**"), for the benefit of the Prepetition ABL Secured Parties, and the Prepetition ABL Obligations were fully secured as of the Petition Date by the Prepetition ABL U.S. Liens; and (ii) the Prepetition ABL Foreign Obligations are secured by valid, binding, perfected, and enforceable security interests in and continuing liens on all "Foreign Collateral" and "U.S. Collateral" (as such terms are defined in the Prepetition ABL Credit Agreement), whether now owned or existing or hereafter acquired or arising (the "**Prepetition ABL Foreign Collateral**" and, together with the Prepetition ABL U.S. Collateral, the "**Prepetition ABL Collateral**"; the liens on and security interests in the Prepetition ABL Foreign Collateral, the "**Prepetition ABL Foreign Liens**" and, together with the Prepetition ABL U.S. Liens, the "**Prepetition ABL Liens**"), for the benefit of

the Prepetition ABL Secured Parties, and the Prepetition ABL Foreign Obligations were fully

secured as of the Petition Date by the Prepetition ABL Foreign Liens.

        iv.    *Validity, Perfection, and Priority of Prepetition ABL Liens and Prepetition*

*ABL Obligations.*  As of the Petition Date, (I) the Prepetition ABL Liens on the Prepetition ABL

Collateral are valid, binding, enforceable, non-avoidable, and properly and fully perfected, and

were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration

and reasonably equivalent value, contemporaneously with, or covenanted to be provided as

inducement for, the making of loans and/or the commitments and other financial accommodations

or consideration secured or obtained thereby; (II) the Prepetition ABL Liens are senior in priority

over any and all other liens on the Prepetition ABL Collateral, subject only to the Prepetition Term

Liens on the Term Priority Collateral (as defined in the Prepetition Intercreditor Agreement (as

defined below), and, together with any other assets (including assets that are unencumbered as of

the Petition Date) of the same nature, scope and type as Term Priority Collateral (as defined in the

Prepetition Intercreditor Agreement) the "**Term Priority Collateral**") and certain liens

permitted by the Prepetition ABL Documents, in each case, to the extent that such existing liens

were valid, non-avoidable, senior in priority to the Prepetition ABL Liens (and permitted by the

Prepetition ABL Documents to be senior in priority to the Prepetition ABL Liens) and properly

perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and

are properly perfected subsequent to the Petition Date as permitted by Section 546(b) of the

Bankruptcy Code) (such permitted liens, the "**ABL Permitted Liens**"); (III) the Prepetition ABL

Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition ABL

Obligors, enforceable in accordance with the terms of the applicable Prepetition ABL Documents;

(IV) no offsets, recoupments, challenges, objections, defenses, or counterclaims of any kind or

nature to any of the Prepetition ABL Liens or Prepetition ABL Obligations exist, and no portion

of the Prepetition ABL Liens, Prepetition ABL Obligations or any payment made at any time to

any of the Prepetition ABL Secured Parties or applied or paid on account of the obligations owing

under the Prepetition ABL Documents is subject to any challenge or defense, including, without

limitation, avoidance, disallowance, reduction, setoff, disgorgement, recharacterization, or

subordination (equitable or otherwise), or any other claim or cause of action of any kind or nature

whatsoever,  pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (V) the Debtors

and their estates have no claims, objections, challenges, causes of action, and/or choses in action,

including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or

applicable state law equivalents or actions for recovery or disgorgement, against any of the

Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, or employees, arising out of, based upon, or related to the

Prepetition ABL Facility; and (VI) the Debtors have waived, discharged, and released any right to

challenge any of the Prepetition ABL Obligations, the priority of the Debtors' obligations

thereunder, or the validity, extent, or priority of the Prepetition ABL Liens.

      v.    *Prepetition Term Facility*.  Pursuant to that certain Term Loan Credit

Agreement, dated as of November 18, 2016 (as amended, restated, amended and restated,

supplemented, waived and/or otherwise modified from time to time, the "**Prepetition Term**

**Credit Agreement**" and, collectively with the other Loan Documents (as defined in the Prepetition

Term Credit Agreement) and any other agreements and documents executed or delivered in

connection therewith, each as amended, restated, amended and restated, supplemented, waived

and/or otherwise modified from time to time, the "**Prepetition Term Documents**" and, together

with the Prepetition ABL Documents, the "**Prepetition Debt Documents**"), among (I) Accuride

Corporation, a Delaware corporation (in such capacity, the "**Prepetition Term Borrower**"), (II) Holdings, and (III) Alter Domus (US) LLC, as administrative agent and collateral agent (in such capacities, the "**Prepetition Term Agent**" and, together with the Prepetition ABL Agent, the "**Prepetition Agents**") and (V) the lending institutions from time to time party thereto (the "**Prepetition Term Lenders**" and, together with the Prepetition Term Agent, the "**Prepetition Term Secured Parties**;" the Prepetition Term Lenders, together with the Prepetition ABL Lenders, the "**Prepetition Lenders**;" the Prepetition Term Secured Parties, together with the Prepetition ABL Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition Term Lenders provided term loans to the Prepetition Term Borrower (the "**Prepetition Term Facility**" and, together with the Prepetition ABL Facility, the "**Prepetition Secured Facilities**") in the form of (x) 2023 Extended Term Loans (as defined in the Prepetition Term Credit Agreement) and (y) Amendment No. 14 Incremental Term Loans (as defined in the Prepetition Term Credit Agreement, the "**Prepetition Bridge Loans**" and, together with the 2023 Extended Term Loans, the "**Prepetition Term Loans**").  Pursuant to that certain Guaranty Agreement, dated as of November 18, 2016 (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "**Prepetition Term Guaranty**"), Holdings and certain U.S. subsidiaries of Holdings (in such capacities, the "**Prepetition Term Guarantors**" and, together with the Prepetition Term Borrower, the "**Prepetition Term Obligors**") guaranteed the Obligations (as defined in the Prepetition Term Credit Agreement).

        vi.    *Prepetition Term Obligations*.  As of the Petition Date, the Prepetition Term Obligors were lawfully indebted to the Prepetition Term Secured Parties, without defense, counterclaim, or offset of any kind, in respect of the Prepetition Term Loans, in an aggregate outstanding principal amount, as of the Petition Date, exclusive of accrued but unpaid interest,

costs, fees, and expenses, not less than $363,810,618.73 (including of $290,758,564.53 of aggregate principal amount of 2023 Extended Term Loans and $73,052,054.20 of aggregate principal amount of Prepetition Bridge Loans) (together with accrued and unpaid interest, fees, expenses, and disbursements (including, without limitation, any accrued and unpaid attorneys' fees, accountants' fees, appraisers' fees, and financial advisors' fees and related expenses and disbursements), indemnification obligations, and other charges, amounts, and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Term Obligors' obligations pursuant to the Prepetition Term Documents, including all "Obligations" as defined in the Prepetition Term Credit Agreement, in each case, as of the Petition Date, and all interest, fees, costs, and other charges allowable under Section 506(b) of the Bankruptcy Code (the "**Prepetition Term Obligations**," together with the Prepetition ABL Obligations, the "**Prepetition Obligations**"), which Prepetition Term Obligations shall constitute allowed claims under section 502 of the Bankruptcy Code against each of the Debtors' estates except for the estates of Accuride Group Holdings, Inc. and Accuride Intermediate Co., Inc.

vii.    *Prepetition Term Liens and Prepetition Term Collateral*.  Pursuant to the Prepetition Term Documents, as of the Petition Date, the Prepetition Term Obligations are secured by valid, binding, perfected, and enforceable security interests in and continuing liens on all "Collateral" (as such term is defined in the Prepetition Term Credit Agreement), whether now owned or existing hereafter acquired or arising (the "**Prepetition Term Collateral**"; the liens on and security interests in the Prepetition Term Collateral, the "**Prepetition Term Liens**" and, together with the Prepetition ABL Liens, the "**Prepetition Liens**", and the Prepetition Term

Collateral, together with the Prepetition ABL Collateral, the "**Prepetition Collateral**"), for the benefit of the Prepetition Term Secured Parties.

viii.    *Validity, Perfection, and Priority of Prepetition Term Liens and Prepetition Term Obligations.*  As of the Petition Date, (I) the Prepetition Term Liens on the Prepetition Term Collateral are valid, binding, enforceable, non-avoidable, and properly and fully perfected, and were granted to, or for the benefit of, the Prepetition Term Secured Parties for fair consideration and reasonably equivalent value, contemporaneously with, or covenanted to be provided as inducement for, the making of loans and/or the commitments and other financial accommodations or considerations secured or obtained thereby; (II) the Prepetition Term Liens are senior in priority over any and all other liens on the Prepetition Term Collateral, subject only to the Prepetition ABL Liens on the ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement (as defined below) and, together with any other assets (including assets that are unencumbered as of the Petition Date) of the same nature, scope and type as ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement), the "**ABL Priority Collateral**") and certain liens permitted by the Prepetition Term Documents (in each case, to the extent that such existing liens were valid, non-avoidable, senior in priority to the Prepetition Term Liens (and permitted by the Prepetition Term Documents to be senior in priority to the Prepetition Term Liens) and properly perfected as of the Petition Date (or were in existence immediately prior to the Petition Date and are properly perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code) (such permitted liens, the "**Term Permitted Liens**", and together with the ABL Permitted Liens, the "**Permitted Liens**"); (III) the Prepetition Term Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Term Obligors, enforceable in accordance with the terms of the applicable Prepetition Term Documents; (IV) no offsets, recoupments, challenges,

objections, defenses, or counterclaims of any kind or nature to any of the Prepetition Term Liens or Prepetition Term Obligations exist, and no portion of the Prepetition Term Liens, Prepetition Term Obligations, or any payment made at any time to any of the Prepetition Term Secured Parties or applied or paid on account of the obligations owing under the Prepetition Term Documents is subject to any challenge or defense, including, without limitation, avoidance, disallowance, reduction, setoff, disgorgement, recharacterization, or subordination (equitable or otherwise), or any other claim or cause of action of any kind or nature whatsoever, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (V) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement against any of the Prepetition Term Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, arising out of, based upon, or related to the Prepetition Term Facility; and (VI) subject to paragraph 31, the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Term Obligations, the priority of the Debtors' obligations thereunder, or the validity, extent, or priority of the Prepetition Term Liens.

ix.     *Cash Collateral.* All of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Parties, subject in all respects to the Prepetition Intercreditor Agreement; provided that the DIP Account shall solely constitute DIP Collateral subject solely to the DIP Liens in accordance with the terms hereof.

x.    *Not Control Persons or Insiders*.  Pursuant to the First Interim Order and the Second Interim Order, the Debtors stipulated, and pursuant to this Third Interim Order, the Debtors further affirm such stipulation that by virtue of any of the actions taken with respect to, in connection with, related to or arising from the Prepetition Debt Documents, the Prepetition Secured Parties do not control the Debtors or their properties or operation or have authority to determine the manner in which the Debtors' operations are conducted, and are not control persons or insiders of the Debtors.

G.    **Cash Collateral**.  The Debtors were by the First Interim Order and Second Interim Order, and hereby are authorized, subject to the terms and conditions of the Interim Orders, to use Cash Collateral strictly in accordance with the Approved 13-Week Cash Flow (as defined below) (subject to any Permitted Variances (as defined below)); provided, however, (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of the Interim Orders, the Debtors shall be enjoined and prohibited from at any time using the Cash Collateral absent further order of the Court.  The Debtors' authority to use Cash Collateral shall terminate upon the earlier of expiration of the Approved 13-Week Cash Flow and the occurrence of the Cash Collateral Termination Date.

H.    **Intercreditor Agreements**.  Pursuant to section 510 of the Bankruptcy Code, that certain (x) Amended and Restated ABL Intercreditor Agreement, dated as of June 1, 2018 (as amended, restated, amended and restated, supplemented, waived and/or otherwise modified from time to time, the "**Prepetition Intercreditor Agreement**"), by and between the Prepetition ABL Agent and the Prepetition Term Agent and (y) each other applicable intercreditor or subordination provisions contained in any of the other Prepetition Debt Documents (including the Intercreditor Annex (as defined in the Prepetition Term Credit Agreement)), (i) shall remain in full force and

effect, (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition

Secured Parties (including the relative priorities, rights, and remedies of such parties with respect

to the replacement liens, administrative expense claims, and superpriority administrative expense

claims granted or the amounts payable by the Debtors under the Interim Orders or otherwise), and

(iii) shall not be deemed to be amended, altered, or modified by the terms of any Interim Order or

the DIP Documents, unless expressly set forth herein or therein.

      I.    **Permitted Prior Liens; Continuation of Prepetition Liens**.  Nothing herein shall

constitute a finding or ruling by this Court that any lien (i) other than the Prepetition ABL Liens,

the Prepetition Term Liens and the liens granted hereunder, is valid, enforceable, perfected, or

non-avoidable or (ii) other than as set forth in the Prepetition Intercreditor Agreement or the

Interim Orders, is senior to any of the Prepetition ABL Liens and/or the Prepetition Term Liens.

Moreover, and subject in all respects to the Prepetition Intercreditor Agreement, nothing shall

prejudice the rights of any party in interest, including, but not limited to, the Debtors, the DIP

Agent, the DIP Lenders, the Prepetition Secured Parties, or the Committee, to challenge the

validity, priority, enforceability, seniority, avoidability, perfection, or extent of any asserted lien

that is not the subject of the stipulations granted pursuant to paragraph F hereof.

      J.    **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

      i.    *Request for Postpetition Financing and Use of Cash Collateral*.  The

Debtors seek authority (a) for the Debtors to enter into the DIP Facility, incur the DIP Obligations,

renew Letters of Credit, obtain Cash Management Services and incur the Postpetition ABL

Obligations on the terms described herein and in the DIP Documents and (b) for the Debtors to

use Cash Collateral on the terms described herein, in each case, to, among other things, administer

their Chapter 11 Cases and fund their operations.

ii.      *Priming of the Prepetition Liens*.  The priming of the Prepetition Term Liens and Prepetition ABL Liens (except with respect to ABL Priority Collateral) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Documents and as provided herein, will enable the Debtors to obtain the DIP Facility and Cash Management Services and the Debtors to continue to operate their business during the pendency of the Chapter 11 Cases, for the benefit of their estates and creditors.   The Prepetition Secured Parties are entitled to receive adequate protection, as set forth in each Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, against any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date.  For the avoidance of doubt, the DIP Liens shall not prime, and shall instead be subject and subordinate in all respects to, the Prepetition ABL Liens on all ABL Priority Collateral.

iii.     *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors have demonstrated an immediate need to use Cash Collateral on an interim basis and to obtain credit in the form of the DIP New Money Loans under the DIP Facility, renewed Letters of Credit and Cash Management Services in order to, among other things, continue their ordinary course operations, administer these Chapter 11 Cases, and preserve the going-concern value of their estates.

iv.      *No Credit Available on More Favorable Terms*.  The DIP Facility and the Postpetition ABL Obligations are the best sources of debtor-in-possession financing reasonably available to the Debtors at this time.   Given their current financial condition, financing arrangements, and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders and Prepetition ABL Secured Parties on terms more favorable than the DIP Facility and the Postpetition ABL Obligations.  The Debtors are

unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense.  The Debtors have also been unable to obtain: (a) adequate

unsecured credit having priority over that of administrative expenses of the kind specified in

sections 503(b), 507(a), and 507(b) of the Bankruptcy Code; (b) adequate credit secured solely by

a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or

(c) adequate credit secured solely by a junior lien on property of the Debtors and their estates that

is subject to a lien.  Financing on a postpetition basis on better terms is not available without

granting the DIP Agent, for the benefit of itself and the DIP Lenders and the Prepetition ABL

Agent, solely for the benefit of the Cash Management Banks and L/C Issuers (as applicable),

(1) perfected security interests in and liens on (each as provided herein) the DIP Collateral (as

defined below), with the priorities set forth herein; (2) superpriority claims; and (3) the other

protections set forth in the Interim Orders.

    v.  *Use of Cash Collateral and Proceeds of the DIP Facility*.  As a condition to

entry into the DIP Credit Agreement, the extension of credit under the DIP Facility, the provision

of Cash Management Services, the renewal of Letters of Credit and the authorization to use the

Prepetition Collateral, including Cash Collateral, the DIP Agent, the DIP Lenders, and the

Prepetition Secured Parties require, and the Debtors have agreed, that proceeds of the DIP Facility

and Cash Management Services and the Cash Collateral shall be used solely in a manner permitted

by the terms and conditions of each Interim Order and the DIP Documents and in accordance with

the Approved 13-Week Cash Flow (including with respect to any Permitted Variances), solely for

the purposes set forth in the DIP Credit Agreement and the Interim Orders, including (a) ongoing

working capital, capital expenditures, other general corporate purposes of the Debtors and any

other purpose not prohibited by the DIP Credit Agreement; (b) permitted payment of costs of

administration of the Chapter 11 Cases; (c) payment of such prepetition expenses as consented to by the DIP Agent, acting at the direction of the Required Lenders (as defined in the DIP Credit Agreement, the "**Required DIP Lenders**") and the Prepetition ABL Agent; (d) payment of interest, premiums, fees, expenses, and other amounts (including, without limitation, the fees and expenses of the DIP Agent and the Prepetition ABL Agent and the legal and other professionals' fees and expenses of the DIP Agent, the DIP Lenders and the Prepetition ABL Agent) owed under the DIP Documents and the Prepetition ABL Documents, including those incurred in connection with the preparation, negotiation, documentation, and Court approval of the DIP Facility and the Interim Orders; (e) payment of the adequate protection amounts to the Prepetition Secured Parties, as set forth in paragraph 15 hereof; and (f) payment of obligations benefitting from the Carve Out (as defined below), and making disbursements therefrom, including by funding the Carve Out Reserve Account (as defined below); provided that, for the avoidance of doubt, and notwithstanding anything herein or in the DIP Documents (including the DIP Credit Agreement) to the contrary, in no instance shall the Debtors' use of Collateral (including Cash Collateral) to pay obligations benefiting from the Carve Out, including Professional Fees, be limited or deemed limited by any Approved 13-Week Cash Flow. The Debtors believe that the Approved 13-Week Cash Flow (including any Permitted Variances) is reasonable under the facts and circumstances. The DIP Lenders and the Prepetition ABL Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Approved 13-Week Cash Flow (including any Permitted Variances), the Interim Orders, and the other DIP Documents in determining to enter into the postpetition financing arrangements and consent to the use of Cash Collateral provided for in the Interim Orders.

vi.    *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility, the renewal of Letters of Credit, the provision of Cash Management Services, and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the applicable Prepetition Secured Parties have agreed that as of and commencing on the date of the Interim Hearing, the Debtors shall apply the proceeds of the DIP Collateral solely as permitted by the DIP Documents and the Interim Orders.

vii.    *Roll-Up*.  The Prepetition Term Secured Parties that are DIP Lenders (or affiliates thereof) would not have consented to extend the DIP Facility or other financial accommodations to the Debtors without the inclusion of the DIP Roll-Up Loans in the DIP Obligations under the DIP Facility.  Thus, the Roll-Up (as defined in the First Interim Order) is consideration for, and solely on account of, the agreement of the DIP Lenders that are Prepetition Term Secured Parties (or affiliates thereof) to extend the DIP New Money Loans.

viii.    *ABL Fee Letters*. Entry into and performance under the ABL Fee Letters reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties. The ABL Fee Letters are the product of extensive good faith, arm's-length negotiations among the Debtors and the Prepetition ABL Secured Parties, and the terms are fair and reasonable and in the best interests of the Debtors, their estates, and their creditors. The Debtors would not have been able to obtain consent to the use of Cash Collateral without entering into and performing under the ABL Fee Letters.

K.    **Adequate Protection**.  (i) The Prepetition Term Agent, for the benefit of the Prepetition Term Secured Parties, and (ii) the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, are entitled to receive adequate protection against any Diminution in Value, if any, of their respective interests from and after the Petition Date in the

Prepetition Collateral, including, without limitation, the Cash Collateral pursuant to sections 361, 363, 503, and 507(b) of the Bankruptcy Code. Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection and for the use of the Prepetition Collateral (including Cash Collateral) set forth herein are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral (including Cash Collateral); *provided* that nothing in the DIP Documents or herein shall (x) be construed as a consent by any of the Prepetition ABL Secured Parties to or authorization by the Court of the use of Cash Collateral other than on the terms set forth in the Interim Orders and in the context of the DIP Facility authorized by the Interim Orders to the extent such consent has been or is deemed to have been given or (y) prejudice, limit or otherwise impair the rights of any of the Prepetition ABL Secured Parties or Prepetition Term Secured Parties to seek new, different or additional adequate protection or assert any rights of the Prepetition ABL Secured Parties or Prepetition Term Secured Parties, and the rights of any other party in interest, including the Debtors or any other Prepetition Secured Party (as applicable), to object to such relief are hereby preserved.

L.      **Sections 506(c) and 552(b)**. In light of, among other things, in each case, as more fully set forth herein: (i) the DIP Agent's and the DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve Out (as defined below); (ii) the Prepetition Secured Parties' agreement that (x) their respective adequate protection liens and claims shall be subject to the Carve Out (as defined below) (except as provided herein) and (y) the Prepetition ABL Liens and ABL Adequate Protection Liens on the Term Priority Collateral, the Prepetition Term Liens and the Term Adequate Protection Liens shall be subordinate to the DIP Liens (as defined below); (iii) the authority to use Cash Collateral as provided herein; and (iv) the funding

made available pursuant to the DIP Facility and the Postpetition ABL Obligations, (a) subject to entry of the Final Order, the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties and (b) subject to entry of the Final Order, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code as provided herein.  The foregoing is a condition and a material inducement to the Prepetition Secured Parties' consent to the use of Cash Collateral.

      M.    **<ins>Good Faith of the DIP Agent and DIP Lenders and the Prepetition Secured Parties</ins>**.

      i.    Based upon the DIP Declarations, the First Day Declaration and the record at the Interim Hearing, (i) the terms and conditions of the DIP Facility, the Postpetition ABL Obligations and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) are fair and reasonable, are appropriate for secured financing to debtors in possession, are the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; (ii) the terms and conditions of the DIP Facility and the use of the Cash Collateral have been negotiated in good faith and at arm's length among the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties, with the assistance and counsel of their respective advisors; (iii) the use of Cash Collateral pursuant to the Interim Orders, has been agreed to in "good faith" within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code; (iv) any credit to be extended, loans to be made, and other financial accommodations to be extended to the Debtors by the DIP Secured Parties and the Prepetition

Secured Parties, including, without limitation, pursuant to the Interim Orders, have been allowed, advanced, extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code by the DIP Secured Parties and the Prepetition Secured Parties in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code; and (v) the DIP Facility, the DIP Liens, the DIP Superpriority Claims (as defined below), the Postpetition ABL Superpriority Claims, the Adequate Protection Liens, and the 507(b) Claims shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that any Interim Order or any provision hereof or thereof is reversed, or modified, on appeal or otherwise.

ii.      Absent an order of this Court and the provision of adequate protection, consent of the Prepetition ABL Secured Parties and Prepetition Term Secured Parties is required for the Debtors' use of Cash Collateral and other Prepetition ABL Collateral and Prepetition Term Collateral.   The Prepetition ABL Secured Parties and Prepetition Term Secured Parties have consented, or have not objected, to the Debtors' use of Cash Collateral and other Prepetition ABL Collateral and Prepetition Term Collateral and to the Debtors' entry into the DIP Documents solely in accordance with and subject to the terms and conditions in the Interim Orders and the DIP Documents.

N.      **Immediate Entry**.  Sufficient cause exists for immediate entry of this Third Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion, the First Day Declaration, the DIP Declarations, the DIP Amendment Motion, and the record before the Court with respect to the Motion and the DIP Amendment Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      **DIP Facility and Use of Cash Collateral Approved on Interim Basis**.  The Motion was, by the First Interim Order and the Second Interim Order, and hereby is granted to the extent provided herein on an interim basis.  All objections to this Third Interim Order, to the extent not withdrawn, waived, settled, or resolved, are hereby denied and overruled.

2.      **Authorization of the DIP Facility**.  The Debtors are authorized and empowered to enter into and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Orders and the DIP Documents and to deliver all instruments, certificates, agreements, and documents that may be required, desirable or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens.  The Debtors are hereby authorized and directed to pay, in accordance with the Interim Orders, the principal, interest, premiums, fees, payments, expenses, and other amounts described in the DIP Documents as such amounts (including, without limitation, agency, legal and other professional fees and expenses of the DIP Agent and the DIP Lenders) become due and payable in accordance with the terms and conditions of the DIP Documents, without need to obtain further Court approval, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and to take any other related actions that may be necessary, desirable or appropriate, all to the extent provided in the Interim Orders or the DIP Documents.  Upon execution and delivery, the DIP Documents shall

26

represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.  Upon entry of the First Interim Order, the Backstop Premium set forth in the Backstop Fee Letter (as defined in the DIP Credit Agreement) (the "**Backstop Premium**") was fully earned, non-refundable, and non-avoidable and shall be payable in accordance with and at the times specified in the DIP Documents.  Notwithstanding anything to the contrary in the Motion, the Interim Orders, or the DIP Documents, the Exit Fee (as defined in the DIP Credit Agreement) and the Sale Premium (as defined in the DIP Credit Agreement) are not being approved pursuant to this Third Interim Order and shall only be approved in accordance with a Final Order granting such relief.

3.      **Authorization to Borrow**.  To prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Third Interim Order through and including the earliest to occur of (i) entry of the Final Order or (ii) the DIP Termination Date (as defined below), and subject to the terms and conditions set forth in the DIP Documents and the Interim Orders, the Debtors are hereby authorized to (i) enter into the DIP Facility, (ii) borrow the DIP New Money Loans (to the extent set forth in the Interim Orders), and (iii) roll-up and convert $73 million of aggregate principal amount of Prepetition Bridge Loans (together with all accrued and unpaid interest, fees, and expenses with respect thereto) into an equivalent principal amount of DIP Roll-Up Loans, subject to the provisions of paragraph 44 hereof (the "**Roll-Up**").  The Debtors were by the First Interim Order and Second Interim Order, and are hereby, authorized to take such acts as shall be necessary or desirable to effect the Roll-Up and conversion of the Prepetition Bridge Loans by the DIP Lenders (or affiliates thereof).

4.      **DIP Account**.  The Debtors shall maintain a deposit account at Bank of America in the name of Accuride Corporation, to be subject to a deposit account control agreement solely

in favor of the DIP Agent, with the account number ending in ******7923, which account (x) shall constitute DIP Collateral (solely securing the DIP Obligations and the DIP Superpriority Claims) and (y) shall be subject solely to the DIP Liens and the DIP Superpriority Claims (each as defined below) (the "**DIP Account**").  The DIP Loans shall be funded into the DIP Account and the Debtors shall be permitted to make withdrawals from the DIP Account, subject to the terms and conditions of the DIP Credit Agreement (including Sections 6.11 and 7.13 thereof). Notwithstanding anything to the contrary herein, amounts drawn under the DIP Facility pursuant to the DIP Loans (including all amounts in the DIP Account) shall constitute (i) DIP Collateral and be subject solely to the DIP Liens and the DIP Superpriority Claims and (ii) shall not constitute ABL Priority Collateral or be subject to any liens (including any ABL Adequate Protection Liens) securing any obligations owed to, or claims of the Prepetition ABL Secured Parties (but ABL Priority Collateral shall include the Debtors' reversionary interest in such funds after the payment in full of the DIP Obligations).  Any amounts repaid under the Intercompany Loan Agreement (as defined in the DIP Credit Agreement) and / or the Canadian Demand Note (as defined in the DIP Credit Agreement) in excess of the ABL Canada Funding Amount shall be DIP Collateral and deposited into the DIP Account (but solely to the extent such repayments are of amounts directly funded under the Intercompany Loan Agreement from the DIP Account).  For the avoidance of doubt, no amounts other than amounts drawn under the DIP Facility pursuant to the DIP Loans and repayments of the Intercompany Note (limited to the amounts described in the foregoing sentence) shall be deposited into the DIP Account; provided that to the extent any ABL Priority Collateral is used to fund the CCAA cases, all amounts received by the Debtors from Accuride Canada Inc. up to the ABL Canada Funding Amount shall constitute ABL Priority Collateral and be first applied to prepay or cash collateralize the ABL Obligations.

5.      **Amendment of the DIP Documents**.  The DIP Documents may from time to time be amended, restated, amended and restated, modified, waived, or supplemented by the parties thereto in accordance with the terms thereof, and each of the Debtors is expressly authorized and empowered to enter into and implement such amendments, restatements, amendment and restatements, modifications, waivers, or supplements from time to time in accordance with the terms of the DIP Documents, without further order of this Court if the amendment, restatement, amendment and restatement, modification, waiver or supplement is not material or is necessary to conform the terms of the DIP Documents.  Any such amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Documents shall be provided to counsel of the Prepetition ABL Agent, the Committee and the U.S. Trustee.  Any material amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Documents shall require approval of this Court. The foregoing shall be without prejudice to the Debtors' right to immediately seek approval from the Court of a material amendment, modification, waiver, or supplement on an expedited basis. For the avoidance of doubt, the extension of a DIP Milestone (as defined in the DIP Credit Agreement) and amendments, restatements, amendments and restatements, modifications, waivers, or supplements to the Approved 13-Week Cash Flow shall not constitute a material amendment, restatement, amendment and restatement, modification, waiver, or supplement to the DIP Documents.

6.      **DIP Obligations**.  The DIP Documents and the Interim Orders shall constitute and evidence the validity and binding effect of the DIP Obligations, which shall be enforceable in accordance with their terms against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in the Chapter 11 Cases or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases, or in any other

proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"). Upon entry of the First Interim Order, the DIP Obligations included all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time hereafter be owing by any of the Debtors party to the DIP Documents to the DIP Agent or any of the DIP Lenders, in each case, under and in accordance with the terms and conditions of the DIP Documents or the Interim Orders or secured by the DIP Liens, including, without limitation, all principal, accrued and unpaid interest, costs, fees, expenses, and other amounts owing under and in accordance with the DIP Documents; provided that, for the avoidance of doubt the DIP Liens and the DIP Obligations shall be subject to the Carve Out in all respects.  The Debtors shall be jointly and severally liable for the DIP Obligations as and to the extent provided in the DIP Documents, which shall be subject to the Carve Out in all respects.  The DIP Obligations shall be due and payable without notice or demand on the DIP Termination Date (as defined below), and the Debtors' authority to use Cash Collateral under the Interim Orders shall automatically cease, in each case, without notice or demand on the Cash Collateral Termination Date (as defined below), in each case except as provided in paragraph 30 hereof and subject to the requirements of the Carve Out (as defined below); provided that the Debtors' rights to seek the use of Cash Collateral upon entry of a further order of the Court after the occurrence of the Cash Collateral Termination Date are fully reserved, and nothing herein shall waive, limit, or modify or be deemed to waive, limit or modify the Debtors' rights to seek the use of Cash Collateral upon entry of a further order of the Court after the occurrence of the Cash Collateral Termination Date.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Liens and including in connection with any adequate protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained,

voidable, avoidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other provision with respect to avoidance actions under the Bankruptcy Code or applicable state law equivalents), shall constitute original issue discount, or shall be subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

7. **DIP Liens**. Subject and subordinate to the Carve Out in all respects, as set forth in this Third Interim Order and effective immediately upon entry of the First Interim Order, pursuant to, as applicable, sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, were granted, and hereby are further granted, in order to secure the DIP Obligations, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") all real and personal property, whether now existing or hereafter arising and wherever located, tangible or intangible, of each of the Debtors (the "**DIP Collateral**"), including, without limitation (a) all cash, cash equivalents, deposit accounts, securities accounts, accounts, other receivables (including credit card receivables), chattel paper, contract rights, inventory (wherever located), instruments, documents, securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each Debtor (other than TopCo), other equity or ownership interests, including equity interests in subsidiaries and non-wholly-owned subsidiaries), hedge agreements, furniture, fixtures, equipment (including documents of title), goods, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, license rights, intellectual property, general intangibles

(including, for the avoidance of doubt, payment intangibles), rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights, commercial tort claims, causes of action, and all substitutions, indemnification rights, all present and future intercompany debt, leases other than nonresidential real property leases, fee interests in real property owned by the Debtors, books and records related to the foregoing, and accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds; (b) all owned real property interests and all proceeds of leased real property; (c) actions brought under section 549 of the Bankruptcy Code to recover any post-petition transfer of DIP Collateral; (d) subject to entry of the Final Order, the proceeds of any avoidance actions brought pursuant to chapter 5 of the Bankruptcy Code or section 724(a) of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents (collectively, the "**Avoidance Actions**," and the proceeds thereof, the "**Avoidance Action Proceeds**"), but not the Avoidance Actions themselves; (e) subject to entry of the Final Order, the proceeds of any exercise of the Debtors' rights under section 506(c) of the Bankruptcy Code, (f) the proceeds of any exercise of the Debtors' rights under section 550 of the Bankruptcy Code; (g) the DIP Account and the amounts therein; and (h) all other DIP Collateral that was not otherwise subject to valid, perfected, enforceable, and unavoidable liens on the Petition Date; provided that the DIP Collateral shall not include (and the DIP Liens shall not extend to) (x) funds held in the Borrowing Base Account (as defined below); provided the DIP Collateral shall include the Debtors' reversionary interest in such funds, (y) any "Excluded Property" (as defined in the DIP Credit Agreement) or (z) any Carve Out Reserve (as defined herein) and all funds held therein; provided the DIP Collateral shall include the Debtors' reversionary interest, if any, in funds held in the Carve Out Reserves, after all Professional Fees benefitting from the Carve Out have been

indefeasibly paid in full, in cash (clauses (x), (y) and (z), collectively, the "**DIP Excluded Property**"). Notwithstanding anything to the contrary in the Interim Orders, the term "DIP Collateral" shall not include the Avoidance Actions (but subject to entry of the Final Order shall include the Avoidance Action Proceeds).

8.    **DIP Lien Priority**. The DIP Liens shall have the following priority with respect to the DIP Collateral and subject in all respects to the Carve Out and with respect to the Term Priority Collateral (other than the DIP Account and the amounts therein) *pari passu* with the Cash Management Liens:

(a)    except as provided in clause (b) below, pursuant to Section 364(c)(2) of the Bankruptcy Code, the DIP Liens shall be first priority liens on the DIP Collateral (now or hereafter acquired and all proceeds thereof) of the Debtors that, as of the Petition Date, are not otherwise subject to valid, properly perfected, and unavoidable liens in existence immediately prior to the Petition Date or liens that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code; provided that in no instance shall the DIP Liens encumber the DIP Excluded Property;

(b)    pursuant to Section 364(c)(3) of the Bankruptcy Code, the DIP Liens shall be junior priority liens upon all DIP Collateral constituting ABL Priority Collateral (now owned or hereafter acquired and all proceeds thereof), subject and junior only to, in order of priority: (1) the Carve Out; (2) the ABL Permitted Liens; and (3) any liens securing the ABL Obligations, including the ABL Adequate Protection Liens (as defined herein) and the Prepetition ABL Liens; provided that, for the avoidance of doubt, the DIP Liens shall be senior in priority to the Prepetition Term Liens and any liens granted as adequate protection in favor of the Prepetition Term Secured Parties with respect to ABL Priority Collateral (now owned or hereafter acquired);

(c)     pursuant to Section 364(d) of the Bankruptcy Code, the DIP Liens shall be priming first-priority liens on all DIP Collateral (now or hereafter acquired and all proceeds thereof) that is "Collateral" as defined in the Prepetition Term Credit Agreement and "U.S. Collateral" as defined in the Prepetition ABL Credit Agreement, to the extent such Collateral is not ABL Priority Collateral; provided that such DIP Liens shall be junior in order of priority to:  (i) the Carve Out and (ii) the Permitted Liens.  For the avoidance of doubt, the Prepetition ABL Liens and the Prepetition Term Liens on the DIP Collateral that is not ABL Priority Collateral (now owned or hereafter acquired), including for the avoidance of doubt, the DIP Account and the amounts therein, shall be junior to the DIP Liens and the Carve Out in all respects.

(d)     Other than as set forth herein (including with respect to the Carve Out) or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Chapter 11 Cases or any Successor Cases, upon the conversion of any of the Chapter 11 Cases to any Successor Case, and/or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  The DIP Liens shall not be subject to any of sections 510, 549 or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

9.     **DIP Superpriority Claims**.  Subject and subordinate to the Carve Out in all respects, upon entry of the First Interim Order, the DIP Agent, on behalf of itself and the DIP Lenders, were granted, and are hereby further granted, pursuant to section 364(c)(1) of the Bankruptcy Code, allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (collectively, the "**DIP Superpriority Claims**") for all DIP

Obligations (a) except as provided in this paragraph, with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of their Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code or any other provision of the Bankruptcy Code, (b) which shall be *pari passu* with the Postpetition ABL Superpriority Claims, and (c) which shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding, until the ABL Obligations have been indefeasibly paid in full in cash or otherwise fully cash collateralized in accordance with the Prepetition ABL Documents, the ABL Priority Collateral).

10.    **No Obligation to Extend Credit**. Except as required to fund the Carve Out (as defined below) as set forth in the Interim Orders, the DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents unless (and subject to the occurrence of the Closing Date (as defined in the DIP Credit Agreement)) all of the conditions precedent to the making of such extension of credit under the DIP Documents and the Interim Orders have been satisfied in full or waived by the Required DIP Lenders in accordance with the terms of the DIP Credit Agreement.

11.    **Use of Proceeds of the DIP Facility**. From and after the Petition Date, the Debtors shall use proceeds of borrowings under the DIP Facility and the Cash Management Services in accordance with the Approved 13-Week Cash Flow (including any Permitted Variances) and the

terms and conditions in the Interim Orders and the DIP Documents; <u>provided that</u>, for the avoidance of doubt, the Debtors' use of borrowings under the DIP Facility and the DIP Collateral (including Cash Collateral and amounts in the DIP Account) to pay obligations benefiting from the Carve Out shall not be limited or deemed limited by the Approved 13-Week Cash Flow (including any Permitted Variances).

12.    **<u>Authorization to Use Cash Collateral</u>**.  The Debtors were by the First Interim Order and Second Interim Order, and hereby are, authorized to use Cash Collateral solely in accordance with the Interim Orders, the DIP Documents, and the Approved 13-Week Cash Flow (including any Permitted Variances), until the earlier of expiration of the Approved 13-Week Cash Flow and the occurrence of the Cash Collateral Termination Date (as defined below); <u>provided</u>, <u>however</u> that, during the Remedies Notice Period (as defined below), the Debtors are authorized to use Cash Collateral (x) solely to pay expenses necessary to avoid immediate and irreparable harm to the Debtors' estates, in accordance with the Approved 13-Week Cash Flow, (y) to satisfy Allowed Professional Fees benefitting from the Carve Out without regard to whether or not in compliance with the Approved 13-Week Cash Flow (<u>provided</u> that ABL Priority Collateral shall not be used to fund the Post-Carve Out Trigger Notice Reserve or any Post-Carve Out Amounts) and (z) as otherwise agreed to by the Required DIP Lenders and the Prepetition ABL Agent. Nothing in any Interim Order shall authorize the disposition of any assets of the Debtors' estates outside the ordinary course of business (which shall be subject to further orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in the Interim Orders (including with respect to the Carve Out (as defined below)) and in accordance with the limitations under the DIP Documents.

13.    **Entry Into the ABL Fee Letters**. The Debtors were, by the First Interim Order and Second Interim Order, and hereby are, authorized to enter into the ABL Fee Letters, and the prior execution thereof is hereby ratified, approved, and authorized.  The Debtors were, by the First Interim Order and Second Interim Order, and hereby are, further authorized to comply with the terms of the ABL Fee Letters and to take any and all actions necessary to implement the terms thereof and pay the fees, expenses, and indemnity obligations set forth in the ABL Fee Letters, including, without limitation, any fees and expenses incurred prior to the date of the First Interim Order, the Second Interim Order, or this Third Interim Order, in each case, pursuant to the terms and conditions set forth in the ABL Fee Letters without further notice, hearing, or order of this Court.  The Debtors and the Prepetition ABL Secured Parties are authorized to enter into any amendment, modification, supplement, or waiver to any provision of the ABL Fee Letters in accordance with the terms thereof without further notice, hearing, or order of this Court.  Any such material amendment, modification, supplement, or waiver shall be provided to counsel of the Prepetition Term Lenders.  The Debtors' obligations in respect of the fees, expenses, and indemnity obligations pursuant to the ABL Fee Letters shall constitute ABL Obligations.

14.    **Authorization to Incur Postpetition ABL Obligations**.  The Debtors were by the First Interim Order and the Second Interim Order, and hereby are, authorized to continue to renew outstanding Letters of Credit (as defined in the Prepetition ABL Credit Agreement, "**Letters of Credit**") and obtain Cash Management Services (as defined in the Prepetition ABL Credit Agreement, "**Cash Management Services**") from the Prepetition ABL Secured Parties, and to satisfy obligations thereunder as they come due in accordance with the terms thereof, as the same may be amended, waived or otherwise modified by agreement between the Debtors and the applicable Prepetition ABL Secured Parties, without need for further Court approval thereof so

long as any such amendment, waiver or modification is delivered to counsel to the DIP Lenders.
All obligations of the Debtors, including all Obligations (as defined in the Prepetition ABL Credit
Agreement) under or relating to any Letters of Credit (such Obligations solely to the extent relating
to Letters of Credit, the "**L/C Obligations**") or Cash Management Services (such Obligations
solely to the extent related to Cash Management Services, the "**Cash Management Obligations**"
and, together with the L/C Obligations, the "**Postpetition ABL Obligations**"; the Postpetition
ABL Obligations, together with the Prepetition ABL Obligations, the "**ABL Obligations**")
provided by Prepetition ABL Secured Parties shall be enforceable in accordance with their terms
against the Debtors, their estates and any successors thereto in each of the Chapter 11 Cases and
any Successor Cases and have the claim and lien priorities set forth below.  The Postpetition ABL
Obligations shall be due and payable without notice or demand on the Termination Date (as
defined below).

(a)     The L/C Obligations shall constitute allowed superpriority administrative expense
claims (the "**L/C Superpriority Claims**") pursuant to section 364(c)(1) of the Bankruptcy Code
in each of the Chapter 11 Cases and any Successor Cases, which shall (i) except as provided in
this paragraph, have priority over any and all administrative expense claims and unsecured claims
against the Debtors or their estates in any of their Chapter 11 Cases or any Successor Cases, at any
time existing or arising, of any kind or nature whatsoever, including, without limitation,
administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328,
330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy
Code or any other provision of the Bankruptcy Code, (ii) be subject and subordinate to the
Pre-Carve Out Amounts and *pari passu* with the DIP Superpriority Claims and the Cash
Management Superpriority Claims in all respects, and (iii) at all times be senior to the rights of the

Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The L/C Obligations shall continue to be secured by the Prepetition ABL Liens in all respects.

(b)      The Cash Management Obligations shall constitute allowed superpriority administrative expense claims (the "**Cash Management Superpriority Claims**" and, together with the L/C Superpriority Claims, the "**Postpetition ABL Superpriority Claims**") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Chapter 11 Cases and any Successor Cases, which shall (i) except as provided in this paragraph, have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of their Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code or any other provision of the Bankruptcy Code, (ii) be subject and subordinate to the Pre-Carve Out Amounts and *pari passu* with the DIP Superpriority Claims and the L/C Superpriority Claims in all respects, and (iii) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The Cash Management Obligations shall (x) continue to be secured by the Prepetition ABL Liens and (y) be secured by continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on all DIP Collateral (other than the DIP Account) (the "**Cash Management Liens**")[5] granted pursuant to the First Interim Order and the Second Interim Order,

---

[5]   Notwithstanding anything to the contrary herein, (x) the Cash Management Liens shall not attach to (i) the DIP Account or the amounts therein or (ii) any "building" or "mobile home" (each as defined in applicable Federal Reserve Board regulations) on land comprising real property that is located in a special flood hazard as determined

and hereby further granted (effective and automatically perfected as of the date of the First Interim Order), to the Prepetition ABL Agent for the benefit of the Cash Management Banks (as defined in the Prepetition ABL Credit Agreement), pursuant to, as applicable, sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, which Cash Management Liens shall be subject and subordinate to the Pre-Carve Out Amounts and with respect to the Term Priority Collateral (other than the DIP Account and the amounts therein) *pari passu* with the DIP Liens on such Term Priority Collateral in all respects.  For the avoidance of doubt, the Cash Management Liens shall not be subject or subordinate to or made *pari passu* with (1) any lien or security interest that is avoided for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (2) except as set forth in this paragraph, any lien or security interest, now or hereafter existing, whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise, or (3) intercompany or affiliate liens, security interests or claims.

(c)     For the avoidance of doubt, nothing in any Interim Order shall (x) permit the issuance of new letters of credit under the ABL Facility or (y) obligate the Prepetition ABL Secured Parties to amend, renew or extend any Letters of Credit or Cash Management Services (or prohibit the issuance of any non-renewal notices with respect thereto).

15.     **Adequate Protection for the Prepetition Secured Parties**.  Subject to paragraph 44 and the priorities set forth in this paragraph 15, the Prepetition Secured Parties were by the First Interim Order and Second Interim Order, and hereby are, entitled, pursuant to sections 361, 362, 363(c)(2), 363(e), 503, and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral as of the Petition Date, including the Cash Collateral, against any

---

by the Federal Emergency Management Agency or such successor agency, and (y) the property described in clause (x) above shall constitute "DIP Excluded Property" for all purposes with respect to the Cash Management Liens.

Diminution in Value, if any, of their respective interests in the Prepetition Collateral from and after the Petition Date (the "**Adequate Protection Claim**").  As adequate protection, the Prepetition Secured Parties are hereby granted the following (the "**Adequate Protection Obligations**"):

(a)     <u>ABL Adequate Protection Liens</u>.  Subject to the Pre-Carve Out Amounts in all respects, as security for the payment of the Prepetition ABL Secured Parties' Adequate Protection Claims, the Prepetition ABL Agent (for itself and for the benefit of the other Prepetition ABL Secured Parties) was granted pursuant to the First Interim Order and Second Interim Order, and is hereby further granted (effective and automatically perfected upon the date of the First Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements), a valid, perfected replacement security interest in and lien on all of the DIP Collateral (other than the DIP Account and amounts from time to time therein) (including, subject to entry of the Final Order, Avoidance Action Proceeds) and the Borrowing Base Account (and amounts from time to time therein) (the "**ABL Adequate Protection Liens**"),[6] subject and subordinate only to (i) the Pre-Carve Out Amounts; (ii) the ABL Permitted Liens and (iii) with respect to the Term Priority Collateral, in order of priority (1) the DIP Liens and the Cash Management Liens, (2) the Term Adequate Protection Liens (as defined below); and (3) the Prepetition Term Liens, in each case, on such Term Priority Collateral.  For the avoidance of doubt, the ABL Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (y)

---

[6]  Notwithstanding anything to the contrary herein, (x) the ABL Adequate Protection Liens shall not attach to (i) the DIP Account or the amounts therein or (ii) any "building" or "mobile home" (each as defined in applicable Federal Reserve Board regulations) on land comprising real property that is located in a special flood hazard as determined by the Federal Emergency Management Agency or such successor agency and (y) the property described in clause (x) above shall constitute "DIP Excluded Property" for all purposes with respect to the ABL Adequate Protection Liens.

except as set forth in this paragraph, any lien or security interest, now or hereafter existing, whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise or (z) any intercompany or affiliate liens, security interests or claims.

(b)    ABL Section 507(b) Claims.  Subject to the Pre-Carve Out Amounts in all respects, the Prepetition ABL Agent (for itself and for the benefit of the other Prepetition ABL Secured Parties) was by the First Interim Order and Second Interim Order, and is hereby, granted an allowed superpriority claim against each of the Debtors as provided in sections 503 and 507(b) of the Bankruptcy Code (the "**ABL 507(b) Claims**") in the amount of the Prepetition ABL Secured Parties' Adequate Protection Claims, if any, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, subject and subordinate only to (1) the Pre-Carve Out Amounts, (2) the DIP Superpriority Claims granted in respect of the DIP Obligations and (3) the Postpetition ABL Superpriority Claims.  Except to the extent expressly set forth in the Interim Orders, the Prepetition ABL Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the ABL 507(b) Claims unless and until (x) the Pre-Carve Out Amounts are funded in the Pre-Carve Out Trigger Notice Reserve, (y) solely with respect to Term Priority Collateral, all DIP Obligations secured thereby shall have been indefeasibly paid in full in cash and (z) all Postpetition ABL Obligations shall have been indefeasibly paid in full in cash.

(c)    ABL Postpetition Payments.  The Prepetition ABL Agent, on behalf of itself and the other Prepetition ABL Secured Parties, shall receive (i) payment of the fees set forth in the ABL Fee Letters (to the extent not already received), (ii) current cash payment during the Chapter

11 Cases of all interest and fees in respect of the Prepetition ABL Obligations, as such amounts become due and payable and as set forth in this paragraph and (iii) all other fees and expenses of the Prepetition ABL Agent under the Prepetition ABL Documents, as such amounts become due and payable (provided that any legal or financial advisor fees and expenses shall be subject to the review procedures set forth in section 15(f) hereof.  Interest shall be paid on each Interest Payment Date (as defined in the Prepetition ABL Credit Agreement) at the applicable contractual non-default Term SOFR-based (or EURIBOR-based or SONIA-based, to the extent applicable) rate under the Prepetition ABL Credit Agreement plus 1.00% (provided that all Interest Periods (as defined in the Prepetition ABL Credit Agreement) shall be required to be of one month duration), and the Prepetition ABL Secured Party hereby waives their rights to (i) charge interest at the default rate on the Prepetition ABL Obligations and (ii) convert the benchmark rate applicable to the Prepetition ABL Obligations to the Base Rate (as defined in the Prepetition ABL Credit Agreement) as a result of a default or an event of default under the Prepetition ABL Credit Agreement.  If it is determined by a final order, which order is not subject to any appeal, stay, reversal, or vacatur, that the aggregate value of postpetition interest paid to Prepetition ABL Secured Parties pursuant to this paragraph (other than on account of any Postpetition ABL Obligations) exceeds the amount permitted by section 506(b) of the Bankruptcy Code, then in each case a party in interest (other than the Debtors or the Prepetition Secured Parties), subject to paragraph 44 herein, shall have the right to assert that such interest payments of adequate protection shall be applied toward repayment of the secured portion of the applicable Prepetition ABL Obligations as is owing to such Prepetition ABL Secured Party as of the Petition Date.

(d)    Term Adequate Protection Liens.  Subject in all respects to the Carve Out, as security for the payment of the Prepetition Term Secured Parties' Adequate Protection Claims, if

any, the Prepetition Term Agent (for itself and for the benefit of the other Prepetition Term Secured Parties) was by the First Interim Order and Second Interim Order, and is hereby, granted (effective and automatically perfected upon the date of the First Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other agreements), and are hereby further granted, a valid, perfected replacement security interest in and lien on all of the DIP Collateral of each of the Debtors (including, subject to entry of the Final Order, Avoidance Action Proceeds) (the "**Term Adequate Protection Liens**" together with the ABL Adequate Protection Liens, the "**Adequate Protection Liens**"), subject and subordinate only to (i) (1) the Carve Out (as defined below), (2) the Term Permitted Liens, and (3) the DIP Liens (and any liens permitted by the DIP Documents to be senior to the DIP Liens) and (ii) with respect to the Term Priority Collateral, the Cash Management Liens; and (iii) with respect to the ABL Priority Collateral, (1) the ABL Adequate Protection Liens and (2) the Prepetition ABL Liens.  For the avoidance of doubt, the Term Adequate Protection Liens shall not be subject or subordinate to or made *pari passu* with (x) any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (y) except as set forth in this paragraph, any lien or security interest, now or hereafter existing, whether authorized under sections 363 or 364 of the Bankruptcy Code or otherwise or (z) any intercompany or affiliate liens, security interests or claims.

(e)     Term Section 507(b) Claims.  Subject to the Carve Out in all respects, the Prepetition Term Agent (for itself and for the benefit of the other Prepetition Term Lenders) was by the First Interim Order and Second Interim Order, and is hereby, granted an allowed superpriority claim against each of the Debtors as provided in sections 503 and 507(b) of the Bankruptcy Code (the "**Term 507(b) Claims**" and, together with the ABL 507(b) Claims, the

"**507(b) Claims**") in the amount of the Prepetition Term Secured Parties' Adequate Protection Claims, if any, with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, or 1114 of the Bankruptcy Code, subject and subordinate only to (1) the Carve Out (as defined below), (2) the DIP Superpriority Claims granted in respect of the DIP Obligations and (3) the Postpetition ABL Superpriority Claims. Except to the extent expressly set forth in the Interim Orders, the Prepetition Term Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Term 507(b) Claims unless and until (x) the Carve Out (as defined below) is funded, (y) all DIP Obligations and Postpetition ABL Obligations shall have been indefeasibly paid in full in cash and (z) with respect to ABL Priority Collateral, all ABL Obligations shall have been indefeasibly paid in full in cash. Only the Prepetition Term Agent, acting at the direction of the Required Lenders (as defined in the Prepetition Term Credit Agreement), may assert the Term 507(b) Claims against the Debtors.

(f)      Fees and Expenses. The Debtors were by the First Interim Order and Second Interim Order, and hereby are, authorized and directed to pay, as adequate protection, all accrued and unpaid fees and reasonable and documented disbursements (including agency fees but not success fees, transaction fees, or similar fees) incurred, whether accrued before, on, or after the Petition Date, by the DIP Agent and Prepetition Agents and (i) one primary counsel, (ii) one local counsel in each applicable jurisdiction, (iii) one financial advisor, and (iv) any other counsel or advisor to be agreed between the Debtors and the DIP Lenders, as applicable (the "**Approved Fee Party Advisors**"), for each of (v) the DIP Lenders, (w) the Prepetition Term Lenders (which shall be the same Approved Fee Party Advisors as the DIP Lenders'), (x) the Prepetition ABL Lenders,

(y) the DIP Agent and the Prepetition Term Agent, and (z) the Prepetition ABL Agent (collectively, the "**Approved Fee Parties**"). The Approved Fee Party Advisors shall not be required to file applications seeking compensation for services or reimbursement of expenses with the Court or comply with the U.S. Trustee fee guidelines; however, any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall include a general description of the nature of the matters for which services were performed, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate) and the number of hours each professional billed and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work-product doctrine) to the U.S. Trustee and counsel to the Committee, contemporaneously with the delivery of such fee and expense statements to the Debtors. After delivery of a fee and expense statement or invoice, the Debtors, the U.S. Trustee, and the Committee shall have ten (10) calendar days to raise an objection thereto. Any objections raised by the Debtors, the U.S. Trustee, or the Committee with respect to the Debtors' payment of the amounts in such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional. If an objection is timely raised, such objection shall be subject to resolution by the Court. Pending such resolution, the undisputed portion of any such fee and expense statement or invoice shall be paid promptly by the Debtors, without further order of the Court following the expiration of the review period. Notwithstanding the foregoing, the Debtors were by the First Interim Order and Second Interim Order authorized and directed to

pay upon entry thereof, and hereby are authorized and directed to pay upon entry of this Third Interim Order, all reasonable and documented fees, costs, and out-of-pocket expenses (including agency fees but not any "success", "transaction", or similar fees) of the DIP Agent and the Prepetition Agents and the legal and financial advisors to the Approved Fee Parties incurred on or prior to such date without the need for any professional engaged by such parties to first deliver a copy of its invoice as provided for herein.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the Approved Fee Parties were by the First Interim Order approved in full.  For the avoidance of doubt, pursuant to the First Interim Order, the fees set forth in any engagement letter executed by any of the Debtors prior to the Petition Date with any of the legal or financial advisors to the Approved Fee Parties shall be deemed reasonable for all purposes under the Interim Orders, including, without limitation, under this paragraph 15(f). Any and all fees, costs and expenses of the legal or financial advisors to the Approved Fee Parties paid by the Debtors prior to the Petition Date, or after the Petition Date in accordance with this paragraph, shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtors, their estates or any other person or entity.

16.    **Adequate Protection Reservation**.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value, if any, of their respective interests in the Prepetition Collateral from and after the Petition Date during the Chapter 11 Cases or any Successor Cases, or the Debtors' or any party in interest's rights to challenge such an assertion.  The receipt by the Prepetition Secured Parties of the adequate protection provided herein shall not be deemed an admission:  (a) that the interests of the Prepetition Secured Parties are adequately protected, or (b) that any of the Prepetition

Secured Parties are entitled to other or different adequate protection.  Further, the Interim Orders shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, subject in all respects to the terms and limitations of the Prepetition Intercreditor Agreement.

17.    [**Reserved.**]

18.    **Budget Maintenance**.

(a)    The Debtors shall use the proceeds of all borrowings under the DIP Facility and Cash Collateral solely in accordance with the Approved 13-Week Cash Flow (including any Permitted Variances); _provided_ that, for the avoidance of doubt, the Debtors' authorization to use proceeds of the DIP Facility, DIP Collateral, and Cash Collateral to satisfy obligations benefitting from the Carve Out (subject to the limitations herein) shall in no way be subject to the Approved 13-Week Cash Flow (including any Permitted Variances).  The 13-Week Cash Flow annexed to the First Interim Order as Exhibit 2 and each subsequent, modified, extended and/or updated 13-Week Cash Flow approved by the Required DIP Lenders in accordance with the DIP Credit Agreement and the Prepetition ABL Agent shall constitute the "**Approved 13-Week Cash Flow**." By 5:00 p.m., New York City time, on the first Friday of each month (commencing on November 1, 2024), the Debtors shall deliver to the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, and the Prepetition ABL Lenders, a new projected thirteen (13) week cash flow forecast prepared by the Debtors in good faith (in each case covering the immediately following thirteen (13) week period) (each such projected 13-week cash flow forecast, a "**13-Week Cash Flow**"), in accordance with the terms of the DIP Credit Agreement and the Interim Orders.  Until the Required DIP Lenders and the Prepetition ABL Agent approve a subsequently delivered 13-Week Cash Flow in

accordance with the terms of the DIP Credit Agreement and the Interim Orders, the then-current Approved 13-Week Cash Flow shall remain the Approved 13-Week Cash Flow.

(b)     Every other Thursday (provided if Thursday is not a Business Day, such date shall extend to the immediately succeeding Business Day) commencing on October 24, 2024 (and testing for the two-week period ending October 18, 2024), the Debtors shall test (and shall deliver the results of such test to the DIP Agent, the DIP Lenders, the Prepetition ABL Agent and the Prepetition ABL Lenders) the Permitted Variance (as defined below) for the cumulative period commencing on the first week covered by the then-effective Approved 13-Week Cash Flow and ending on the Friday immediately prior to such Thursday (provided if Thursday is not a Business Day, such date shall extend to the immediately succeeding Business Day) (the "**Initial Variance Testing Period**" and, each two-week period thereafter, a "**Variance Testing Period**"; <u>provided</u> that, to the extent any Initial Variance Testing Period or Variance Testing Period as so determined is shorter than two (2) calendar weeks, such Initial Variance Testing Period or Variance Testing Period shall be deemed to be the period commencing on the first week covered by the Approved 13-Week Cash Flow as in effect immediately prior to the then-effective Approved 13-Week Cash Flow and ending on the Friday immediately prior to such Thursday) against the Approved 13-Week Cash Flow.  "**Permitted Variances**" shall have the meaning set forth in the DIP Credit Agreement as of the date of the First Interim Order, as modified or waived in accordance with the terms of the DIP Credit Agreement, subject to (i) the prior written consent of the Prepetition ABL Agent for any modification or waiver permitting (x) Total Disbursements of more than 120% of the Total Disbursements in the Approved 13-Week Cash Flow for the Initial Variance Testing Period and each Variance Testing Period thereafter; (y) Total Receipts of less than 80% of the Total Receipts in the Approved 13-Week Cash Flow for the Initial Variance Testing Period and

each Variance Testing Period thereafter (on an aggregate basis) or (z) total cash flow of less than the total cash flow shown in the Approved 13-Week Cash Flow for the Initial Variance Testing Period and each Variance Testing Period thereafter, in each case in this clause (z), by an amount in excess of 20% of the Total Receipts shown in the Approved 13-Week Cash Flow for such Variance Testing Period (on an aggregate basis) and (ii) with respect to any other modification or waiver, rights and compensation for the Prepetition ABL Secured Parties reasonably equivalent to those provided to the DIP Secured Parties for the DIP Secured Parties' consent or approval to such modification or waiver.  Capitalized terms use in the foregoing sentence but not otherwise defined in the First Interim Order shall have the meaning ascribed to such terms in the DIP Credit Agreement as of the date of the First Interim Order.

19.     **Budget and Reporting Compliance**. The Debtors shall provide the Prepetition ABL Agent (in addition to all other reporting to be provided to the Prepetition ABL Agent in accordance with the Interim Orders) with all financial reporting and other periodic reporting and information that is required to be provided to any of the DIP Secured Parties under the DIP Credit Agreement and any other reporting or information that impacts the rights of the Prepetition ABL Secured Parties or the ABL Priority Collateral or that is reasonably requested by the Prepetition ABL Agent. The Prepetition ABL Agent shall be entitled to all such financial reporting required under the DIP Credit Agreement, notwithstanding any waiver or modification of such requirements by the DIP Secured Parties. The failure to comply with Section 7.13 of the DIP Credit Agreement or the Debtors' failure to provide the reports and other information required in the Interim Orders or the DIP Credit Agreement to the parties entitled to receive such reports and information under the DIP Credit Agreement and the Prepetition ABL Agent within the time periods (including any grace periods) set forth in the Interim Orders or the DIP Credit Agreement, as applicable, shall

constitute an Event of Default under the DIP Credit Agreement and an ABL Cash Collateral Termination Event.

20.   **Borrowing Base; Borrowing Base Reporting**.[7]   The Debtors shall deliver to the Prepetition ABL Agent, with copies to the DIP Agent and the DIP Lenders, each Thursday (or if such day is not a Business Day, the immediately succeeding Business Day) (commencing on October 17, 2024), a Borrowing Base Certificate (as defined in the Prepetition ABL Credit Agreement, a "**Borrowing Base Certificate**"), setting forth the Aggregate Borrowing Base, each Borrowing Base, the Aggregate Excess Availability, the U.S. Excess Availability, the Aggregate Line Cap, the U.S. Line Cap, the French Line Cap, the German Line Cap and, if applicable, the U.S. Borrowing Base Excess Amount Allocation, each calculated in accordance with the Prepetition ABL Credit Agreement (together with all back-up reports and information delivered with the Borrowing Base Certificates prior to the Petition Date); provided that, solely for purposes of any such calculation, each "Revolving Credit Commitment" shall be deemed to equal the amount thereof as of immediately prior to the Petition Date;[8] provided further that (x) from and after the date hereof until the date that is 100 days after the Petition Date, the Prepetition ABL Secured Parties shall not be permitted to take any new discretionary Reserves against the U.S. Borrowing Base other than (i) a Reserve based on any appraisals or field exams in process or scheduled as of the Petition Date, (ii) any Reserve based on circumstances, conditions or events (or changes to circumstances, conditions or events) arising after the Petition Date or otherwise not known to the Prepetition ABL Secured Parties on or prior to the Petition Date or (iii) as otherwise

---

[7]   Capitalized terms used in paragraphs 20 and 21 but not otherwise defined herein have the meanings ascribed to such terms in the Prepetition ABL Credit Agreement.

[8]   For the avoidance of doubt, for all Revolving Credit Commitments were terminated upon the filing of the Chapter 11 Cases.

permitted herein; <u>provided</u> that, in each case, any such permitted Reserves shall be established in accordance with the Prepetition ABL Agent's Permitted Discretion; (y) the Prepetition ABL Secured Parties shall be permitted to take a reserve against the U.S. Borrowing Base in an amount equal to (i) all Pre-Carve Out Amounts (as calculated including the amounts set forth in clause (iii) of the definition of the Carve Out based on the most recent reporting in accordance with the Interim Orders and including the maximum amounts set forth in clauses (i) and (ii) of the definition of the Carve Out), <u>minus</u> (iii) any amounts held in the Funded Reserve Account, which Reserve may be adjusted by the Prepetition ABL Agent to account for any inaccuracies in such reporting delivered in accordance with the terms of the Interim Orders, and (z) no subsequent appraisals or valuations (other than those in process or scheduled as of the Petition Date) shall be made with respect to the U.S. Borrowing Base or any determination of Net Recovery Percentage before the date that is 120 days after the Petition Date; <u>provided</u> that the Prepetition ABL Agent may obtain appraisals and field examinations at any time after the Petition Date for informational purposes and the Debtors shall use commercially reasonable efforts to cooperate with the Prepetition ABL Agent in obtaining such appraisals and field examinations (and, other than those in process or scheduled, such subsequent appraisals shall not affect the valuation of the applicable assets in the calculation of the Borrowing Base until the date that is 120 days after the Petition Date), and the Debtors shall pay the Prepetition ABL Agent's reasonable and documented expenses associated with obtaining such appraisals and field examinations (including for the avoidance of doubt any appraiser or other fees and expenses related to any appraisals, valuations or field examinations). The Debtors shall deliver the first Borrowing Base Certificate as provided herein not later than 12:00 p.m., New York City time, on October 17, 2024.

21.   **Borrowing Base Reserve Account**.  To the extent that, in each case, as set forth on the most recent Borrowing Base Certificate, (A) the U.S. Excess Availability is less than the greater of (x) 7.5% of the U.S. Line Cap and (y) $7,500,000 (or, after the date that is 100 days after the Petition Date, the greater of (x) 10.0% of the U.S. Line Cap and (y) $10,000,000) (such difference, if any, the "**U.S. Minimum Availability Shortfall**") and/or (B) the Aggregate Excess Availability *minus* the U.S. Excess Availability set forth on the most recent Borrowing Base Certificate is less than the greater of (x) 5% of the sum of (1) the French Line Cap plus (2) the German Line Cap and (y) $5,000,000 (such difference, if any, the "**Foreign Minimum Availability Shortfall**"), (C) the French Line Cap is less than the aggregate French Revolving Credit Exposure (such difference, if any, the "**French Borrowing Base Shortfall**") or (D) the German Line Cap is less than the aggregate German Revolving Credit Exposure (such difference, if any, the "**German Borrowing Base Shortfall**"), the Debtors shall, within one (1) business day of delivery of such Borrowing Base Certificate, cause an amount of cash equal to the U.S. Minimum Availability Shortfall, the Foreign Minimum Availability Shortfall, the French Borrowing Base Shortfall and/or the German Borrowing Base Shortfall, as applicable, to, at their option either (a) be deposited in a segregated account maintained with the Prepetition ABL Agent (the "**Borrowing Base Account**") as additional adequate protection for the Prepetition ABL Lenders, which Borrowing Base Account and all funds held in the Borrowing Base Account, if any, shall be subject to a first priority, automatically perfected security interest and lien in favor of the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, and shall constitute Prepetition ABL Collateral (and ABL Priority Collateral) but not Prepetition Term Collateral or DIP Collateral (but DIP Collateral shall include the Debtors' reversionary interest in such funds after the payment in full of the ABL Obligations); provided that (x) funds held in the

Borrowing Base Account shall be added to the applicable Borrowing Base and (y) the Debtors may withdraw funds held in the Borrowing Base Account to the extent that the balance thereof (immediately after giving effect to such withdrawal) is equal to or greater than the U.S. Minimum Availability Shortfall, Foreign Minimum Availability Shortfall, French Borrowing Base Shortfall and/or German Borrowing Base Shortfall, as applicable, each as calculated by reference to the most recently delivered Borrowing Base Certificate as provided herein; or (b) be paid to the ABL Agent, for distribution to the ABL Secured Parties, to be applied to prepay and permanently reduce the outstanding ABL Obligations; *provided* that any net cash proceeds received by any Debtor from any disposition of ABL Priority Collateral to a third party (other than dispositions of ABL Priority Collateral (1) in the ordinary course of business, consistent with past practice or (2) as a result of casualty events to the extent reinvested within 3 months of the receipt thereof) shall not be deposited in the Borrowing Base Account and shall instead be applied in accordance with this clause (b) no later than two business days following receipt.  For the avoidance of doubt, neither the (i) Cash Management Obligations nor (ii) any amounts paid (or required to be paid) pursuant to the ABL Fee Letter (however structured and in whatever form) shall increase the U.S. Revolving Exposure, the French Revolving Credit Exposure or the German Revolving Credit Exposure for the purposes of determining whether there is a U.S. Minimum Availability Shortfall, Foreign Minimum Availability Shortfall, the French Borrowing Base Shortfall and/or the German Borrowing Base Shortfall.  Upon the occurrence of an ABL Cash Collateral Termination Event, subject to the Remedies Notice Period, the Prepetition ABL Agent shall be entitled to apply amounts maintained in the Borrowing Base Account to repay the ABL Obligations in accordance with the Prepetition ABL Documents without further notice or order of the court.

22.     **Modification of Automatic Stay**.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of the Interim Orders, including, without limitation, to (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, Postpetition ABL Superpriority Claims and 507(b) Claims; (b) permit the Debtors to perform such acts as the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, the Letters of Credit, the Cash Management Services and the Interim Orders, as applicable; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of the Interim Orders.

23.     **Perfection of DIP Liens, Cash Management Liens and Adequate Protection Liens**.  The Interim Orders shall each be sufficient and conclusive evidence of the creation, validity, automatic perfection, and priority of all liens granted herein, including the DIP Liens, the Cash Management Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens, the Cash Management Liens or the Adequate Protection Liens or to entitle the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Agent was by the

First Interim Order and Second Interim Order, and is hereby, authorized to file or record, as it in its sole discretion deems necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect its respective liens in accordance with applicable non-bankruptcy law, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens, the Cash Management Liens or the Adequate Protection Liens. The Debtors were by the First Interim Order and Second Interim Order, and are hereby, authorized and directed to execute and deliver, promptly upon demand to the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Agent all such financing statements, mortgages, notices, and other documents as the DIP Agent, the Prepetition ABL Agent, or the Prepetition Term Agent, as applicable, may reasonably request.  Each of the DIP Agent, the Prepetition ABL Agent, and the Prepetition Term Agent, in its discretion, may file a photocopy of any Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instrument, and all applicable officials are hereby authorized to accept a photocopy of any Interim Order for filing or recordation for such purpose.  To the extent the Prepetition ABL Agent or the Prepetition Term Agent is the secured party under any security agreement, mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, financing statement, account control agreements, or any other Prepetition Debt Documents or is listed as loss payee or additional insured under any of the Debtors' insurance policies, the DIP Agent shall also be deemed without any further action to be the secured party or the loss payee or additional insured, as applicable, under such documents (in each case, subject to the lien priority set forth herein).

The Prepetition ABL Agent and the Prepetition Term Agent, as applicable, shall serve as sub-collateral agents for the DIP Agent solely for purposes of perfecting the DIP Liens on all DIP Collateral that is of a type such that, without giving effect to the Bankruptcy Code and the Interim Orders, perfection of a lien thereon may be accomplished only by possession or control by a secured party (but will have no duty, responsibility or obligation to the DIP Secured Parties, including, without limitation, any duty, responsibility or obligation as to the maintenance of such control, the effect of such arrangement or the establishment of such perfection).

24.     No party shall be entitled to assert that a default has occurred by virtue of the granting of liens hereunder, and any provision of any lease or other license, contract or other agreement that requires (a) the consent or approval of one or more landlords or other parties or (b) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold or contractual interest, or the proceeds thereof, or other postpetition collateral related thereto, shall have no force and effect with respect to the grant of postpetition liens in such leasehold or contractual interest or the proceeds of any assignment and/or sale thereof by the Debtors, in accordance with the terms of the Interim Orders or the other DIP Documents.

25.     **Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties**.  Unless the Required DIP Lenders and the Prepetition ABL Agent shall have provided their prior written consent, or all DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) and ABL Obligations have been indefeasibly paid in full in cash and the lending commitments under the DIP Facility have terminated, the entry of any order in these Chapter 11 Cases shall be an Event of Default for purposes of the DIP Credit Agreement and an ABL Cash Collateral Termination Event if such order authorizes any of the

following (unless such order provides for the simultaneous satisfaction of such obligations): (i) the obtaining of credit or the incurrence of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or a portion of the DIP Collateral or that is entitled to administrative priority with a value in excess of $500,000 in the aggregate that are superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Postpetition ABL Superpriority Claims, the Prepetition Liens, the Adequate Protection Liens, or the 507(b) Claims except as expressly set forth in the Interim Orders or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted pursuant to the Approved 13-Week Cash Flow (including any Permitted Variances), the DIP Documents and the Interim Orders; provided that Debtors' rights to seek to use Cash Collateral on a non-consensual basis after the Cash Collateral Termination Date are fully reserved; or (iii) any modification of any of the DIP Agent's, any DIP Lender's, or any Prepetition Secured Party's rights under the Interim Orders, the DIP Documents, or the Prepetition Debt Documents with respect to any DIP Obligations, ABL Obligations or Prepetition Term Obligations except as specifically provided herein.

26.    The Debtors (and/or their legal and financial advisors in the case of clauses (ii) and (iii) below) will (i) use commercially reasonable efforts to maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition Debt Documents (and subject to the applicable grace periods set forth therein); (ii) reasonably cooperate with, consult with, and provide to the Required DIP Lenders and the Prepetition ABL Agent all such information and documents that any or all of the Debtors are obligated to provide under the DIP Documents or the provisions of the Interim Orders;  and (iii) permit the Required DIP Lenders and the Prepetition ABL Agent and their respective advisors and appraisers to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations, and

assets in each case during regular business hours and commercially reasonable advance notice and otherwise use commercially reasonable efforts to cooperate with such advisors and appraisers.

27.    **Credit Bidding**.  In connection with any sale process authorized by the Court, whether effectuated through sections 363, 725, or 1123 of the Bankruptcy Code, the DIP Agent (or its designee) (at the direction of the Required DIP Lenders), and, subject to paragraph 44 hereof and entry of the Final Order, the Prepetition Term Agent (or its designee) (at the direction of the requisite Prepetition Term Secured Parties) and the Prepetition ABL Agent (or its designee) (at the direction of the Required ABL Lenders), may credit bid up to the full amount of the outstanding DIP Obligations, the relevant Prepetition Term Obligations, or the ABL Obligations, as applicable, in each case, including any accrued and unpaid interest, expenses, fees, and other obligations for their respective priority collateral (each such bid, a "**Credit Bid**") pursuant to section 363(k) of the Bankruptcy Code, subject in each case to the Prepetition Intercreditor Agreement and the rights of any party in interest (other than the Debtors) arising under Section 363(k) of the Bankruptcy Code; provided that neither the DIP Obligations nor the Prepetition Term Obligations may be credit bid in any disposition of any ABL Priority Collateral unless all ABL Obligations have been indefeasibly paid in full in cash.

28.    **Proceeds of Subsequent Financing**.  If the Debtors, any trustee, any examiner with expanded powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d) of the Bankruptcy Code in violation of the DIP Documents or the Interim Orders at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and the ABL Obligations, as applicable, and the Termination Date, including subsequent to the confirmation of any plan with respect to any or all of the Debtors (if applicable), then all the cash proceeds derived from such

credit or debt shall immediately be (i) to the extent such credit or debt is secured by Term Priority Collateral, turned over to the DIP Agent to be applied in accordance with the Interim Orders and the DIP Documents and the Prepetition Intercreditor Agreement and (ii) to the extent such credit or debt is secured by ABL Priority Collateral, turned over to the Prepetition ABL Agent to be applied in accordance with the Interim Orders and the Prepetition ABL Documents and the Prepetition Intercreditor Agreement.

29.    **Maintenance of DIP Collateral**.  Until the indefeasible payment in full in cash of all DIP Obligations, all Prepetition Term Obligations, and all ABL Obligations and the termination of the DIP Lenders' obligation to extend credit under the DIP Facility, the Debtors shall (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Debt Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by and in accordance with any order entered by the Court and in a manner acceptable to the Prepetition ABL Agent and the Required DIP Lenders.

30.    **Termination Dates**.  (a) On the DIP Termination Date (as defined below), subject to the Carve Out (as defined below), the use of proceeds of the DIP Facility shall immediately terminate (and no amounts may be withdrawn from the DIP Accounts), all DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 42 with respect to the Carve Out (as defined below); and (b) on the Cash Collateral Termination Date (as defined below) all authority to use Cash Collateral shall cease, all Postpetition ABL Obligations shall be immediately due and payable and all obligations (if any) of the Prepetition ABL Secured Parties to provide Cash Management Services or renew Letters of Credit shall terminate, provided, however, that during the Remedies

Notice Period, the Debtors may use Cash Collateral (including proceeds of the DIP Facility) in accordance with paragraph 12.

31.    **Release**.  Each Debtor and, subject to paragraph 44 hereof, each of the Debtors' estates, on their own behalf and on behalf of their past, present, and future predecessors, successors, heirs, subsidiaries and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge (the "**Release**") each of the DIP Secured Parties, the Prepetition Secured Parties, and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such (collectively, the "**Representatives**"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof or hereafter arising for or by reason of any act, omission, cause or thing whatsoever at any time on or prior to the date of this Third Interim Order, with respect to or relating to the DIP Obligations, the DIP Liens (as defined below), the DIP Documents, the ABL Obligations, the Prepetition ABL Liens, the ABL Adequate Protection Liens, the Prepetition ABL Documents, the Prepetition Term Obligations, the Prepetition Term Liens, or the Prepetition Term Documents, as applicable, including, without limitation, (i) any so-called "lender liability" or equitable

subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties or the Prepetition Secured Parties.  For the avoidance of doubt, and notwithstanding anything in the Interim Orders or the DIP Documents to the contrary, nothing in the Interim Orders or the DIP Documents releases any of the Debtors' or their estates' claims or causes of action against the Debtors' Representatives (in their capacities as such) or any of their respective Representatives (in their capacities as such).

32.    **Events of Default**.  The occurrence and continuation of any of the following events, unless waived by the Required DIP Lenders in writing and in accordance with the terms of the DIP Credit Agreement, shall constitute an event of default (collectively, the "**Events of Default**") under this Third Interim Order: (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Third Interim Order, subject to a three-business day cure period following the Debtors' receipt of notice of such failure from the DIP Agent (if such failure is capable of being cured); (b) the occurrence of an "Event of Default" as defined in the DIP Credit Agreement; or (c) delivery of an ABL Cash Collateral Termination Declaration (as defined herein).

33.    **DIP Milestones**.  The occurrence of an Event of Default under Section 8.01(b) of the DIP Credit Agreement, unless waived by the Required DIP Lenders in writing or extended with the consent of the Required DIP Lenders, in each case in accordance with the terms of the DIP Credit Agreement, shall, constitute an Event of Default under each of the DIP Credit Agreement and this Third Interim Order.

34.    **Termination Date; Remedies**.  (a) Subject to any applicable notice and cure period under the DIP Documents and/or the Interim Orders, while any Event of Default under the DIP Credit Agreement and/or the Interim Orders has occurred and is continuing, following the Debtors' receipt of notice, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order of the Court, but subject to the terms of the Interim Orders, (i) the DIP Agent, acting at the direction of the Required DIP Lenders, may declare, in accordance with Section 8.02 of the DIP Credit Agreement (w) the Term Commitments (as defined in the DIP Credit Agreement) of each DIP Lender to be terminated, (x) the unpaid principal amount of all outstanding DIP Loans, all interest accrued and unpaid thereon, and all other DIP Obligations owing or payable under the DIP Documents to be immediately due and payable, (y) subject to the Carve Out, termination of the DIP Facility and the DIP Documents as to any future obligation of the DIP Agent and the DIP Lenders, without affecting any of the DIP Liens or the DIP Obligations, or the post-petition administrative superpriority claim status of the DIP Obligations, and (z) that the application of the Carve Out (as defined below) has occurred through the delivery of the Carve Out Trigger Notice (as defined below) to the Debtors and the Prepetition ABL Agent (any such declaration shall be referred to as a "**DIP Termination Declaration**" and the date on which a DIP Termination Declaration is delivered shall be referred to as the "**DIP Termination Date**") and (ii) the DIP Agent, acting at the direction of the Required DIP Lenders, may declare a termination, reduction or restriction of the Debtors' ability to use any Cash Collateral derived solely from the proceeds of DIP Collateral (including access to the DIP Account) or that constitutes Cash Collateral as of the Petition Date (any such declaration shall be referred to as a "**DIP Cash Collateral Termination Declaration**" and the date on which either a DIP Cash Collateral Termination Declaration or an ABL Cash Collateral Termination Declaration

is delivered shall be referred to as the "**Cash Collateral Termination Date**"; the Cash Collateral Termination Declaration and the DIP Termination Declaration are each a "**Termination Declaration**"; the Cash Collateral Termination Date and the DIP Termination Date are each a "**Termination Date**"); and (b) upon the occurrence and during the continuation of an ABL Cash Collateral Termination Event, the Prepetition ABL Agent (acting at the direction of the Required Lenders (as defined in the Prepetition ABL Credit Agreement, the "**Required ABL Lenders**")) may declare (x) a termination, reduction, or restriction of the Debtors' ability to use Cash Collateral, (y) all amounts owing or payable in respect of the Postpetition ABL Obligations to be immediately due and payable and termination of any future obligation of the Prepetition ABL Secured Parties to provide Cash Management Services or renew Letters of Credit, in each case, without affecting the liens or post-petition administrative superpriority claim status of the Postpetition ABL Obligations, and (z) that the application of the Carve Out (as defined below) has occurred through the delivery of the Carve Out Trigger Notice (as defined below) to the Debtors and the DIP Agent (any such declaration shall be referred to as an "**ABL Cash Collateral Termination Declaration**").

35.    A DIP Termination Declaration or ABL Cash Collateral Termination Declaration shall be given by electronic mail (or other electronic means) to counsel to the Debtors, counsel to the Committee, counsel to the DIP Lenders, and counsel to the DIP Agent (solely with respect to an ABL Cash Collateral Termination Declaration), counsel to the Prepetition ABL Agent (other than with respect to an ABL Cash Collateral Termination Declaration), counsel to the Prepetition Term Agent, counsel to the Prepetition Term Lenders, and the U.S. Trustee.

36.    The automatic stay is hereby modified so that five (5) business days after the date a DIP Termination Declaration or ABL Cash Collateral Termination Declaration is delivered (such

five (5) business day period, the "**Remedies Notice Period**"), (a) the DIP Agent, acting at the direction of the Required DIP Lenders, shall be entitled to exercise its applicable rights and remedies in accordance with the DIP Documents and the Interim Orders, subject in all respects to the Carve Out (as defined below); <u>provided</u> that the DIP Agent shall not be permitted to exercise rights and remedies with respect to ABL Priority Collateral without the consent of the Prepetition ABL Agent and (b) the Prepetition ABL Agent, acting at the direction of the Required ABL Lenders, shall be entitled to exercise its applicable rights and remedies with respect to the Postpetition ABL Obligations, in accordance with the Interim Orders, subject in all respects to the Pre-Carve Out Amounts; <u>provided</u> that the Prepetition ABL Agent shall not be permitted to exercise rights and remedies with respect to Term Priority Collateral without the consent of the Prepetition Term Agent and the DIP Agent.  During the Remedies Notice Period, the Debtors and/or any other party in interest shall be entitled to seek an emergency hearing (an "**Emergency Hearing**") from the Court. If an Emergency Hearing is requested to be heard prior to the expiration of the Remedies Notice Period but is scheduled for a later date by the Court, the Remedies Notice Period shall be automatically extended to the date of such hearing.

37.    Unless the Court rules that an Event of Default or ABL Cash Collateral Termination Event has not occurred during the Remedies Notice Period, at the end of the Remedies Notice Period (a) the automatic stay shall automatically be terminated, without further notice or order, as to the DIP Agent and the DIP Lenders, subject to the Carve Out, and as to the Prepetition ABL Agent and Cash Management Banks (as defined in the Prepetition ABL Credit Agreement), subject to the Pre-Carve Out Amounts and (b) the Debtors' authorization to use Cash Collateral will terminate.  Upon expiration of the Remedies Notice Period, the DIP Agent, the Prepetition ABL Agent, and any liquidator or other professional retained by either of the foregoing will have the

right to access and utilize, at no cost or expense, any trade names, trademarks, copyrights, or other intellectual property of the Debtors to the extent necessary or appropriate in order to sell, lease, or otherwise dispose of any of the DIP Collateral, including pursuant to any Court-approved sale process.  Notwithstanding the foregoing, the DIP Secured Parties shall have no right to exercise rights and remedies with respect to the ABL Priority Collateral without the consent of the Prepetition ABL Agent.  Any ABL Priority Collateral or proceeds thereof received by any DIP Secured Party or Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the ABL Priority Collateral or otherwise received by a DIP Secured Party or Prepetition Secured Party, shall be segregated and held in trust for the benefit of and forthwith paid over to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The Prepetition ABL Agent is hereby authorized to make any such endorsements as agent for any such DIP Secured Parties or Prepetition Secured Parties, as applicable.  This authorization is coupled with an interest and is irrevocable.  From and after an ABL Cash Collateral Termination Event, any payments, property, or other amounts in respect of the DIP Obligations shall be paid ratably to the applicable Prepetition ABL Secured Parties on account of the Cash Management Obligations until such Cash Management Obligations have been indefeasibly paid in full in cash.

38.     **ABL Cash Collateral Termination Event**.  The occurrence and continuation of any of the events set forth on Exhibit 3 attached to the First Interim Order, unless waived by the Prepetition ABL Agent in writing, shall constitute an "**ABL Cash Collateral Termination Event**" under each Interim Order.

39.     **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Third Interim Order**.  Based on the findings set forth in the Interim Orders and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of any Interim Order are hereafter reversed or modified on appeal or otherwise, the DIP Agent, the DIP Lenders, and Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  To the extent provided by section 364(e) of the Bankruptcy Code, any such modification, amendment, or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim, or priority authorized or created hereby.

40.     **Indemnification**.   To the extent provided by the DIP Credit Agreement, the Prepetition Term Credit Agreement, or the Prepetition ABL Credit Agreement, as applicable, the Debtors shall, jointly and severally, indemnify and hold harmless the DIP Agent, the Prepetition ABL Agent, each of the DIP Lenders and other Prepetition Secured Parties, and each of their respective affiliates, officers, directors, fiduciaries, employees, agents, advisors, attorneys and representatives and all other Indemnitees (as defined in the DIP Credit Agreement) from and against all losses, claims, liabilities, damages, and expenses (including out-of-pocket fees and disbursements of counsel) in connection with any investigation, litigation or proceeding, or the preparation of any defense with respect thereto, arising out of or relating to the DIP Facility, the use of Cash Collateral or the transactions contemplated in the Interim Orders, the DIP Credit Agreement or the other DIP Documents.

41.     **Proofs of Claim**.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties will not be required to file proofs of claim or requests for administrative expense in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  Notwithstanding the

foregoing or any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of the Prepetition ABL Agent and the Prepetition Term Agent, is hereby authorized and entitled, in its sole discretion, to file a single consolidated master proof of claim on behalf of the Prepetition ABL Secured Parties and the Prepetition Term Secured Parties, respectively, in the lead Chapter 11 Case, *In re Accuride Corporation*, Case No. 24-12289 (JKS) (Jointly Administered), on account of any and all of ABL Obligations and all Prepetition Term Obligations, respectively, and such master proof of claim shall be treated as if such entity had filed a separate proof of claim and request for administrative expense in each Chapter 11 Case or any Successor Cases (as applicable).  Any master proof of claim filed by Prepetition ABL Agent or the Prepetition Term Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Secured Parties and the Prepetition Term Secured Parties, respectively.  The master proofs of claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Chapter 11 Cases or to assert that the amount of its claim is different from that set forth on the applicable master proof of claim.  The master proofs of claim shall not be required to (i) attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the applicable Prepetition Secured Party, or (ii) to identify any Prepetition Secured Party by its name or identify whether any Prepetition Secured Party acquired its claim from another party or the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation

among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.

42. **Carve Out**.

(a)   Carve Out.  As used in this Third Interim Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (other than any restructuring, sale, success or other transaction-based fees) (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the first business day following delivery by the DIP Agent or the Prepetition ABL Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,500,000 incurred after the first business day following delivery by the DIP Agent or the Prepetition ABL Agent of the Carve Out Trigger Notice (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (acting at the direction of the Required DIP Lenders) or the Prepetition ABL

Agent (acting at the direction of the Required ABL Lenders) to the Debtors, their lead restructuring counsel, counsel to the DIP Agent (if delivered by the Prepetition ABL Agent), counsel to the Prepetition ABL Agent (if delivered by the DIP Agent), the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of (i) with respect to a notice delivered by the DIP Agent, an Event of Default and acceleration of the DIP Obligations under the DIP Facility or (ii) with respect to a notice delivered by the Prepetition ABL Agent, an ABL Cash Collateral Termination Event, as applicable, in each case, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

      (b)    <u>Delivery of Weekly Fee Statements</u>.

      (i)    Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "**Estimated Fees and Expenses**") incurred during the preceding week by such Professional Person (through Saturday of such week, the "**Calculation Date**"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Weekly Statement**"); provided that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same

day received to the DIP Agent and the Prepetition ABL Agent).  If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved 13-Week Cash Flow for such period for such Professional Person.

      (c)      <u>Carve Out Reserves</u>.

      (i)      Commencing with the week ended October 11, 2024, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (including cash held in the DIP Account) to fund a reserve in an amount equal to the sum of (a) the greater of (i) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the immediately prior Wednesday to the Debtors and the DIP Agent, and (ii) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved 13-Week Cash Flow during such week, *plus* (b) the Post-Carve Out Trigger Notice Cap, *plus* (c) an amount equal to the amount of Allowed Professional Fees set forth in the Approved 13-Week Cash Flow for the week occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust (the "**Funded Reserve Account**") to pay such Allowed Professional Fees prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)    On the day on which a Carve Out Trigger Notice is given by the DIP Agent or the Prepetition ABL Agent, as applicable, to the Debtors with a copy to counsel to the Committee, the DIP Agent, and the Prepetition ABL Agent, as applicable (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to, and the Debtors shall, utilize all cash held in the Funded Reserve Account (and, if such amounts are insufficient, any other cash on hand as of such date, including cash in the DIP Account, and any available cash thereafter held by any Debtor) to fund a reserve in an amount equal to the unpaid Allowed Professional Fees as of the Termination Declaration Date.  The Debtors shall deposit and hold such amounts in a segregated account, which, for the avoidance of doubt, may be the Funded Reserve Account, maintained by the Debtors in trust to pay the unpaid Allowed Professional Fees as of the Termination Declaration Date (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash (other than any cash constituting ABL Priority Collateral) on hand as of such date, including cash in the DIP Account and the Funded Reserve Account, and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.

(d)    <u>Application of Carve Out Reserves</u>.

(i)    All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth

above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until the Pre-Carve Out Amounts are indefeasibly paid in full. If the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, all remaining funds shall be distributed to the DIP Secured Parties and the Prepetition Secured Parties, in accordance with their lien priorities as set forth in the Interim Orders.

(ii)    All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, all remaining funds shall be distributed to the DIP Secured Parties and the Prepetition Secured Parties, in accordance with their lien priorities as set forth in the Interim Orders.

(iii)    Notwithstanding anything to the contrary in the DIP Documents or the Interim Orders, if either of the Carve Out Reserves is not funded in full in the amounts set forth in paragraph 42(c), then, any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively (subject to the limits contained in the Post-Carve Out Trigger Notice Cap), shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in paragraph 42(c), prior to making any payments to the DIP Secured Parties or the Prepetition Secured Parties; provided that no ABL Priority Collateral shall be used to fund the Post-Carve Out Trigger Notice Reserve or pay Post-Carve Out Amounts.

(iv)    Notwithstanding anything to the contrary in the DIP Documents or the Interim Orders, following delivery of a Carve Out Trigger Notice, the DIP Agent, the Prepetition Term Agent, and the Prepetition Term Lenders shall not sweep or foreclose on cash (including

cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, and the Prepetition ABL Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Post-Carve Out Trigger Notice Reserve has been fully funded, but in each case, the DIP Secured Parties and the Prepetition Secured Parties shall have a security interest in any residual interest in the Carve Out Reserves, with any excess distributed to the DIP Secured Parties and the Prepetition Secured Parties, in accordance with their lien priorities as set forth in the Interim Orders.

(v)     Further, notwithstanding anything to the contrary in the Interim Orders, (A) disbursements by the Debtors from the Carve Out Reserves shall not constitute DIP Loans or increase or reduce the DIP Obligations, (B) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out with respect to any shortfall (as described below), and (C) subject to the limitations with respect to the DIP Agent, DIP Lenders, the Prepetition Agents, and Prepetition Lenders set forth in this paragraph 42, in no way shall the Initial Approved 13-Week Cash Flow, any subsequent Approved 13-Week Cash Flow, Carve Out, Post-Carve Out Trigger Notice Cap or Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in the Interim Orders or the DIP Documents, the Carve Out shall be senior to all claims and all liens securing such claims including, but not limited to, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Prepetition Obligations, the Prepetition Liens, and any and all other forms of adequate protection, liens, or claims related the DIP Obligations and the Prepetition Obligations; provided that, notwithstanding anything to the

contrary in the Interim Orders, the Post-Carve Out Amounts shall not be senior to any claims or liens held by the Prepetition ABL Secured Parties on ABL Priority Collateral.

(e)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>. Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(f)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Agent, the DIP Lenders, the Prepetition Agents, or the other Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases.  Nothing in the Interim Orders or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, the Prepetition Agents, or the other Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)     <u>Payment of Allowed Professional Fees on or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

43.     **Limitations on Use of DIP Proceeds, Cash Collateral, and Carve Out**.  No proceeds of the Carve Out, the DIP Facility, the Postpetition ABL Obligations, the DIP Collateral, or the Prepetition Collateral, in each case, including Cash Collateral, may be used in connection with (a) preventing, hindering, or delaying any of the DIP Agent's, the DIP Lenders' or the Prepetition Secured Parties' realization upon any of the DIP Collateral or Prepetition Collateral or enforcement of any of their respective rights thereto in accordance with the Interim Orders and the

DIP Documents or the Prepetition Debt Documents, as applicable; (b) for any purpose that is prohibited under the Interim Orders, the Final Order (when entered), the DIP Documents, or the Bankruptcy Code; (c) to prosecute or finance in any way any adversary action, suit, arbitration, proceeding, application, motion, or other litigation or Challenge of any type adverse to the interests of any or all of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties, any of their respective Representatives, or their respective rights and remedies under the DIP Documents, the Interim Orders, the Final Order (when entered), or the Prepetition Debt Documents, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, section 724(a) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or applicable state law equivalents; (d) for the payment of fees, expenses, interest, or principal under the Prepetition Term Documents (other than payments on account of Adequate Protection Obligations required by the Interim Orders), (e) to make any distribution under a plan of reorganization confirmed in the Chapter 11 Cases that does not provide for the indefeasible payment of the DIP Loans and ABL Obligations in full and in cash, except as otherwise agreed; (f) except as permitted by the Approved 13-Week Cash Flow (including any Permitted Variances), to make any payment in settlement of any claim, action, or proceeding in excess of $500,000 in the aggregate without the prior written consent of the DIP Agent, acting at the direction of the Required DIP Lenders, and the Prepetition ABL Agent; (g) incurring Indebtedness (as defined in the DIP Credit Agreement), except to the extent permitted under the DIP Credit Agreement and the Interim Orders; (h) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under the Interim Orders, the DIP Documents, or the Prepetition Debt Documents; or (i) seeking to subordinate, recharacterize, disallow, or avoid the DIP Obligations, the Prepetition Term Obligations or the ABL Obligations; provided, that, notwithstanding the foregoing ,the

Debtors are permitted to pay allowed fees and expenses, in an amount not to exceed $50,000 in the aggregate incurred by Committee Professionals, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority, or extent of the Prepetition Liens before the Challenge Deadline (as defined below).

44.     **Effect of Stipulations on Third Parties**.

(a)     *Generally*.   The Debtors' Stipulations and the Release set forth in the Interim Orders were binding on the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) upon entry of the First Interim Order , were reaffirmed upon entry of the Second Interim Order and are hereby further reaffirmed upon entry of this Third Interim Order.   The Stipulations shall also be binding on all creditors and all other parties in interest and all of their respective successors and assigns, including, without limitation, the Committee, unless, and solely to the extent that, (i) a party in interest with standing and requisite authority has timely commenced an appropriate proceeding or contested matter required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in this paragraph 44) (A) objecting to or challenging the amount, validity, enforceability or priority of the Prepetition Obligations or the amount, validity, enforceability, perfection, priority or extent of the Prepetition Liens or (B) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses against the Prepetition Secured Parties or any of their respective Representatives in connection with matters related to the Prepetition Debt Documents, the Prepetition Obligations, the Prepetition Liens or the Prepetition Collateral (each such proceeding or contested matter, a "**Challenge**") by no later than seventy-five

(75) calendar days following the entry of the First Interim Order (the "**Challenge Period**"), as such deadline may be extended in writing from time to time in the sole discretion of the Prepetition ABL Agent (with respect to the Prepetition ABL Secured Parties, Prepetition ABL Liens and Prepetition ABL Obligations) or the Prepetition Term Agent (acting at the direction of the requisite Prepetition Term Secured Parties) (with respect to the Prepetition Term Liens and Prepetition Term Obligations) (the "**Challenge Deadline**"); provided that if the Chapter 11 Cases are converted to chapter 7 or a chapter 7 or chapter 11 trustee is appointed or elected prior to the expiration of the Challenge Period, any such trustee shall have the longer of (1) the remaining Challenge Period and (2) twenty-one (21) calendar days after their appointment, to commence a Challenge in accordance with this paragraph 44; and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge and any such judgment has become a final judgment that is not subject to any further review or appeal, and then only to the extent of any such final judgment.  Notwithstanding the foregoing, the Challenge Deadline set forth herein shall be tolled if a party-in-interest (including the Committee) files a motion seeking standing to bring a Challenge (a "**Standing Motion**"), which attaches one or more draft complaints that detail the alleged Challenge(s) that the applicable party in interest seeks to file, until such time as the Court decides the Standing Motion and solely with respect to (i) the party-in-interest that files the Standing Motion and (ii) the contents of the complaint(s) attached to the Standing Motion, in each case, solely to the extent such party in interest is granted standing and authority by the Court to bring the Challenge set forth in such complaint.  Notwithstanding the foregoing, nothing in any Interim Order vests or confers on any person or entity, including the Committee or any other official committee or statutory or non-statutory committee appointed or formed in the Chapter 11 Cases, or any other party in interest, standing or authority to pursue any cause of action held or

assertable by the Debtors or their estates, and all rights to object to any request for such standing are expressly reserved.

(b)     *Binding Effect*.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such Challenge does not result in a final and non-appealable judgment or order that is inconsistent with any of the Debtors' Stipulations, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Debtors' Stipulations shall, pursuant to each Interim Order, become irrevocably binding on any person, entity, or party in interest in the Chapter 11 Cases, as well as their successors and assigns, and in any Successor Case for all purposes and shall not be subject to further challenge or objection.  Notwithstanding anything to the contrary herein, if any Challenge is properly and timely commenced by a party in interest, the Debtors' Stipulations shall nonetheless remain binding on all other parties in interest.  To the extent any Challenge is timely and properly commenced, the Prepetition Secured Parties shall be entitled to, as adequate protection, payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in defending themselves against any Challenge.

45.     **No Third-Party Rights**.  Except as explicitly provided for herein, the Interim Orders do not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

46.     **Section 506(c) Claims**.  Subject to entry of the Final Order, and except to the extent of the Carve Out (to the extent set forth in paragraph 42 hereof), no costs or expenses of administration that have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the DIP Agent, the DIP Lenders, the Prepetition ABL Agent, the Prepetition ABL Secured Parties; Prepetition Term Agent, the Prepetition Term Lenders, the DIP Collateral, or the

Prepetition Collateral pursuant to section 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent (acting at the direction of the Required DIP Lenders), the Prepetition Term Agent (acting at the direction of the requisite Prepetition Term Lenders), or the Prepetition ABL Agent, as applicable, and no such consent shall be implied from any action, inaction, or acquiescence by any party.

47.     **<u>No Marshaling/Applications of Proceeds</u>**.  Subject to entry of the Final Order, in no event shall any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

48.     **<u>Section 552(b)</u>**.  Subject to entry of the Final Order, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception thereunder shall not apply to any of them.

49.     **<u>Limits on Lender Liability</u>**.  Nothing in any of the Interim Orders, the DIP Documents, the Prepetition Debt Documents, or any other documents related thereto, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Chapter 11 Cases or any Successor Cases.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not, solely by reason of having made loans under the DIP Facility, extending other financial accommodations during the Chapter 11 Cases to the Debtors, or authorizing the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive

Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in the Interim Orders or the DIP Documents, shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

50.     **Insurance Proceeds and Policies**.   To the extent that the Prepetition Secured Parties are listed as loss payees or additional insured under the Debtors' insurance policies, the DIP Agent, for the benefit of itself and the DIP Lenders, is also deemed to be the additional insured and loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in the order of priorities set forth herein.

51.     **Joint and Several Liability**.   Nothing in the Interim Orders shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and all DIP Obligations and adequate protection obligations in accordance with the terms hereof and of the DIP Documents.

52.     **Rights Preserved**.   Notwithstanding anything herein to the contrary, the entry of each Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, subject to the DIP Documents, the Prepetition Debt Documents and the Prepetition Intercreditor Agreement: (a) the DIP Agent's, DIP Lenders', and Prepetition Secured Parties' rights to seek any other or supplemental relief; (b) any of the rights of any of the DIP Agent, DIP Lenders, and/or the Prepetition Secured Parties under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic

stay imposed by section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (c) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties. For all adequate protection and stay relief purposes throughout the Chapter 11 Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection as of the Petition Date. For the avoidance of doubt, such request will survive termination of the Interim Orders.

53.     **Retiree Committee**. Notwithstanding anything herein or in the DIP Documents to the contrary, all rights of the Retiree Committee with respect to the Final DIP Order are expressly preserved, and nothing herein or in the other DIP Documents prejudices the rights of the Retiree Committee to object to the Final DIP Order.

54.     **No Waiver by Failure to Seek Relief**. The failure of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Interim Orders, the DIP Documents, the Prepetition Debt Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties.

55.     **Binding Effect of Third Interim Order**. Immediately upon entry on the docket of this Court, the terms and provisions of this Third Interim Order shall become binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, all other creditors of any of the Debtors, the Committee, and all other parties in interest and their respective successors

and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11

Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

56.     **No Modification of Third Interim Order**.  A motion or pleading filed by any of

the Debtors to modify, stay, vacate, amend, or reverse this Third Interim Order shall be an Event

of Default and an ABL Cash Collateral Termination Event unless and until: (a) the DIP

Obligations, the ABL Obligations and the Prepetition Term Obligations have been indefeasibly

paid in full in cash (such payment being without prejudice to any terms or provisions contained in

the DIP Facility which survive such discharge by their terms), and all commitments to extend

credit under the DIP Facility have been terminated; or (b) the DIP Agent (acting at the direction

of the Required DIP Lenders), the Prepetition ABL Agent, and the Prepetition Term Agent (acting

at the direction of the requisite Prepetition Term Secured Parties), consent to such motion or

pleading.  Notwithstanding anything to the contrary herein and for the avoidance of doubt, the

Committee reserves all rights with respect to the terms of any additional interim or final orders

approving the DIP Facility.

57.     **Payments Free and Clear.**  Any and all payments or proceeds remitted to the DIP

Secured Parties or the Prepetition Secured Parties pursuant to the provisions of the Interim Orders,

the Final Order (if and when entered) or the DIP Documents shall be received free and clear of

any claim, charge, assessment or other liability, whether asserted or assessed by, through or on

behalf of the Debtors.

58.     **Continuing Effect of Prepetition Intercreditor Agreement**.  The Debtors, the

DIP Agent, the DIP Lenders, and the Prepetition Secured Parties each shall be bound by, and in

all respects of the DIP Facility shall be governed by, and be subject to all the terms, provisions,

and restrictions of the Prepetition Intercreditor Agreement, which shall govern the relative

priorities, rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties.  For the avoidance of doubt, the DIP Obligations shall constitute "Term Loan Debt Obligations" under the Prepetition Intercreditor Agreement.

59.    **Third Interim Order Controls**.  In the event of any inconsistency between the terms and conditions of the DIP Documents, the First Interim Order, or the Second Interim Order, on the one hand, and this Third Interim Order, on the other, the provisions of this Third Interim Order shall control.

60.    **Discharge**.  The DIP Obligations, the Postpetition ABL Obligations and, except as otherwise provided in paragraphs 15(e) hereof, the obligations of the Debtors with respect to the adequate protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless (x) such obligations have been indefeasibly paid in full in cash on or before the effective date of such plan of reorganization, (y) each of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, as applicable, has otherwise agreed in writing or as otherwise provided herein or (z) each of the DIP Agent, the DIP Lenders, the Prepetition Agents, and the other Prepetition Secured Parties have accepted their treatment in a plan of reorganization or liquidation as provided herein.  It shall be an Event of Default if the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment in full in cash of the DIP Obligations and the ABL Obligations, and the payment of the Debtors' obligations with respect to the adequate protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale), unless otherwise agreed (a "**Prohibited Plan**

**or Sale**"), in each case, without the written consent of each of the DIP Agent (acting at the direction of the Required DIP Lenders), DIP Lenders, the Prepetition Term Agent (acting at the direction of the requisite Prepetition Term Secured Parties), and the Prepetition ABL Agent, as applicable. For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

61.     **Survival**.  The provisions of the Interim Orders, including with respect to the priority of the Carve Out, and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or any Successor Cases.  The terms and provisions of the Interim Orders shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases notwithstanding the entry of any orders described in clauses (a)–(d) above, and all claims, liens, security interests, and other protections granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties pursuant to the Interim Orders and/or the DIP Documents shall maintain their validity and priority as provided by the Interim Orders until: (i) in respect of the DIP Facility, all the DIP Obligations have been indefeasibly paid in full in cash; and (ii) in respect of the Prepetition ABL Facility, all of the ABL Obligations have been indefeasibly paid in full in cash; (iii) in respect of the Prepetition Term Facility, all of the Prepetition Term Obligations have been indefeasibly paid in full in cash. The terms and provisions concerning the indemnification of the DIP Agent, the Prepetition ABL Agent, the DIP Lenders, the Prepetition Term Lenders, and the Prepetition ABL Lenders shall

continue in the Chapter 11 Cases, in any Successor Cases, following dismissal of the Chapter 11 Cases or any Successor Cases, following termination of the DIP Documents, and/or the indefeasible repayment of the DIP Obligations.

62.    **Payments Held in Trust**.  Except as expressly permitted in the Interim Orders or the DIP Credit Agreement, and subject to the Carve Out in all respects, in the event that any person or entity receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral, or receives any other payment with respect thereto from any other source prior to all DIP Obligations in accordance with the DIP Credit Agreement, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall, subject to notice and a hearing, immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Credit Agreement and the Interim Orders; provided that, to the extent any such payment or proceeds of DIP Collateral constitute ABL Priority Collateral, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds in trust for the benefit of the Prepetition ABL Secured Parties and shall immediately, subject to notice and a hearing, turn over such payment or proceeds to the Prepetition ABL Agent, or as otherwise instructed by this Court, for application in accordance with the Prepetition Debt Documents and the Interim Orders.

63.    **Headings**.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Third Interim Order.

64.    **Final Hearing**.  The Final Hearing is scheduled for January 9, 2025, at 10:00 a.m. (Prevailing Eastern Time) before this Court.

65.    **Objections**.  Any party in interest objecting to the relief sought at the Final Hearing shall have filed and served written objections, which objections shall have been served upon: (a) the Debtors, c/o Accuride Corporation, 38777 Six Mile Road, Suite 410, Livonia, MI 48152 (Attn:  Matt Freeman, Senior Vice President, General Counsel); (b) co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois, 60654, Attn: Ryan Blaine Bennett    P.C.,    (ryan.bennett@kirkland.com),    Alexander    D.    McCammon (alex.mccammon@kirkland.com), and (Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Derek I. Hunter (derek.hunter@kirkland.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 N King St, Wilmington, Delaware 19801 (Attn: Joseph Barry (jbarry@ycst.com); Kenneth J. Enos (kenos@ycst.com); (c) counsel for the DIP Secured Parties and the Prepetition Term Secured Parties, (i) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn:  Matt Barr, Esq. (matt.barr@weil.com), David N.    Griffiths,    Esq.    (david.griffiths@weil.com),    and    F.    Gavin    Andrews,    Esq. (f.gavin.andrews@weil.com)), (ii) Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Mark Somerstein (mark.somerstein@ropesgray.com)) and Patricia Chen (patricia.chen@ropesgray.com) and (iii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Zachary I. Shapiro, Esq. (shapiro@rlf.com)); (d) counsel for the Prepetition ABL Agent, (i) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Eli J. Vonnegut (eli.vonnegut@davispolk.com); Stephanie Massman (stephanie.massman@davispolk.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899 (Attn: Robert J. Dehney (rdehney@morrisnichols.com)); (e) the United States Attorney's Office for the District of Delaware; (f) counsel to the Committee,

Morrison & Foerster LLP 250 West 55th Street, New York, New York 10019, Attn: Lorenzo Marinuzzi (lmarinuzzi@mofo.com), Oksana Lashko (olashko@mofo.com), Benjamin Butterfield (bbutterfield@mofo.com), Raff Ferraioli (rferraioli@mofo.com), and Miranda Russell (mrussell@mofo.com); and (g) co-counsel to the Committee, Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, DE 19801, Attn: Eric J. Monzo (emonzo@morrisjames.com), Brya M. Keilson (bkeilson@morrisjames.com), and Siena B. Cerra (scerra@morrisjames.com),by no later than October 29, 2024 at 4:00 p.m. (Prevailing Eastern Time) (except as such deadline may have been extended by consent of the Debtors).

66.     **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce the terms of, any and all matters arising from or related to the DIP Facility and/or any Interim Order.

**Dated: December 30th, 2024**
**Wilmington, Delaware**

J. KATE STICKLES
UNITED STATES BANKRUPTCY JUDGE