IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 24-12289 (JKS) <br> ) <br> ) (Jointly Administered) <br> ) <br> ) **Related to Docket No. 673** |
| ACCURIDE CORPORATION, *et al.*,[1] | |
| Debtors. | |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF RETIREES TO CONFIRMATION OF THE MODIFIED AMENDED JOINT PLAN OF REORGANIZATION OF ACCURIDE CORPORATION AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Official Committee of Retirees (the "Retiree Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Accuride Corporation and its debtor affiliates (collectively, the "Debtors") hereby objects (this "Limited Objection") to confirmation of the Debtors' proposed *Modified Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 673] (the "Plan").[2] In support of the Limited Objection, the Retiree Committee respectfully states as follows:

## BACKGROUND

**I.    General Background**

1.    On October 9, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On October 11, 2024, this Court entered an

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Accuride Corporation (9077); Accuride Group Holdings, Inc. (4531); Accuride Intermediate Co., Inc. (9045); Accuride Distributing, LLC (3124); Accuride EMI, LLC (0389); Accuride Erie L.P. (4862); Accuride Henderson Limited Liability Company (8596); AKW General Partner, L.L.C. (4861); AOT, LLC (3088); Armor Parent Corp. (6684); Bostrom Holdings, Inc. (9282); Bostrom Seating, Inc. (7179); Gunite Corporation (9803); KIC LLC (6356); Transportation Technologies Industries, Inc. (2791); and Truck Components, Inc. (5407). The location of the Debtors' service address is: 38777 Six Mile Road, Suite 410, Livonia, MI 48152.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

order directing the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 75]. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases. On October 22, 2024, the U.S. Trustee appointed an official committee of unsecured creditors [Docket No. 127]. On December 10, 2024, the U.S. Trustee appointed the Retiree Committee [Docket No. 424]. On December 16, 2024, the Retiree Committee selected, subject to Court approval, the law firm McDermott Will & Emery LLP as its counsel in the Chapter 11 Cases.

2. The Debtors sought the appointment of the Retiree Committee on the grounds that (i) Debtor Gunite Corporation ("Gunite") provides certain post-employment medical, prescription, vision, dental and life insurance coverage benefits (the "OPEB") to approximately 136 retired union employees of Gunite (the "Gunite Retirees") and certain other beneficiaries, which OPEB Gunite is obligated to provide to the Gunite Retirees under the Gunite Corporation (Rockford Illinois) Master Retired Bargained Employee Health Benefit Plan (the "Gunite OPEB Plan"), (ii) a liquidation of the assets and/or equity of Gunite may be necessary in these Chapter 11 Cases due to the Debtors' inability to sell the underperforming "Accuride Wheel Ends Solutions" business ("Wheel Ends"), which is a component of Gunite, and (iii) Bankruptcy Code section 1114 requires the appointment of a retiree committee in the event that modification or termination of certain retiree benefits offered to the Gunite OPEB Plan is required.[3]

---

[3] *See Motion of Debtors for Entry of an Order (I) Directing the United States Trustee to Appoint a Committee of Retired Employees of Gunite Corporation, and (II) Granting Related Relief* [Docket No. 228], ¶¶ 7–10.

**II.     The Plan**

3.      The Plan contemplates a deleveraging restructuring transaction via an equitization of the prepetition debt of an ad hoc group of lenders (the "AHG") under the Debtors' Prepetition Term Loan Credit Agreement and a recapitalization of the Debtors' businesses upon exit, in the form of incremental exit financing from the AHG.[4]  As set forth in the Disclosure Statement, the AHG has indicated that it is unwilling to take control of Wheel Ends following a restructuring and anticipates a wind-down and liquidation of Wheel Ends' assets.[5]  Thus, the Debtors seek to terminate the Gunite OPEB Plan.[6]

**III.    The Gunite OPEB Termination Proposal**

4.      On December 16, 2024, the Debtors provided the Retiree Committee with the Gunite OPEB Termination Proposal.  Since then, the Retiree Committee has been working to obtain the relevant information necessary to evaluate the proposal, including information about the nature of the retiree benefits, the costs of providing such benefits, and the number of retirees covered under the Gunite OPEB Plan.

5.      The Debtors provided the Retiree Committee with certain information requested, but only provided one of the most critical pieces of information, the actual costs of coverage for Gunite Retirees going forward under the Debtors' proposal, on Wednesday, February 5—less than one week before the Plan confirmation hearing.  Further, the Retiree Committee still does not have certain other important pieces of information, such as an accurate recent accounting of the number of retirees and other beneficiaries receiving benefits under the Gunite OPEB Plan.

---

[4]   *See* Disclosure Statement, Section II.

[5]   *See id.*, Section VI.H.

[6]   See Plan, Article IV.J.

Nevertheless, once the Retiree Committee obtained the cost information, it promptly sprang into action and provided a counterproposal to the Debtors the very next day, February 6. On Friday, February 7, the Debtors informed the Retiree Committee that they could not accept the counterproposal.

6. The parties continue to negotiate in hopes of reaching a resolution. Absent a resolution, however, the Retiree Committee understands that the Debtors will not be pursuing a termination of the Gunite OPEB Plan through the Plan and will instead continue the benefits provided thereunder and attempt to terminate such benefits at a later date, post-emergence.

## **LIMITED OBJECTION**

7. The Retiree Committee objects to confirmation of the Plan insofar as it seeks to terminate the Gunite OPEB Plan. Although the Retiree Committee is sympathetic to the Debtors' need to quickly confirm its Plan, the Debtors have not satisfied their burden under Bankruptcy Code section 1114 and, thus, have failed to satisfy the requirements for confirmation set forth in Bankruptcy Code section 1129(a)(13). Further, the Debtors have failed to comply with the procedural requirements for modifying retiree benefits set forth in Bankruptcy Code section 1114.

8. Bankruptcy Code section 1129(a)(13) provides that a plan may only be confirmed if it provides for the continuation after its effective date of payment of all retiree benefits . . . at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 . . . at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits." Bankruptcy Code section 1114(e)(1)(B), in turn, provides that a debtor shall timely pay and shall not modify any retiree benefits, except that the debtor and the authorized representative of the recipients of retiree benefits may agree to modification of such

payments. And Bankruptcy Code section 1114(g) provides that a court shall enter an order providing for modification in the payment of retiree benefits if the court finds that (1) the debtor has, prior to the hearing on the application for modifying retiree benefits, made a proposal that fulfills the requirements of subsection (f) of section 1114; (2) the authorized representative of the retirees has refused to accept such proposal without good cause; and (3) such modification is necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities. Subsection (f) of section 1114 requires a debtor, prior to filing an application seeking modification of retiree benefits, to (A) make a proposal to the authorized representative of the retirees, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and (B) provide the representative of the retirees with such relevant information as is necessary to evaluate the proposal.

9.      Because the Plan does not provide for the continuation after its effective date of payment of the retiree benefits under the Gunite OPEB Plan at the level established pursuant to subsection (e)(1)(B) or (g) of Bankruptcy Code section 1114, the requirement set forth in Bankruptcy Code section 1129(a)(13) has not been satisfied, and the Plan cannot be confirmed. The Plan does not provide for the continuation after its effective date of payment of all retiree benefits at the level established pursuant to Bankruptcy Code section 1114(e)(1)(B) because the Retiree Committee has not agreed to the termination of retiree benefits as set forth in the Gunite OPEB Termination Proposal. And the Plan does not provide for the continuation after its effective date of payment of all retiree benefits at the level established pursuant to Bankruptcy

Code section 1114(g) because: (a) the debtor has not made a proposal that fulfills the requirements of subsection (f) of section 1114; (b) the Retiree Committee has not refused to accept the Gunite OPEB Termination Proposal without good cause; and (c) the Debtors have not met their burden of establishing that the Gunite OPEB Termination Proposal is necessary to permit the reorganization of the Debtors and that Gunite's retirees are being treated fairly and equitably.

10. With respect to section 1114(g):

    a. ***First***, regarding section 1114(g)(1), the Debtor has not made a proposal that fulfills the requirements of subsection (f) of section 1114. The Debtors never filed an "application" seeking modification of the retiree benefits as required under section 1114(f). The Debtors merely incorporated the Gunite OPEB Termination Proposal (to which the Retiree Committee has not consented) into the Plan. In addition, the Debtors have not made any showing that the Gunite OPEB Termination Proposal provides for "those necessary modifications in the retiree benefits that are necessary to permit the reorganization of the debtor,"[7] nor did the Debtors make any showing that the proposal assures that all creditors, the Debtors and all of the affected parties are treated fairly and equitably, as is required under section 1114(f)(1)(A). And finally, the Debtors still have not provided the Retiree Committee

---

[7] The Third Circuit only considers "necessary" those minimum modifications that are "essential" to a debtor's reorganization or, put differently, necessary "to prevent[] the debtor's liquidation." *Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of America, AFL-CIO-CLC*, 791 F.2d 1074, 1089, 14 C.B.C.2d 95 (3d Cir. 1986). In addition, in the Third Circuit, the "necessary" requirement "should be 'construed strictly to signify only modifications that the trustee is constrained to accept because they are directly related to the [c]ompany's financial condition and its reorganization.'" *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 342 n.10 (3d Cir. 2006) (quoting *Wheeling*, 791 F.2d at 1088).

Although *Wheeling* was a case construing Bankruptcy Code section 1113, courts tend to look to cases relating to section 1113 when interpreting 1114 given that the section 1113 case law is more extensively developed and given that the statutory requirements for both sections are the same. *See Kaiser*, 456 F.3d at 342 n.10 (applying the standard for what is "necessary to permit the reorganization of the debtor" set forth in *Wheeling* to the section 1114 context); *see also In re Walter Energy, Inc.*, 542 B.R. 859, 878 (Bankr. N.D. Ala. 2015) ("The statutory requirements for modification of retiree benefits are substantially the same as the requirements for rejection of collective bargaining agreements.") (internal quotations omitted); *In re Horsehead Indus., Inc.*, 300 B.R. 573, 583 (Bankr. S.D.N.Y. 2003) ("The statutory requirements under both sections 1113 and 1114 are the same. Accordingly, the discussion relating to requirements under 1113 also applies to 1114."); *In re Ionosphere Clubs, Inc.*, 134 B.R. 515, 519-20 (Bankr. S.D.N.Y. 1991) ("Compliance with 1114 is substantively and procedurally the same as compliance with 1113.").

      with all of the relevant information necessary to evaluate the proposal, in contravention of section 1114(f)(2), including the precise number of retirees and other beneficiaries currently receiving benefits under the Gunite OPEB Plan.

   b.   ***Second***, regarding section 1114(g)(2), the Retiree Committee has not refused to accept the Gunite OPEB Termination Proposal without good cause. On the contrary, the Retiree Committee has refused to accept the Gunite OPEB Termination Proposal because the Debtors have not provided any evidence that the proposal is necessary to permit the reorganization of the Debtors and that it treats Gunite's retirees fairly and equitably, which the Retiree Committee submits is good cause. Further, the Retiree Committee does not believe the Debtors would be able to meet their burden of establishing that the Gunite OPEB Termination Proposal is necessary to permit the reorganization of the Debtors and treats Gunite's retirees fairly and equitably.

   c.   ***Third***, regarding section 1114(g)(3), as previously discussed, the Debtors have not met their burden of establishing that the Gunite OPEB Termination Proposal is necessary to permit the reorganization of the Debtors and that Gunite's retirees are being treated fairly and equitably.

11.    In light of the above, the Plan does not provide for the continuation after its effective date of payment of the retiree benefits under the Gunite OPEB Plan at the level established pursuant to subsection (g) of Bankruptcy Code section 1114. Thus, the requirement set forth in Bankruptcy Code section 1129(a)(13) has not been satisfied, and the Plan cannot be confirmed.

12.    In addition to the above, the Debtors never disclosed to the Retiree Committee that they would be modifying the Gunite CBA pursuant to the Gunite Wind-Down Agreement, and the Retiree Committee was not aware of such modifications until the modified Plan was filed on the evening of Friday, February 7 and the Plan Supplement was filed on the evening of Saturday, February 8. To the extent the Debtors and AHG are taking the position that such modifications will allow the Reorganized Debtors to terminate the Gunite OPEB Plan post-

confirmation, the Retiree Committee disputes such contention and submits that the modification of the Gunite CBA constitutes an end run-around the requirements set forth in Bankruptcy Code section 1114. It is clear under Third Circuit case law that section 1114 applies to any and all retiree benefits, even those that, outside of bankruptcy, could be terminated or modified consistent with plan documents, collective bargaining obligations, and governing law.[8]

13. Above all, section 1114 was added to the Bankruptcy Code to protect the rights of retirees to continue to receive certain benefits.[9] As U.S. House of Representatives member Don Edwards articulated on the House floor during the enactment of the Retiree Benefits Bankruptcy Protection Act of 1988:

> It is important that we pass this bill in order to give retirees peace of mind by removing the possibility of any sudden and unilateral termination of retiree health benefits. Retired workers are often completely dependent on these benefits. If such benefits are cut off . . . retirees may not be able to replace them because of high cost or lack of insurability.[10]

14. There is no doubt that the Gunite Retirees receiving benefits under the Gunite OPEB Plan are completely dependent on the benefits they are receiving, and if such benefits are cut off, many of the retirees will not be able to replace them without incurring exorbitant, and potentially prohibitive, costs. To attempt to strongarm the Gunite Retirees into accepting a termination of their benefits in bankruptcy without explaining why such termination is necessary —and without disclosing what the go-forward costs of coverage would be for retirees under such

---

[8] *See In re Visteon Corp.*, 612 F.3d 210, 219 (holding that "§ 1114 is unambiguous and clearly applies to any and all retiree benefits" including those that could otherwise be terminated at will and that "disregarding the text of that statute is tantamount to a judicial repeal of the very protections Congress intended to afford" in circumstances where retirees' benefits are being terminated).

[9] 134 Cong. Rec. H. 3488 (daily ed. May 23, 1988) (explaining that the Retiree Benefits Bankruptcy Protection Act of 1988, which added section 1114 to the Bankruptcy Code, was "designed to protect the health, life and disability benefits of retirees when companies file chapter 11[cases] . . . .").

[10] *Id.*

scenario until one week prior to the Plan confirmation hearing—cannot be the type of protection of retirees' rights Congress had in mind when it added section 1114 to the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

15.     The Retiree Committee and its professionals reserve the right to further object to the Plan and any other ancillary matters on any grounds and to respond to any reply of the Debtors or any other party in interest, either by further submission to this Court, at oral argument, or by testimony to be presented at the February 11, 2025 confirmation hearing or any other hearing.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

WHEREFORE, the Retiree Committee respectfully requests that the objections raised in this Limited Objection be addressed and incorporated into a revised version of the Plan that is acceptable to the Retiree Committee. The Retiree Committee further requests that the Court grant such other and further relief as the Court deems just and proper.

Dated: February 10, 2025
Wilmington, Delaware

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 485-3900
Fax:  (302) 351-8711
E-mail:  dhurst@mwe.com

*- and -*

Darren Azman (admitted *pro hac vice*)
Kristin Going (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY 10017-3852
Telephone:  (212) 547-5400
Fax:  (212) 547-5444
E-mail:  dazman@mwe.com
  kgoing@mwe.com

*Counsel for the Official Committee of Retirees*