## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ACCURIDE CORPORATION, *et al.*,[1] | ) | Case No. 24-12289 (JKS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## DEBTORS' MEMORANDUM
## OF LAW IN SUPPORT OF AN ORDER
## APPROVING THE DEBTORS' DISCLOSURE STATEMENT
## RELATING TO, AND CONFIRMING, THE MODIFIEDAMENDED JOINT
## PLAN OF REORGANIZATION OF ACCURIDE CORPORATION AND ITS
## DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Jared W. Kochenash (Del. Bar. No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:        (302) 571-6600
Facsimile:        (302) 571-1253
Email:        jbarry@ycst.com
        kenos@ycst.com
        jkochenash@ycst.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Alexander D. McCammon (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:        ryan.bennett@kirkland.com
        alex.mccammon@kirkland.com

-and-

Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:        derek.hunter@kirkland.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*

*Co-Counsel for the Debtors*
*and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Accuride Corporation (9077); Accuride Group Holdings, Inc. (4531); Accuride Intermediate Co., Inc. (9045); Accuride Distributing, LLC (3124); Accuride EMI, LLC (0389); Accuride Erie L.P. (4862); Accuride Henderson Limited Liability Company (8596); AKW General Partner, L.L.C. (4861); AOT, Inc. (3088); Armor Parent Corp. (6684); Bostrom Holdings, Inc. (9282); Bostrom Seating, Inc. (7179); Gunite Corporation (9803); KIC LLC (6356); Transportation Technologies Industries, Inc. (2791); and Truck Components, Inc. (5407).  The location of the Debtors' service address is:  38777 Six Mile Road, Suite 410, Livonia, MI 48152.

# TABLE OF CONTENTS

**Page(s)**

RELIEF REQUESTED....................................................................................................1

PRELIMINARY STATEMENT ....................................................................................2

BACKGROUND .............................................................................................................4

I.     Procedural History. ...............................................................................................4

II.    The Solicitation Process and Voting Results. .....................................................7

III.   The Objections. ....................................................................................................9

ARGUMENT ...................................................................................................................9

I.     The Disclosure Statement Contains "Adequate Information" as Required by
Section 1125 and 1126 of the Bankruptcy Code and Satisfies Notice Requirements.
......................................................................................................................................10

      A.     The Disclosure Statement Contains Adequate Information...................10

      B.     The Debtors Complied with Applicable Notice Requirements. ...........14

            1.     The Debtors Complied with the Notice Requirements Set Forth in
the Disclosure Statement Order. ........................................................14

            2.     The Ballots Used to Solicit Holders of Claims Entitled to Vote on
the Plan Complied with the Disclosure Statement Order. .........................15

            3.     The Debtors' Solicitation Period Complied with the Disclosure
Statement Order. ................................................................................15

            4.     The Debtors' Tabulation Procedures Complied with the Disclosure
Statement Order. ................................................................................15

            5.     Solicitation of the Plan Complied with the Bankruptcy Code and
Was in Good Faith. ...........................................................................16

II.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and
Should Be Confirmed. ...................................................................................17

      A.     The Plan Complies with the Applicable Provisions of the Bankruptcy
Code (Section 1129(a)(1)). ................................................................17

            1.     The Plan Satisfies the Classification Requirements of Section 1122
of the Bankruptcy Code. ...................................................................17

**Page(s)**

2.  The Plan Satisfies the Mandatory Plan Requirements of
    Section 1123(a) of the Bankruptcy Code.....................................20

    a.  Designation of Classes of Claims and Equity Interests,
        Specification of Unimpaired Classes, and Treatment of
        Impaired Classes (Section 1123(a)(1)–(3))..................................20

    b.  Equal Treatment Within Classes (Section 1123(a)(4))..................20

    c.  Means for Implementation (Section 1123(a)(5))..........................21

    d.  Prohibition of Issuance of Non-Voting Securities
        (Section 1123(a)(6))........................................................22

    e.  Selection of Directors and Officers (Section 1123(a)(7))..............22

    f.  Compliance with Section 1113 of the Bankruptcy Code..............23

B.  The Debtors Complied with the Applicable Provisions of the
    Bankruptcy Code (Section 1129(a)(2))......................................24

    1.  The Debtors Complied with Section 1125 of the Bankruptcy Code. ........25

    2.  The Debtors Complied with Section 1126 of the Bankruptcy Code. ........26

C.  The Plan Is Proposed in Good Faith (Section 1129(a)(3)). .................................27

D.  The Plan Provides that the Debtors' Payment of Professional Fees and
    Expenses Are Subject to Court Approval (Section 1129(a)(4)). .........................29

E.  The Debtors Disclosed All Necessary Information Regarding Directors,
    Officers, and Insiders (Section 1129(a)(5)). .........................................30

F.  The Plan Does Not Require Governmental Regulatory Approval
    (Section 1129(a)(6))........................................................31

G.  The Plan Is in the Best Interests of All the Debtors' Creditors
    (Section 1129(a)(7))........................................................31

H.  The Plan Is Confirmable Notwithstanding the Requirements of
    Section 1129(a)(8) of the Bankruptcy Code. .........................................33

I.  The Plan Provides for Payment in Full of All Allowed Priority Claims
    (Section 1129(a)(9))........................................................33

J.  At Least One Impaired Class of Non-Insider Claims Accepted the Plan
    (Section 1129(a)(10))........................................................35

K.  The Plan Is Feasible (Section 1129(a)(11)). .........................................35

**Page(s)**

L. All Statutory Fees Have Been or Will Be Paid (Section 1129(a)(12)). ................38

M. Retiree Benefits Treatment (Section 1129(a)(13)). ................................38

N. Sections 1129(a)(14) through 1129(a)(16) Do Not Apply to the Plan. ................40

O. The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code...................................................................40

 1. The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan (Section 1129(b)(1))....................................................41

 2. The Plan Is Fair and Equitable (Section 1129(b)(2)(B)(ii)).......................45

P. The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code (Section 1129(c)–(e)). ............................................45

III. The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code. ...................................................................46

A. Overview of the Plan's Compliance with Section 1123(b) of the Bankruptcy Code. ...................................................................46

B. The Plan's Release, Exculpation, and Injunction Satisfy Section 1123(b) of the Bankruptcy Code. ...................................................48

 1. The Debtor Release in the Plan is Appropriate.........................................48

 2. The Third-Party Release is Consensual and Appropriate and Should be Approved. ..................................................................52

 3. The Exculpation Provision is Appropriate.................................................54

 4. The Injunction Provision is Appropriate....................................................57

C. The Plan Complies with Provisions of Section 1123(d) of the Bankruptcy Code. ...................................................................58

IV. Modifications to the Plan Do Not Require Resolicitation. ................................58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 203 N. LaSalle St. Ltd. P'ship*,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*,
  *203 N. LaSalle St. P'ship*, 526 U.S. 434 (1999) .......................................................45

*In re Abbotts Dairies of Pa., Inc.*,
  788 F.2d 143 (3d Cir. 1986).........................................................................................30

*In re Abeinsa Holding, Inc.*,
  562 B.R. 265 (Bankr. D. Del. 2016) ............................................................................54

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007).........................................................................35

*In re Aegean Marine Petroleum Network, Inc.*,
  599 B.R. 717 (Bankr. S.D.N.Y. 2019).........................................................................59

*In re Aleris Int'l, Inc.*,
  No. 09-10478 (BLS), 2010 WL 3492664 (Bankr. D. Del. May 13, 2010).............40, 46

*In re Am. Solar King Corp.*,
  90 B.R. 808 (Bankr. W.D. Tex. 1988)..........................................................................63

*In re Armstrong World Indus., Inc.*,
  348 B.R. 111, 136 (Bankr. D. Del. 2006) ........................................................21, 46, 49

*In re Aztec Co.*,
  107 B.R. 585 (Bankr. M.D. Tenn. 1989) ......................................................................45

*B.D. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A.*
  (*In re B.D. Int'l Disc. Corp.*), 701 F.2d 1071 (2d Cir. 1983) ...................................32

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999).................................................................................................35, 45

*In re Bed Bath & Beyond Inc.*,
  No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023)........................................59

*In re BlockFi Inc.*,
  No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023).....................................................59

*Brite v. Sun Country Dev., Inc.* (*In re Sun Country Dev., Inc.*),
  764 F.2d 406 (5th Cir. 1985) ..................................................................................30, 31

*In re Capmark Fin. Grp. Inc.*,
 No. 09-13684 (CSS), 2011 WL 6013718 (Bankr. D. Del. Oct. 5, 2011) ...............................39

*In re Century Glove, Inc.*,
 Civ. A. Nos. 90-400-SLR and 90-401-SLR,
 1993 WL 239489 (D. Del. Feb. 10, 1993) ........................................................................30, 31

*Century Glove, Inc. v. First Am. Bank of N.Y.*,
 860 F.2d 94 (3d Cir. 1988).........................................................................................14, 18, 54

*In re Chapel Gate Apartments, Ltd.*,
 64 B.R. 569 (Bankr. N.D. Tex. 1986).................................................................................32

*In re Charter Commcn's*,
 419 B.R. 221 (Bankr. S.D.N.Y. 2009) .................................................................................47

*In re Congoleum Corp.*,
 362 B.R. 167 (Bankr. D.N.J. 2007) .....................................................................................59

*In re Coram Healthcare Corp., Inc.*,
 315 B.R. 321 (Bankr. D. Del. 2004) .................................................................46, 51, 52, 57

*In re Exaeris, Inc.*,
 380 B.R. 741 (Bankr. D. Del. 2008) .....................................................................................52

*In re Exide Techs.*,
 303 B.R. 48 (Bankr. D. Del. 2003) .......................................................................................46

*Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship*
 (*In re T-H New Orleans Ltd. P'ship*), 116 F.3d 790 (5th Cir. 1997)..............................30, 31

*First Am. Bank of N.Y. v. Century Glove, Inc.*,
 81 B.R. 274 (D. Del. 1988) ..................................................................................................14

*In re Flintkote Co.*,
 486 B.R. 99 (Bankr. D. Del. 2012) .......................................................................................39

*In re Freymiller Trucking, Inc.*,
 190 B.R. 913 (Bankr. W.D. Okla. 1996) ..............................................................................45

*Frito Lay, Inc. v. LTV Steel Co.* (*In re Chateaugay Corp.*),
 10 F.3d 944 (2d Cir. 1993)....................................................................................................22

*In re Future Energy Corp.*,
 83 B.R. 470 (Bankr. S.D. Ohio 1988)...................................................................................32

*In re Gen. Wireless Operations Inc.*,
 2017 WL 5461361 (Bankr. D. Del. Oct. 26, 2017) ..............................................................63

**Page(s)**

*Hargreaves v. Nuverra Env't Sols., Inc.* (In re Nuverra),
    590 B.R. 75 (D. Del. 2018),
    *aff'd*, 834 F. App'x 729 (3d Cir. 2021), *as amended* (Feb. 2, 2021) ........................45, 46, 47

*In re Heritage Org., L.L.C.*,
    375 B.R. 230 (Bankr. N.D. Tex. 2007).................................................................................22

*In re Indianapolis Downs, LLC*,
    486 B.R. 286 (Bankr. D. Del. 2013) ............................................................................ *passim*

*In re ION Media Networks, Inc.*,
    419 B.R. 585 (Bankr. S.D.N.Y. Nov. 24, 2009).....................................................................49

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987)..................................................................................................22

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*
    (*In re Route 37 Bus. Park Assocs.*), 987 F.2d 154 (3d Cir. 1993) ...................................22, 44

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986)......................................................................................46

*Kane v. Johns-Manville Corp.*,
    843 F.2d 636 (2d Cir. 1988)....................................................................................................39

*In re Lannett Co., Inc.*,
    No. 23-10559 (JKS) (Bankr. D. Del. June 8, 2023)................................................................47

*In re Lapworth*,
    1998 WL 767456 (Bankr. E.D. Pa. Nov. 2, 1998)..................................................................27

*In re Lason, Inc.*,
    300 B.R. 227 (Bankr. D. Del. 2003) .......................................................................................35

*In re Lernout & Hauspie Speech Prods., N.V.*,
    301 B.R. 651 (Bankr. D. Del. 2003), *aff'd sub nom.*, 308 B.R. 672 (D. Del. 2004) ..............46

*Liberty Nat'l Enter. v. Ambanc La Mesa L.P.*
    (*In re Ambanc La Mesa L.P.*), 115 F.3d 650 (9th Cir. 1997) ...........................................44, 46

*In re Lisanti Foods, Inc.*,
    329 B.R. 491 (D.N.J. 2005), *aff'd sub nom.*, 241 F. App'x 1 (3d Cir. 2007)...................15, 32

*In re Martin*,
    91 F.3d 389 (3d Cir. 1996)......................................................................................................51

*In re Master Mortg. Inv. Fund, Inc.*,
    168 B.R. 930 (Bankr. W.D. Mo. 1994)..............................................................................53, 54

32845529.2

*In re Metrocraft Pub. Serv., Inc.*,
   39 B.R. 567 (Bankr. N.D. Ga. 1984) ...................................................................16

*In re Monnier Bros.*,
   755 F.2d 1336 (8th Cir. 1985) ...........................................................................14

*In re Nat'l Truck Funding LLC*,
   588 B.R. 175 (Bankr. S.D. Miss. 2018) ..............................................................63

*In re Neff*,
   60 B.R. 448 (Bankr. N.D. Tex. 1985), *aff'd*, 785 F.2d 1033 (5th Cir. 1986) .........35

*In re Neshaminy Office Bldg. Assocs.*,
   62 B.R. 798 (E.D. Pa. 1986) ..............................................................................51

*In re NII Holdings, Inc.*,
   288 B.R. 356 (Bankr. D. Del. 2002) ...................................................................30

*NLRB v. Bildisco & Bildisco*,
   465 U.S. 513 (1984)...........................................................................................32

*In re Nutritional Sourcing Corp.*,
   398 B.R. 816 (Bankr. D. Del. 2008) ...................................................................21

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
   848 F.2d 414 (3d Cir. 1988).................................................................................14

*In re PC Liquidation Corp.*,
   383 B.R. 856 (E.D.N.Y. 2008) ...........................................................................15

*In re Phoenix Petrol., Co.*,
   278 B.R. 385 (Bankr. E.D. Pa. 2001) .........................................................14, 15, 16

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
   761 F.2d 1374 (9th Cir. 1985) ...........................................................................39

*In re Premier Int'l Holdings, Inc.*,
   No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) .........20, 59

*In re Prussia Assocs.*,
   322 B.R. 572 (Bankr. E.D. Pa. 2005) .................................................................39

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000)........................................................................30, 59, 61

*In re Richard Buick, Inc.*,
   126 B.R. 830 (Bankr. E.D. Pa. 1991) .................................................................47

**Page(s)**

*In re River Vill. Assocs.*,
　181 B.R. 795 (E.D. Pa. 1995) ........................................................................14

*In re Robertshaw US Holdings Corp.*,
　No. 24-90052, 2024 WL 3897812 (Bankr. S.D. Tex. Aug. 16, 2024) ....................................47

*In re S&W Enter.*,
　37 B.R. 153 (Bankr. N.D. Ill. 1984) ..................................................................21

*In re Scioto Valley Mortg. Co.*,
　88 B.R. 168 (Bankr. S.D. Ohio 1988)..................................................................16

*In re Sea Garden Motel & Apartments*,
　195 B.R. 294 (D. N.J. 1996), 464 B.R. 208 (Bankr. D. Del. 2011)........................................39

*In re Spansion, Inc.*,
　426 B.R. 114 (Bankr. D. Del. 2010) ...............................................................53, 57

*In re Sponsion, Inc.*,
　No. 09-10690 (KJC), 2010 WL 2905001 (Bankr. D. Del. 2010) ............................................59

*In re TCI 2 Holdings, LLC*,
　428 B.R. 117 (Bankr. D.N.J. 2010) ...................................................................20

*In re Tribune Co.*,
　464 B.R. 126 (Bankr. D. Del. 2011) ..................................................................39

*In re U.S. Brass Corp.*,
　194 B.R. 420 (Bankr. E.D. Tex. 1996) ................................................................16

*In re U.S. Truck Co.*,
　47 B.R. 932 (E.D. Mich. 1985), *aff'd*, 800 F.2d 581 (6th Cir. 1986) ....................................39

*In re Unichem Corp.*,
　72 B.R. 95 (Bankr. N.D. Ill. 1987) ..................................................................14

*In re Union Cnty. Wholesale Tobacco & Candy Co.*,
　8 B.R. 442 (Bankr. D.N.J. 1981) ....................................................................28

*In re W.R. Grace & Co.*,
　475 B.R. 34 (D. Del. 2012).........................................................................31, 39

*In re Wash. Mut., Inc.*,
　442 B.R. 314 (Bankr. D. Del. 2011) ...................................................53, 54, 55, 59

*In re WCI Cable, Inc.*,
　282 B.R. 457 (Bankr. D. Or. 2002).....................................................................53

**Page(s)**

*In re Wiersma,*
227 F. App'x 603 (9th Cir. 2007) ........................................................................20

*In re World Health Alts., Inc.,*
344 B.R. 291 (Bankr. D. Del. 2006) ....................................................................52

*In re Worldcom, Inc.,*
No. 02-13533 (AJG), 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ........................27

*In re Zenith Elecs. Corp.,*
241 B.R. 92 (Bankr. D. Del. 1999) .............................................................. *passim*

**Statutes**

11 U.S.C. § (6) .........................................................................................50, 51

11 U.S.C. § 101(51D)(B) ...................................................................................50

11 U.S.C. § 328(a) ...........................................................................................33

11 U.S.C. § 330(a)(1)(A) ...................................................................................33

11 U.S.C. § 365 ...............................................................................................51

11 U.S.C. § 365(f) ...........................................................................................64

11 U.S.C. § 503(b) ...........................................................................................37

11 U.S.C. § 507(a)(1) ........................................................................................37

11 U.S.C. § 507(a)(2) ...................................................................................37, 42

11 U.S.C. § 507(a)(8) ........................................................................................38

11 U.S.C. § 510(b) .................................................................................11, 23, 48

11 U.S.C. § 547 ...............................................................................................56

11 U.S.C. § 1113 .........................................................................................26, 27

11 U.S.C. § 1114 .........................................................................................42, 43

11 U.S.C. § 1114(e)(1)(B) ...................................................................................43

11 U.S.C. § 1122 ...............................................................................20, 21, 22, 62

11 U.S.C. § 1122(a) .....................................................................................21, 24

11 U.S.C. § 1123 ................................................................................... *passim*

**Page(s)**

11 U.S.C. § 1123(a) ................................................................................24

11 U.S.C. § 1123(a)(1)-(3) ......................................................................24

11 U.S.C. § 1123(a)(4) ............................................................................24

11 U.S.C. § 1123(a)(5) ............................................................................24

11 U.S.C. § 1123(a)(6) ............................................................................25

11 U.S.C. § 1123(a)(7) ......................................................................25, 26

11 U.S.C. § 1123(b) ...........................................................................50, 52

11 U.S.C. § 1123(b)(1)-(3) ...............................................................50, 51

11 U.S.C. § 1123(b)(2) ............................................................................51

11 U.S.C. § 1123(b)(3)(A) .......................................................................52

11 U.S.C. § 1123(d) ...........................................................................61, 62

11 U.S.C. § 1125 ...............................................................................*passim*

11 U.S.C. § 1125(a) ...........................................................................17, 28

11 U.S.C. § 1125(a)(1) .......................................................................13, 14

11 U.S.C. § 1125(b) ................................................................................28

11 U.S.C. § 1125(c) ................................................................................28

11 U.S.C. § 1125(e) ...........................................................................19, 20

11 U.S.C. § 1126 ...............................................................................*passim*

11 U.S.C. § 1126(b)(2) ......................................................................17, 48

11 U.S.C. § 1126(c) ...........................................................................19, 30

11 U.S.C. § 1126(f) ...........................................................................29, 30

11 U.S.C. § 1126(g) ................................................................................30

11 U.S.C. § 1127 ...............................................................................13, 63

11 U.S.C. § 1127(a) ................................................................................62

11 U.S.C. § 1129 ...............................................................13, 20, 21, 49

**Page(s)**

11 U.S.C. § 1129(a) ...................................................................................................20, 44

11 U.S.C. § 1129(a)(1) ....................................................................................................20

11 U.S.C. § 1129(a)(2) .........................................................................................27, 30, 60

11 U.S.C. § 1129(a)(3) .............................................................................30, 31, 32, 60

11 U.S.C. § 1129(a)(4) ...............................................................................................32, 33

11 U.S.C. § 1129(a)(5) ...............................................................................................33, 34

11 U.S.C. § 1129(a)(5)(A) ..............................................................................................34

11 U.S.C. § 1129(a)(5)(A)(i) ...........................................................................................33

11 U.S.C. § 1129(a)(5)(A)(ii) ..........................................................................................33

11 U.S.C. § 1129(a)(5)(B) ...............................................................................................34

11 U.S.C. § 1129(a)(6) ...............................................................................................34, 35

11 U.S.C. § 1129(a)(7) ...............................................................................................35, 36

11 U.S.C. § 1129(a)(7)(A)(ii) ..........................................................................................35

11 U.S.C. § 1129(a)(8) .........................................................................................36, 37, 44

11 U.S.C. § 1129(a)(9) ...............................................................................................37, 38

11 U.S.C. § 1129(a)(9)(A) .........................................................................................37, 38

11 U.S.C. § 1129(a)(9)(B) .........................................................................................37, 38

11 U.S.C. § 1129(a)(9)(C) ...............................................................................................38

11 U.S.C. § 1129(a)(10) .......................................................................................37, 38, 39

11 U.S.C. § 1129(a)(11) ...........................................................................................39, 42

11 U.S.C. § 1129(a)(12) ...................................................................................................42

11 U.S.C. § 1129(a)(13) ...............................................................................................42, 43

11 U.S.C. § 1129(a)(14) ...................................................................................................43

11 U.S.C. § 1129(a)(15) ...............................................................................................43, 44

11 U.S.C. § 1129(a)(16) ...................................................................................................44

**Page(s)**

11 U.S.C. § 1129(b) ............................................................................................ *passim*

11 U.S.C. § 1129(b)(1) ...............................................................................44, 45, 48

11 U.S.C. § 1129(b)(2) ..............................................................................................49

11 U.S.C. § 1129(c) ...................................................................................................49

11 U.S.C. § 1129(d) .............................................................................................49, 50

11 U.S.C. § 1129(e) ...................................................................................................50

**Rules**

Fed. R. Bankr. P. 3018(c) ..........................................................................................18

Fed. R. Bankr. P. 3019...............................................................................13, 62, 63

Fed. R. Bankr. P. 3020(e) ..........................................................................................64

Fed. R. Bankr. P. 6004(h) ..........................................................................................64

Fed. R. Bankr. P. 6006(d) ..........................................................................................64

Fed. R. Bankr. P. 9019.........................................................................................51, 52

Local Rule 3017-1 ......................................................................................................18

**Hearing Transcripts**

*In re Verso Corp.*,
    No. 16-10163 (KG), Hr'g Tr. 58:18-19 (Bankr. D. Del. June 23, 2016) ................................60

**Other Authorities**

5 Collier on Bankruptcy ¶ 1129.02[11] (15th ed. 1984).............................................39

7 Collier on Bankruptcy ¶ 1129.02[5][b] (16th ed. 2021) .....................................33, 34

H.R. Rep. No. 95-595, at 412, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368 .........................14, 21

S. Rep. No. 95-989, at 126, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912...............................14, 21

## **RELIEF REQUESTED**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") submit this memorandum of law (this "Memorandum") in support of (a) final approval of their *Disclosure Statement Relating to the Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 326] (the "Disclosure Statement") and (b) Confirmation of their *Modified Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 673] (as may be further modified, amended, or supplemented from time to time, the "Plan") pursuant to sections 1125, 1126, and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").

In further support of Confirmation of the Plan, the Debtors have filed:  (a) the *Declaration of Charles Moore, Chief Restructuring Officer of Accuride Corporation, in Support of the Debtors' Disclosure Statement Relating to, and Confirmation of, the Modified Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 688] (the "Moore Declaration"); (b) the *Declaration of Edward J. Stenger in Support of Confirmation of the Modified Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 680] (the "Stenger Declaration"); (c) the *Declaration of Daniel Jerneycic, Managing Director of Alvarez & Marsal North America LLC, in Support of The Debtors' Disclosure Statement Relating to, and Confirmation of, the Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 450] (the "Jerneycic Declaration"); and (d) the *Declaration of Anthony Schwartz in Support of the Disclosure Statement Relating to, and Confirmation of, the Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the*

*Bankruptcy Code* [Docket No. 449] (the "Schwartz Declaration").  The Debtors also rely on the *Declaration of Jeriad R. Paul Regarding the Solicitation and Tabulation of Votes on the Modified Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 681] (the "Voting Report", and together with the Moore Declaration, the Stenger Declaration, the Jerneycic Declaration, and the Schwartz Declaration, the "Declarations") in further support of Confirmation of the Plan.  In support of Confirmation of the Plan and approval of the Disclosure Statement, the Debtors respectfully state as follows.

## PRELIMINARY STATEMENT[2]

1.    The Debtors commenced these chapter 11 cases on October 9, 2024 (the "Petition Date") with the goal of expeditiously implementing an equitization transaction with their term loan lenders.  Just approximately four months after the Petition Date, the Debtors stand ready to confirm a chapter 11 plan that will (a) deleverage the Debtors' balance sheet by eliminating approximately $367 million of prepetition funded debt obligations, (b) provide liquidity in the form of the Exit Facility and the New ABL Facility, (c) provide recoveries to a broad set of stakeholders, including the following: (i) Allowed administrative and priority Claims will be either reinstated or paid in full, as applicable; (ii) Allowed DIP Amendment Claims will be satisfied in the form of a Holder's pro rata share of Exit Facility Takeback Loans and authorization to participate in the Exit Facility New Money Loans, and Allowed DIP Claims will be satisfied in the form of a Holder's pro rata share of the DIP Equity Pool; (iii) Allowed ABL Claims will be paid in full, in Cash; and

---

[2]    A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Charles M. Moore, Chief Restructuring Officer of Accuride Corporation, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 16] (the "First Day Declaration").  Capitalized terms used but not defined in this Memorandum have the meanings ascribed to them in the Disclosure Statement.

(iv) Allowed Term Loan Claims will share in the Term Loan Equity Pool, the Liquidating Trust A Beneficial Interests, and the Liquidating Trust B-1 Beneficial Interests, and (d) preserve the jobs of hundreds of the Debtors' hardworking employees.

2.      The Plan is the culmination of months of intense, good faith, arm's-length negotiations by and among Debtors, the AHG, Holders of ABL Claims, and the Sponsor.  The restructuring term sheet, attached to the First Day Declaration as <u>Exhibit A</u>, which originally served as the basis for the Plan, was agreed upon by the AHG.  In negotiating the original plan, the AHG recognized that an efficient chapter 11 case would be value-maximizing given the high level of consensus among the Debtors' key stakeholders and would minimize the potential negative consequences of a drawn-out chapter 11 process.  Accordingly, the AHG agreed, pursuant to the original plan, to the Impairment of their Claims.

3.      Since the Petition Date, the Debtors also have worked collaboratively with their other stakeholders to resolve any other issues that have arisen during these chapter 11 cases.  The Debtors have continuously worked with various stakeholders to confirm a Plan on a consensual basis.  The Debtors adjourned the originally scheduled Confirmation Hearing to engage in arduous negotiations with all stakeholders, including the AHG and Holders of ABL Claims, to reach agreement on the final terms of a comprehensive restructuring to resolve the Debtors' outstanding liabilities and position their business for go-forward success.  These negotiations bore fruit; the Plan the Restructuring Transactions contemplated thereby are supported by the near-entirety of the Debtors' existing creditor base, including each of the aforementioned parties.  This level of support leaves no question that the Plan, which contemplates significant economic concessions from the Holders of Term Loan Claims, is the value-maximizing path forward.

4.      Finally, the Debtors also conferred and collaborated with the Committee to address their concerns.  Accordingly, the Committee is supportive of the Plan.

5.      For these and other reasons set forth more fully in this Memorandum, the Debtors respectfully request that the Bankruptcy Court approve the Disclosure Statement, and confirm the Plan.

## BACKGROUND

### I.      Procedural History.

6.      On October 9, 2024, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.[3]  On October 18, 2024, the Debtors filed the *Debtors' Motion Seeking Entry of an Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof.*[4]

7.      On November 8, 2024, the Bankruptcy Court entered the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* (the "Bar Date Order"),[5] which established December 11, 2024, as the General Claims Bar Date and April 7, 2025, as the Governmental Bar Date (each as defined therein) and provided that any Holder of a Claim that fails to timely submit a Proof of Claim by

---

[3]     Docket No. 1.

[4]     Docket No. 118.

[5]     Docket No. 237.

the applicable bar date shall not be treated as a creditor with respect to such Claim for the purposes of either (a) voting on any plan of reorganization filed in these chapter 11 cases, (b) participating in any distribution in the Debtors' chapter 11 cases on account of such Claim, or (c) receiving further notices regarding such Claim.

8.     On November 4, 2024, the Debtors filed the *Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*,[6] the *Disclosure Statement Relating to the Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*,[7] and the *Motion of Debtors for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving (A) the Solicitation and Voting Procedures, (B) the Forms of Ballots and Notices in Connection Therewith, and (C) Certain Dates with Respect Thereto, (III) Scheduling a Combined Hearing, and (IV) Granting Related Relief* (the "Disclosure Statement Motion").[8]

9.     On November 20, 2024, the Debtors filed the *Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*[9] and the *Disclosure Statement Relating to the Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*.[10]

---

[6]    Docket No. 213.

[7]    Docket No. 214.

[8]    Docket No. 215.

[9]    Docket No. 325.

[10]   Docket No. 326.

10.     On November 20, 2024, the Bankruptcy Court entered an order (the "Disclosure Statement Order")[11] (i) conditionally approving the adequacy of the Disclosure Statement, (ii) scheduling a hearing to consider Confirmation of the Plan and final approval of the adequacy of the Disclosure Statement, and (iii) approving (a) the Solicitation and Voting Procedures, (b) certain notices and certain dates and deadlines in connection with solicitation and Confirmation of the Plan, and (c) the manner and form of the Solicitation Packages and the materials contained therein.

11.     On November 21, 2024, the Debtors caused the Claims and Noticing Agent to serve the Solicitation Packages in accordance with the terms of the Disclosure Statement Order.[12] Simultaneously, the *Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan Filed by the Debtors*[13] was posted to the website maintained by the Claims and Noticing Agent in these chapter 11 cases.  The Debtors also published the Publication Notice (as defined in the Disclosure Statement Order) in *The New York Times* on November 23, 2024, as evidenced by the *Affidavit of Publication*.[14]

12.     On December 9, 2024, the Debtors filed the *Plan Supplement for the Amended Joint Plan of Reorganization of Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan Supplement"),[15] which included the Schedule of Assumed

---

[11]    Docket No. 327.

[12]    *See* Voting Report.

[13]    Docket No. 328.

[14]    *See Affidavit of Publication* [Docket No. 352].

[15]    Docket No. 419.

Executory Contracts and Unexpired Leases and the Schedule of Retained Causes of Action. The Debtors filed the amended Plan Supplement on February 8, 2025.[16]

13.    On February 10, 2025, the Debtors filed the Plan, incorporating agreed-upon language from various stakeholders.

14.    Pursuant to the Disclosure Statement Order, the deadline (a) to file objections to the Plan and (b) for all Holders of Claims and Interests entitled to vote on the Plan to cast their ballots was December 16, 2024, at 4:00 p.m., prevailing Eastern Time. The Combined Hearing is scheduled for February 11, 2025, at 11:00 a.m., prevailing Eastern Time. Concurrently with this Memorandum, the Debtors have submitted the proposed *Findings of Fact, Conclusions of Law, and Order Confirming the Modified Amended Joint Plan of Reorganization Accuride Corporation and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "Proposed Confirmation Order"), which contemplates, among other things, Confirmation of the Plan.

## II.    The Solicitation Process and Voting Results.

15.    In compliance with the Bankruptcy Code, only Holders of Claims in Impaired Classes receiving or retaining property on account of such Claims were entitled to vote on the Plan.[17] Holders of Claims and Interests were not entitled to vote if their rights are Unimpaired or if they are not receiving or retaining any property under the Plan. The following Classes of Claims and Interests were ***not*** entitled to vote on the Plan, and the Debtors did not solicit votes from Holders of such Claims and Interests:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | ABL Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

---

[16]    Docket No. 677.

[17]    *See* 11 U.S.C. § 1126.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

16.    The Debtors solicited votes on the Plan from Holders of Claims in Class 4, which were entitled to vote to accept or reject the Plan (collectively, the "Voting Class"). The voting results, as reflected in the Voting Report, are summarized as follows:

| CLASS | TOTAL BALLOTS RECEIVED | | | |
|-------|------------------------|---|---|---|
| | Accept | | Reject | |
| | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) | AMOUNT (% of Amount Voted) | NUMBER (% of Number Voted) |
| Class 4 – Term Loan Claims | 100% | 100% | 0% | 0% |

17.    All Holders of Claims and Interests, whether entitled to vote on the Plan or not, had the opportunity to "opt in" to the Third-Party Release through their Ballots or Opt-In Forms, as applicable. The Debtors received fifteen affirmative opt-ins. The Debtors strongly believe that the Plan is in the best interests of the Debtors, their Estate, and other parties in interest. As shown above, Holders of Term Loan Claims overwhelmingly agree, as one hundred percent of Holders of Term Loan Claims who voted and one hundred percent in amount of Term Loan Claims who voted accepted the Plan.

18.    The transactions contemplated by the Plan represent a significant achievement for the Debtors and are the direct result of extensive, good-faith negotiations. The transactions embodied in the Plan will maximize the value of the Estate and maximize recoveries to Holders of Claims and Interests as demonstrated by the Voting Class's unanimous acceptance of the Plan.

32845529.2

Because the Plan meets the requirements of section 1129(b) as described below, the Court should confirm the Plan over the Classes that were deemed to reject the Plan.

## III.    The Objections.

19.    Formal objections were filed by Alter Trading Corporation (the "Alter Objection"), Stonebriar (the "Stonebriar Objection"), and the Official Committee of Retirees (the "Retiree Committee Objection").  Additionally, the Debtors received informal objections from (i) the U.S. Trustee (the "UST Objection"), (ii) Chubb Corporation (the "Chubb Objection"), (iii) the Environmental Protection Agency (the "EPA Objection"), and (iv) United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW Objection", and with the Alter Objection, the Stonebriar Objection, the Retiree Committee Objection, the UST Objection, the Chubb Objection, the EPA Objection, the "Objections").  The Debtors believe that each of the Objections, other than the Retiree Committee Objection, has been consensually resolved through revisions to the Plan.  The Debtors intend to file a separate response to the Retiree Committee Objection.

## ARGUMENT

20.    This Memorandum is organized into four sections.  ***First***, the Debtors request approval of the Disclosure Statement on a final basis and a finding that all notice requirements are satisfied.  ***Second***, the Debtors make their "case in chief" that the Plan satisfies section 1129 of the Bankruptcy Code.  ***Third***, the Debtors submit that the Plan satisfies section 1123 of the Bankruptcy Code.  ***Fourth***, the Debtors submit that the Plan satisfies section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and therefore the Debtors do not need to resolicit the Plan.

21.     For the reasons stated herein, and in light of the evidentiary support to be offered at the Combined Hearing and by the Declarations, the Debtors request that the Bankruptcy Court approve the Disclosure Statement and confirm the Plan.

**I.      The Disclosure Statement Contains "Adequate Information" as Required by Section 1125 and 1126 of the Bankruptcy Code and Satisfies Notice Requirements.**

**A.      The Disclosure Statement Contains Adequate Information.**

22.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

23.     The primary purpose of a disclosure statement is to provide all material information, or "adequate information," that allows parties entitled to vote on a proposed plan to make an informed decision about whether to vote to accept or reject the plan.[18]  Congress intended

---

[18]   *See, e.g., Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan").

that such informed judgments would be needed to both negotiate the terms of, and vote on, a chapter 11 plan.[19]

24.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.[20]  Courts within the Third Circuit and elsewhere acknowledge that determining what constitutes "adequate information" for the purpose of satisfying section 1125 of the Bankruptcy Code resides within the broad discretion of the court.[21]  Accordingly, the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.[22]

25.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

    a.   the events that led to the filing of a bankruptcy petition;

    b.   the relationship of the debtor with its affiliates;

    c.   a description of the available assets and their value;

---

[19]   *See Century Glove, Inc.*, 860 F.2d at 100.

[20]   11 U.S.C. § 1125(a)(1) (stating that "'adequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records"); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5907 (stating that "the information required will necessarily be governed by the circumstances of the case").

[21]   *See, e.g.*, *In re River Vill. Assocs.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *In re Phoenix Petrol.*, 278 B.R. at 393 (same).

[22]   *See In re Phoenix Petrol.*, 278 B.R. at 393; *In re PC Liquidation Corp.*, 383 B.R. 856, 865 (E.D.N.Y. 2008) ("The standard for disclosure is, thus, flexible and what constitutes 'adequate disclosure' in any particular situation is determined on a case-by-case basis, with the determination being largely within the discretion of the bankruptcy court." (internal citations omitted)); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) (stating that "[t]he information required will necessarily be governed by the circumstances of the case").

d.   the debtor's anticipated future performance;

e.   the source of information stated in the disclosure statement;

f.   the debtor's condition while in chapter 11;

g.   claims asserted against the debtor;

h.   the estimated return to creditors under a chapter 7 liquidation of the debtor;

i.   the future management of the debtor;

j.   the chapter 11 plan or a summary thereof;

k.   financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.   information relevant to the risks posed to creditors under the plan;

m.   the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.   litigation likely to arise in a nonbankruptcy context; and

o.   tax attributes of the debtor.[23]

26.   The Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation:

- ***The Debtors' Corporate History, Structure, and Business Overview***.  An overview of the Debtors' corporate history, business operations, organizational structure, and capital structure is described in Article IV of the Disclosure Statement;

- ***Events Leading to the Chapter 11 Filings***.  A detailed overview of the Debtors' out-of-court restructuring efforts in response to liquidity constraints is described in Article V of the Disclosure

---

[23]   *See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). Disclosure regarding all topics is not necessary in every case.  *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also In re Phoenix Petroleum*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case").

Statement;

- ***Material Developments and Anticipated Events of these Chapter 11 Cases***. A summary of the course of events in these chapter 11 cases, including the sale process, is described in Article VI of the Disclosure Statement;

- ***Risk Factors***. Certain risks associated with the Debtors' businesses, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement, are described in Article IX of the Disclosure Statement;

- ***Solicitation and Voting Procedures***. A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan is provided in Article X of the Disclosure Statement;

- ***Confirmation of the Plan***. Confirmation procedures and statutory requirements for Confirmation and consummation of the Plan are described in Article XI of the Disclosure Statement;

- ***Material United States Federal Income Tax Consequences***. A description of certain U.S. federal income tax law consequences of the Plan is provided in Article XIII of the Disclosure Statement;

- ***Releases and Retained Causes of Action***. A description of the Plan's release provisions and Retained Causes of Action is provided in Article III of the Disclosure Statement;

- ***Recommendation***. A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan is included in Article XV of the Disclosure Statement; and

- ***Liquidation Analysis***. An analysis of the liquidation value of the Debtors is attached to the Disclosure Statement as <u>Exhibit C</u>.

27.    In addition, prior to the solicitation, the Disclosure Statement and the Plan were subject to review and comment by various parties, including the DIP Lenders, the Committee, and the U.S. Trustee. The Bankruptcy Court approved the Disclosure Statement on a conditional basis on November 20, 2024, as containing adequate information to commence solicitation. No party in interest has requested additional information nor disputed that the Disclosure Statement

contained information sufficient for Impaired Classes to be able to cast an informed vote on the Plan. For the reasons set forth above, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125(a) of the Bankruptcy Code in satisfaction of section 1126(b)(2) and should be approved.

**B.    The Debtors Complied with Applicable Notice Requirements.**

28.    On November 20, 2024, the Bankruptcy Court entered the Disclosure Statement Order granting the relief requested in the Disclosure Statement Motion on a conditional basis, including, among other things, (a) approving the Solicitation and Voting Procedures, (b) approving the form and manner of the Combined Hearing Notice and the Publication Notice, and (c) approving certain dates and deadlines with respect to the Plan and Disclosure Statement. The Debtors complied with the procedures and timeline approved by the Disclosure Statement Order.

**1.    The Debtors Complied with the Notice Requirements Set Forth in the Disclosure Statement Order.**

29.    The Debtors satisfied the notice requirements set forth in the Disclosure Statement Order, Bankruptcy Rule 3017, and Local Rule 3017-1. *First*, on November 21, 2024, the Debtors caused the Notice and Claims Agent to distribute the Solicitation Packages to Holders of Claims entitled to vote on the Plan as of the Voting Record Date.[24] *Second*, the Debtors caused the Publication Notice to be published in The *New York Times* on November 23, 2024.[25] *Third*, the Combined Hearing Notice included instructions on how to obtain the Plan and the Disclosure Statement without a fee through the Debtors' restructuring website or for a fee at the Bankruptcy Court's PACER website.[26]

---

[24]   *See* Voting Report.

[25]   *See* Affidavit of Publication [Docket No. 352].

[26]   *See* Combined Hearing Notice [Docket No. 328].

**2.**     **The Ballots Used to Solicit Holders of Claims Entitled to Vote on the Plan Complied with the Disclosure Statement Order.**

30.     The forms of Ballots used comply with the Bankruptcy Rules and were conditionally approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.[27]  No party has objected to the sufficiency of the Ballots.  The Debtors submit that they complied with the Disclosure Statement Order and satisfied the requirements of Bankruptcy Rule 3018(c).

**3.**     **The Debtors' Solicitation Period Complied with the Disclosure Statement Order.**

31.     The Debtors' solicitation period complied with the Disclosure Statement Order, the Bankruptcy Code, Bankruptcy Rules, and Local Rules.  *First*, the Solicitation Packages, including instructions for accessing electronic or hard-copy versions of the Plan and Disclosure Statement, were transmitted to all Holders of Claims entitled to vote on the Plan.[28]  *Second*, the solicitation period, which lasted from November 21, 2024 through December 16, 2024 at 4:00 p.m. (prevailing Eastern Time), complied with the Disclosure Statement Order and was adequate under the particular facts and circumstances of these chapter 11 cases.[29]  *Third*, no party has objected on the basis that it did not have sufficient time to consider the Solicitation Materials.  Accordingly, the Debtors submit that the solicitation period complied with the Disclosure Statement Order.

**4.**     **The Debtors' Tabulation Procedures Complied with the Disclosure Statement Order.**

32.     The Debtors request that the Bankruptcy Court find that the Debtors' tabulation of votes complied with the Disclosure Statement Order.  The Notice and Claims Agent reviewed all Ballots received in accordance with the Solicitation and Voting Procedures approved pursuant to

---

[27]     *See* Disclosure Statement Order ¶ 8.

[28]     *See* Voting Report.

[29]     *See* Disclosure Statement Order ¶ 6; Voting Report.

the Disclosure Statement Order.[30]    Accordingly, the Debtors respectfully submit that the Bankruptcy Court should approve the Debtors' tabulation of votes, confirming that the requisite Claims voted to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.

### 5. Solicitation of the Plan Complied with the Bankruptcy Code and Was in Good Faith.

33.    Section 1125(e) of the Bankruptcy Code provides that "a person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title . . . is not liable" on account of such solicitation for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan.[31]

34.    As set forth in the Disclosure Statement and Disclosure Statement Motion, and as demonstrated by the Debtors' compliance with the Disclosure Statement Order, the Debtors at all times engaged in arm's-length, good-faith negotiations and took appropriate actions in connection with the solicitation of the Plan in compliance with section 1125 of the Bankruptcy Code. Therefore, the Debtors respectfully request that the Bankruptcy Court grant the parties the protections provided under section 1125(e) of the Bankruptcy Code.

---

[30]    *See* Disclosure Statement Order ¶ 13.

[31]    11 U.S.C. § 1125(e).

## II.    The Plan Satisfies the Requirements of Section 1129 of the Bankruptcy Code and Should Be Confirmed.[32]

### A.    The Plan Complies with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).

35.    Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]."[33]  The legislative history of section 1129(a)(1) of the Bankruptcy Code explains that this provision also encompasses the requirements of sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and the content of a plan of reorganization, respectively.[34]  As explained below, the Plan complies with the requirements of sections 1122, 1123, and 1129 of the Bankruptcy Code, as well as other applicable provisions.

#### 1.    The Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code.

36.    The classification requirement of section 1122(a) of the Bankruptcy Code provides, in pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[35]  For a classification structure to satisfy section 1122 of the Bankruptcy Code, substantially similar claims

---

[32]    *See In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *4 (Bankr. D. Del. Apr. 29, 2010) (holding that the plan proponent must prove each element of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence); *In re TCI 2 Holdings, LLC*, 428 B.R. 117, 148 (Bankr. D.N.J. 2010) ("The plan proponent bears the burden to show by a preponderance of the evidence that the proposed Chapter 11 plan has a reasonable probability of success, and is more than a visionary scheme") (citing *In re Wiersma*, 227 F. App'x 603, 606 (9th Cir. 2007)) (internal quotation marks omitted).

[33]    11 U.S.C. § 1129(a)(1).

[34]    S. Rep. No. 95-989, at 126, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5912; H.R. Rep. No. 95-595, at 412, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *In re S&W Enter.*, 37 B.R. 153, 158 (Bankr. N.D. Ill. 1984) ("An examination of the Legislative History of [section 1129(a)(1)] reveals that although its scope is certainly broad, the provisions it was most directly aimed at were [s]ections 1122 and 1123").

[35]    11 U.S.C. § 1122(a).

or interests need not be grouped in the same class.[36]  Instead, claims or interests placed in a

particular class must be substantially similar to each other.[37]  Courts in this jurisdiction and others

have recognized that plan proponents have significant flexibility in placing similar claims into

different classes, provided there is a rational basis to do so.[38]

37.    The Plan's classification of Claims and Interests satisfies the requirements of

section 1122 of the Bankruptcy Code because the Plan places Claims and Interests into separate

Classes based on legal or factual distinctions or otherwise based on other relevant criteria.[39]

Specifically, the Plan provides for the separate classification of Claims and Interests into the

following Classes:

    a.    <u>Class 1</u>:  Other Secured Claims;

    b.    <u>Class 2</u>:  Other Priority Claims;

    c.    <u>Class 3</u>:  ABL Claims;

    d.    <u>Class 4</u>:  Term Loan Claims;

    e.    <u>Class 5</u>:  General Unsecured Claims;

    f.    <u>Class 6</u>:  Section 510(b) Claims;

---

[36]    *See, e.g.*, *In re Armstrong World Indus., Inc.*, 348 B.R. 136, 159 (Bankr. D. Del. 2006).

[37]    *Id.*

[38]    Courts have identified grounds justifying separate classification, including where members of a class possess
    different legal rights or there are good business reasons for separate classification.  *See John Hancock Mut. Life
    Ins. Co. v. Route 37 Bus. Park Assocs. (In re Route 37 Bus. Park Assocs.)*, 987 F.2d 154, 158–59 (3d Cir. 1993)
    (as long as each class represents a voting interest that is "sufficiently distinct and weighty to merit a separate
    voice in the decision whether the proposed reorganization should proceed," the classification is proper);
    *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060–1061 (3d Cir. 1987) (recognizing that separate classes of claims
    must be reasonable and allowing a plan proponent to group similar claims in different classes); *see also
    Frito Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)*, 10 F.3d 944, 956–57 (2d Cir. 1993) (finding separate
    classification appropriate because the classification scheme had a rational basis on account of the bankruptcy
    court-approved settlement); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) ("[T]he only
    express prohibition on separate classification is that it may not be done to gerrymander an affirmative vote on a
    reorganization plan").

[39]    *See* Plan, Art. III.

g.    Class 7:  Intercompany Claims;

h.    Class 8:  Intercompany Interests; and

i.    Class 9:  Existing Equity Interests.

38.    Claims and Interests assigned to each particular Class described above are substantially similar to the other Claims and Interests in such Class.[40]  The Plans' classification scheme generally corresponds to the Debtors' corporate and capital structure, thereby taking into account the relative priority among Claims and Interests.  In addition, valid business, legal, and factual reasons justify the separate classification of the particular Claims or Interests into the Classes created under the Plan, and no unfair discrimination exists between or among Holders of Claims and Interests.[41]  Namely, the Plan separately classifies the Claims and Interests because each Holder of such Claims or Interests may hold (or may have held) rights in the Debtors' Estate legally dissimilar to the Claims or Interests in other Classes.

39.    For example, the classification scheme distinguishes ABL Claims (Class 3) from Term Loan Claims (Class 4) because of the different priorities and instruments underlying the Claims in each Class.  General Unsecured Claims (Class 5) are separately classified because they have differing legal rights then the Debtors' secured funded debt creditors.  Section 510(b) Claims (Class 6), to the extent any such Claims exist, are separately classified to reflect the treatment of such Claims under section 510(b) of the Bankruptcy Code.  Intercompany Claims (Class 7) are separately classified because they do not involve third-party creditors.  Finally, Intercompany Interests (Class 8) are classified separately from Existing Equity Interests (Class 9) because the Debtors' ownership structure is dependent upon maintaining the Intercompany Interests and,

---

[40]    *See* Moore Decl. ¶ 15.

[41]    *See id*.

therefore, the Intercompany Interests may be preserved under the Plan for the administrative convenience of ensuring the preservation of the Debtors' corporate structure after the Effective Date.

40.     Accordingly, the Debtors submit that the Plan fully complies with and satisfies section 1122(a) of the Bankruptcy Code.  No party has asserted otherwise.

### 2.    The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a) of the Bankruptcy Code.

41.     Section 1123(a) of the Bankruptcy Code sets forth seven criteria that every chapter 11 plan must satisfy.  The Plan satisfies each of these requirements.

### a.    Designation of Classes of Claims and Equity Interests, Specification of Unimpaired Classes, and Treatment of Impaired Classes (Section 1123(a)(1)–(3)).

42.     The first three requirements of section 1123(a) of the Bankruptcy Code are that a plan specify (a) the classification of claims and interests, (b) whether such claims and interests are impaired or unimpaired, and (c) the treatment of any impaired class under the plan.[42]  Article III of the Plan sets forth these specifications in detail, in satisfaction of these three requirements.[43]  No party has asserted otherwise.

### b.    Equal Treatment Within Classes (Section 1123(a)(4)).

43.     Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."[44]  The Plan satisfies this requirement because Holders of Allowed Claims or Interests will receive the same

---

[42]   11 U.S.C. § 1123(a)(1)–(3).

[43]   Plan, Art. III.A–B.

[44]   11 U.S.C. § 1123(a)(4).

treatment as other Holders of Allowed Claims or Interests within such Holders' respective Class, unless such Holder has agreed to less favorable treatment.  No party has asserted otherwise.

### c.    Means for Implementation (Section 1123(a)(5)).

44.    Section 1123(a)(5) of the Bankruptcy Code requires that the Plan provide "adequate means" for its implementation.[45]  The Plan satisfies this requirement because Article IV of the Plan, as well as other provisions thereof, provides the means by which the Plan will be implemented.   Article IV and various other provisions of the Plan describes the means for the cancellation of documents evidencing existing Claims and Interests and implementation of the transactions provided for in the Plan, including, among other things: (a) the Restructuring Transactions; (b) the sources of consideration for Plan Distributions, including establishment of the Liquidating Trusts; (c) the adoption of the New Organizational Documents; (d) the consummation of various corporate transaction steps necessary to implement the new corporate structure upon emergence; (e) the preservation of certain Causes of Action; and (f) the processes for the vesting of Estate assets in the Reorganized Debtors, the assumption or assumption and assignment of Executory Contracts and Unexpired Leases, and the settlement of Claims and Interests.

45.    The precise terms governing the execution of these transactions are set forth in the applicable Definitive Documents or forms of agreements included in the Plan Supplement.[46]  Thus, the Plan sets forth adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code.  No party has asserted otherwise.

---

[45]    11 U.S.C. § 1123(a)(5).

[46]    *See* Plan Supplement.

### d. Prohibition of Issuance of Non-Voting Securities (Section 1123(a)(6)).

46.     Section 1123(a)(6) of the Bankruptcy Code requires that a debtor's corporate constituent documents prohibit the issuance of non-voting equity securities.[47]  Article IV.G of the Plan provides that the New Organizational Documents will prohibit the issuance of non-voting equity Securities to the extent required under section 1123(a)(6) of the Bankruptcy Code. The relevant New Organizational Documents for the Reorganized Debtors similarly reflect such prohibition.[48]  Thus, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.  No party has asserted otherwise.

### e. Selection of Directors and Officers (Section 1123(a)(7)).

47.     Section 1123(a)(7) of the Bankruptcy Code requires that plan provisions be "consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan."[49]  On the Effective Date, the term of the current members of the board of directors or other Governing Body of Topco shall expire.  The members for the initial term of the New Board will be appointed in accordance with the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.  As of the Effective Date, the members of the New Board shall comprise the Chief Executive Officer of Accuride and the remaining four members selected by the AHG in its sole discretion and in consultation with the Debtors.  The Debtors will disclose the identities and affiliations of the members of the New Board, as applicable, the officers of the Reorganized Debtors, if any, and other information required to be disclosed in accordance with

---

[47]   11 U.S.C. § 1123(a)(6).

[48]   Plan Supplement, Exhibit A.

[49]   11 U.S.C. § 1123(a)(7).

section 1129(a)(5) of the Bankruptcy Code prior to the Effective Date of the Plan.[50]  From and after the Effective Date, each member of the New Board and each officer of the Reorganized Debtors (excluding the Wheel Ends Debtors) shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of the Reorganized Debtors.

48.    The selection of the members of the New Board is consistent with the interests of all Holders of Claims and Interests and public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.  No party has asserted otherwise.

### f.    Compliance with Section 1113 of the Bankruptcy Code.

49.    Pursuant to section 1113 of the Bankruptcy Code, a debtor in possession may assume or reject a collective bargaining agreement.[51]  Specifically, section 1113 of the Bankruptcy Code requires a debtor in possession to:

> (A) make a proposal to the authorized representative of the employees covered by such agreement, based on the most complete and reliable information available at the time of such proposal, which provides for those necessary modifications in the employees benefits and protections that are necessary to permit the reorganization of the debtor and assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably; and
>
> (B) provide. . . the representative of the employees with such relevant information as is necessary to evaluate the proposal.[52]

---

[50]    *See* Moore Decl. ¶ 23.

[51]    11 U.S.C. § 1113(a).

[52]    11 U.S.C. § 1113(b)(1)(A)–(B).

50.     Pursuant to the Plan, the applicable Reorganized Debtors will assume, without modifications, the Agreement between Accuride Erie and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 1186, for September 4, 2022 through September 3, 2025 as well as the accompanying memorandum of settlement.[53]    Gunite Corporation will assume the agreement between Gunite Corporation Rockford, Illinois 61104-7092 and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and its Local No. 718, for March 26, 2023 through March 25, 2026 as well as the accompanying memorandum of settlement, as modified by the Gunite Wind-Down Agreement to facilitate the winddown Gunite.[54]  Therefore, the Plan complies with section 1113 of the Bankruptcy Code.

**B.    The Debtors Complied with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).**

51.     The Debtors have satisfied section 1129(a)(2) of the Bankruptcy Code, which requires that the proponent of a plan of reorganization comply with the applicable provisions of the Bankruptcy Code.[55]   The legislative history to section 1129(a)(2) of the Bankruptcy Code reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in sections 1125 and 1126 of the Bankruptcy Code.[56]  As discussed below, the Debtors

---

[53]    Moore Decl. ¶ 24.

[54]    *Id.*

[55]    11 U.S.C. § 1129(a)(2).

[56]    *See, e.g.*, *In re Lapworth*, No. 97-34529, 1998 WL 767456, at *3 (Bankr. E.D. Pa. Nov. 2, 1998) ("The legislative history of § 1129(a)(2) specifically identifies compliance with the disclosure requirements of § 1125 as a requirement of § 1129(a)(2).") (internal citations omitted); *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, at *49 (Bankr. S.D.N.Y. Oct. 31, 2003) (stating that section 1129(a)(2) requires plan proponents to comply with applicable provisions of the Bankruptcy Code, including "disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code").

have complied with sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and solicitation of the Plan.

       **1.**       **The Debtors Complied with Section 1125 of the Bankruptcy Code.**

52.     Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information."[57] Section 1125 ensures that parties in interest are fully informed regarding the debtor's condition so that they may make an informed decision whether to approve or reject the plan.[58]

53.     Section 1125 is satisfied here.  Before the Debtors solicited votes on the Plan, the Bankruptcy Court conditionally approved the Disclosure Statement.[59]  The Bankruptcy Court also approved the Solicitation Packages provided to Holders of Claims entitled to vote on the Plan, the non-voting materials provided to parties not entitled to vote on the Plan, and the relevant dates for voting and objecting to the Plan.[60]  As stated in the Voting Report, the Debtors, through the Claims and Noticing Agent, complied with the content and delivery requirements of the Disclosure Statement Order, satisfying sections 1125(a) and (b) of the Bankruptcy Code.[61]  The Debtors also satisfied section 1125(c) of the Bankruptcy Code, which provides that the same disclosure

---

[57]   11 U.S.C. § 1125(b).

[58]   *See In re Union Cnty. Wholesale Tobacco & Candy Co.*, 8 B.R. 442, 443 (Bankr. D.N.J. 1981) (holding that the standards of section 1125 "essentially require information sufficient to enable a hypothetical reasonable investor to make an informed judgment re acceptance or rejection of the plan").

[59]   *See* Disclosure Statement Order.

[60]   *Id.*

[61]   *See* Voting Report; *see also Certificate of Service* [Docket No. 412] (the "<u>Certificate of Solicitation</u>").

statement must be transmitted to each holder of a claim or interest in a particular Class.  Here, the

Debtors caused the same Disclosure Statement to be transmitted to all parties entitled to vote on

the Plan and all parties deemed to accept or reject the Plan.[62]  Therefore, the Debtors submit that

they have complied in all respects with the solicitation requirements of section 1125 of the

Bankruptcy Code and the Disclosure Statement Order, and no party has asserted otherwise.

### 2.    The Debtors Complied with Section 1126 of the Bankruptcy Code.

54.    Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of

a plan of reorganization.  Specifically, under section 1126 of the Bankruptcy Code, only holders

of allowed claims and allowed interests in impaired classes of claims or interests that will receive

or retain property under a plan on account of such claims or interests may vote to accept or reject

such plan.  Section 1126 of the Bankruptcy Code provides, in pertinent part, that:

> (a)    The holder of a claim or interest allowed under section 502
> of [the Bankruptcy Code] may accept or reject a plan. . . .
>
> (f)    Notwithstanding any other provision of this section, a class
> that is not impaired under a plan, and each holder of a claim
> or interest of such class, are conclusively presumed to have
> accepted the plan, and solicitation of acceptances with
> respect to such class from the holders of claims or interests
> of such class is not required.
>
> (g)    Notwithstanding any other provision of this section, a class
> is deemed not to have accepted a plan if such plan provides
> that the claims or interests of such class do not entitle the
> holders of such claims or interests to receive any property
> under the plan on account of such claims or interests.[63]

55.    In accordance with section 1125 of the Bankruptcy Code, the Debtors solicited

votes from the Holders of Allowed Claims in Class 4—the only Class entitled to vote on the Plan.

---

[62]    *See* Voting Report; *see also generally* Certificate of Solicitation.

[63]    11 U.S.C. §§ 1126(a), (f), (g).

The Debtors did not solicit votes from Holders of Claims and Interests in Classes 1, 2, 3, 5, 6, 7, 8, or 9 because Holders of such Claims and Interests are either Unimpaired and conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or Impaired and conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

56.    With respect to the Voting Class, section 1126(c) of the Bankruptcy Code provides that a class accepts a plan where holders of claims holding at least two-thirds in amount and more than one-half in number of allowed claims in such class of those voting vote to accept such plan.

57.    The Voting Report reflects the results of the voting process in accordance with section 1126 of the Bankruptcy Code.[64]  Based upon the foregoing, the Debtors submit that they satisfy the requirements of section 1129(a)(2) of the Bankruptcy Code.

### C.    The Plan Is Proposed in Good Faith (Section 1129(a)(3)).

58.    Section 1129(a)(3) of the Bankruptcy Code requires that a chapter 11 plan be "proposed in good faith and not by any means forbidden by law."[65]  Where a plan satisfies the purposes of the Bankruptcy Code and has a good chance of succeeding, the good faith requirement of section 1129(a)(3) of the Bankruptcy Code is satisfied.[66]  To determine whether a plan seeks relief consistent with the Bankruptcy Code, courts consider the totality of the circumstances surrounding the development of the plan.[67]

---

[64]    *See* Voting Report.

[65]    11 U.S.C. § 1129(a)(3).

[66]    *See, e.g.*, *In re PWS Holding*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986)); *Fin. Sec. Assurance Inc. v. T-H New Orleans Ltd. P'ship (In re T-H New Orleans Ltd. P'ship)*, 116 F.3d 790, 802 (5th Cir. 1997) (quoting *Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985)); *In re Century Glove, Inc.*, Civ. A. Nos. 90-400-SLR and 90-401-SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993); *In re NII Holdings, Inc.*, 288 B.R. 356, 362 (Bankr. D. Del. 2002).

[67]    *See, e.g.*, *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012) ("[A] determination of good faith associated with a Chapter 11 reorganization plan requires a factual inquiry into the totality of the circumstances surrounding the plan's proposal.") (citing *In re Sun Country Dev., Inc.*, 764 F. 2d at 408); *Century Glove*, 1993 WL 239489,

59.    The Debtors negotiated, developed, and proposed the Plan in good faith, and the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.  The Plan is the product of months of extensive arm's-length negotiations among the Debtors, their lenders, and other key constituents.[68] Throughout these cases, the Debtors worked to build consensus among these various stakeholders and have ultimately reached an agreement with these parties.  The Plan delivers significant value to creditors (including one hundred percent recoveries for all Holders of Other Secured Claims, Other Priority Claims, and ABL Claims), and preserves the Reorganized Debtors as a going concern.[69]  Additionally, the Plan has been accepted by one hundred percent of voting creditors, and no party has voted to reject the Plan.[70]  The Plan was proposed in good faith and not by any means forbidden by law, has a high likelihood of success, and will achieve a result consistent with the objectives of the Bankruptcy Code.

60.    The fundamental purpose of chapter 11 is to enable a distressed business to reorganize its affairs to prevent job losses and the adverse economic effects associated with disposing of assets at liquidation value.[71]  Here, the Plan will enable the Debtors to deleverage their balance sheet and enable the Debtors to reorganize, achieve a fresh start, and maintain their

---

at *4 ("The requirement of good faith must be viewed in light of the totality of the circumstances surrounding establishment of a Chapter 11 plan, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start.") (citing *In re Sun Country Dev., Inc.*, 764 F.2d at 408); *T-H New Orleans*, 116 F.3d at 802 (same).

[68]    *See* Moore Decl. ¶ 27.

[69]    *See* Schwartz Decl. ¶ 4.

[70]    *See* Voting Report.

[71]    *See NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 (1984); *B.D. Int'l Disc. Corp. v. Chase Manhattan Bank, N.A. (In re B.D. Int'l Disc. Corp.*), 701 F.2d 1071, 1075 n.8 (2d Cir. 1983) (stating that "the two major purposes of bankruptcy [are] achieving equality among creditors and giving the debtor a fresh start") (internal citations omitted).

value as a going concern.[72]   The Plan's unanimous support by all voting creditors in Class 4 is strong evidence that the Plan is likely to succeed.   Finally, throughout the negotiation of the Plan and these chapter 11 cases, the Debtors have upheld their fiduciary duties to stakeholders and protected the interests of all constituents with an even hand.   Accordingly, the Plan and the Debtors' conduct satisfy section 1129(a)(3) of the Bankruptcy Code, and no party has asserted otherwise.

> **D.      The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (Section 1129(a)(4)).**

61.      Section 1129(a)(4) of the Bankruptcy Code requires that certain fees and expenses paid by the plan proponent, by the debtor, or by a person receiving distributions or property under the plan be subject to approval by the Bankruptcy Court as reasonable.[73]   Courts have construed this section to require that all payments of professional fees paid out of estate assets be subject to review and approval by the court as to their reasonableness.[74]

62.      The Plan satisfies section 1129(a)(4) of the Bankruptcy Code.   The Plan provides that Professional Fee Claims and corresponding payments are subject to prior Bankruptcy Court approval and the reasonableness requirements under sections 328 and 330 of the Bankruptcy Code.[75]   Moreover, the Plan provides that the Debtors' Advisors shall file all final requests for payment of the Professional Fee Claims no later than forty-five (45) days after the Effective Date,

---

[72]   *See* Schwartz Decl. ¶ 4; *see also generally* Moore Decl.

[73]   *See* 11 U.S.C. § 1129(a)(4).

[74]   *See In re Lisanti Foods, Inc.*, 329 B.R. at 503 ("Pursuant to § 1129(a)(4), a [p]lan should not be confirmed unless fees and expenses related to the [p]lan have been approved, or are subject to the approval, of the Bankruptcy Court."); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) (holding that fees and expenses related to the plan are subject to the approval by the Bankruptcy Court); *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 573 (Bankr. N.D. Tex. 1986) (noting that before a plan may be confirmed, "there must be a provision for review by the Court of any professional compensation").

[75]   11 U.S.C. §§ 328(a), 330(a)(1)(A); Plan, Art. II.D.

thereby providing an adequate period of time for interested parties to review such Professional Fee Claims.[76]

### E.     The Debtors Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (Section 1129(a)(5)).

63.     Section 1129(a)(5) of the Bankruptcy Code requires that the proponent of a plan disclose the identity and affiliations of the proposed officers and directors of the reorganized debtors.  In addition, the Bankruptcy Code provides that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy.[77]  The "public policy requirement would enable [the court] to disapprove plans in which demonstrated incompetence or malevolence is a hallmark of the proposed management."[78]  Courts have held that these provisions ensure that the post-Confirmation governance of a reorganized debtors is in "good hands."

64.     As of the Effective Date, the term of the current members of the board of directors or other Governing Body of Topco shall expire and all of the directors for the initial term of the New Board shall be appointed in accordance with the New Organizational Documents.  The members of the New Board shall comprise the Chief Executive Officer of Accuride and four members selected by the AHG in its sole discretion and in consultation with the Debtors.  The Debtors will disclose the identities and affiliations of the members of the New Board, as applicable, the officers of the Reorganized Debtors, if any, and other information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code prior to the Effective Date of the Plan.

---

[76]    Plan, Art. II.D.1.

[77]    11 U.S.C. § 1129(a)(5)(A)(ii).

[78]    7 Collier on Bankruptcy ¶ 1129.02[5][b] (16th ed. 2021).

For subsequent terms, the directors and officers shall be selected in accordance with the New Organizational Documents.  Thus, the Plan complies with section 1129(a)(5).  No party has asserted otherwise.

**F.      The Plan Does Not Require Governmental Regulatory Approval (Section 1129(a)(6)).**

65.      Section 1129(a)(6) of the Bankruptcy Code permits Confirmation only if any regulatory commission that has or will have jurisdiction over a debtor after Confirmation has approved any rate change provided for in the plan.  The Plan does not provide for any rate changes and the Debtors are not subject to any such regulation.[79]  Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these chapter 11 cases, and no party has asserted otherwise.

**G.      The Plan Is in the Best Interests of All the Debtors' Creditors (Section 1129(a)(7)).**

66.      Section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interests test," requires that, with respect to each impaired class of claims or interests, each individual holder of a claim or interest has either accepted the plan or will receive or retain property having a present value of not less than that which such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.[80]  The best interests test applies to individual dissenting holders of impaired claims and interests rather than classes,[81] and is generally satisfied through a comparison of the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7

---

[79]    *See* Moore Decl. ¶ 32.

[80]    *See* 11 U.S.C. § 1129(a)(7)(A)(ii).

[81]    *See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 n.13 (1999) ("The 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan."); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) (stating that section 1129(a)(7) is satisfied when an impaired holder of claims would receive "no less than such holder would receive in a hypothetical chapter 7 liquidation").

liquidation of that debtor's estate against the estimated recoveries under that debtor's plan of reorganization.[82]

67.     The Plan satisfies section 1129(a)(7) of the Bankruptcy Code and the best interests test.  As set forth in the Disclosure Statement[83] and the Jerneycic Declaration, the Debtors, with the assistance of their financial advisors, prepared a liquidation analysis that estimates recoveries for members of each Class under the Plan.[84]  As set forth in the Jerneycic Declaration, projected recoveries for each Class under the Plan are equal to or in excess of the recoveries estimated in a hypothetical chapter 7 liquidation.[85]

68.     In a hypothetical chapter 7 liquidation, Holders of Claims in Classes 2, 3, and 4 would recover less than they would under the Plan.  In particular, Holders of Other Priority Claims and ABL Claims are estimated to recover in full under the Plan, Holders of Term Loan Claims are projected to recover between 22.2 percent and 39.1 percent under the Plan.[86]  Additionally, all Holders of Claims entitled to vote on the Plan received the Liquidation Analysis (which was attached to the Disclosure Statement) and have been provided ample time to consider the contents thereof.  Accordingly, the Plan complies with section 1129(a)(7), and no party has asserted otherwise.

---

[82]    *See In re Neff*, 60 B.R. 448, 452 (Bankr. N.D. Tex. 1985) (stating that "best interests" of creditors means "creditors must receive distributions under the Chapter 11 plan with a present value at least equal to what they would have received in a Chapter 7 liquidation of the Debtor as of the effective date of the plan"), *aff'd*, 785 F.2d 1033 (5th Cir. 1986); *In re Lason, Inc.*, 300 B.R. 227, 232 (Bankr. D. Del. 2003) ("Section 1129(a)(7)(A) requires a determination whether a prompt chapter 7 liquidation would provide a better return to particular creditors or interest holders than a chapter 11 reorganization.") (internal citation and quotation marks omitted).

[83]    *See* Disclosure Statement, Exhibit E.

[84]    *See* Jerneycic Decl. ¶ 7.

[85]    *See id.*  ¶¶ 9–10.

[86]    *See id.*

**H.     The Plan Is Confirmable Notwithstanding the Requirements of Section 1129(a)(8) of the Bankruptcy Code.**

69.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept a plan or be unimpaired under a plan.  If any class of claims or interests rejects the plan, the plan must satisfy the "cramdown" requirements with respect to the claims or interests in that class.[87]  Holders of Claims and Interests in Classes 5, 6, and 9, and possibly Classes 7 and 8, are deemed to have rejected the Plan and thus were not entitled to vote.  While the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code with respect to the Impaired Classes that were deemed to reject the Plan, the Plan is confirmable nonetheless because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code, as discussed below, as at least one Impaired Class of Claims has voted to accept the Plan, and the Plan does not discriminate unfairly and is fair and equitable with respect to the Classes deemed to reject.

**I.     The Plan Provides for Payment in Full of All Allowed Priority Claims (Section 1129(a)(9)).**

70.     Section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan or receive certain other specified treatment as agreed upon by the claim holder in satisfaction of the claim and that the holders of certain other priority claims receive deferred cash payments.[88]  In particular, pursuant to section 1129(a)(9)(A) of the Bankruptcy Code, holders of claims of a kind specified in section 507(a)(2) of the Bankruptcy Code—administrative claims allowed under section 503(b) of the Bankruptcy Code—must receive on the effective date cash equal to the allowed amount of such claims.[89]

---

[87]   11 U.S.C. § 1129(b).

[88]   *See* 11 U.S.C. § 1129(a)(9).

[89]   11 U.S.C. § 1129(a)(9)(A).

Section 1129(a)(9)(B) of the Bankruptcy Code requires that each holder of a claim of a kind specified in section 507(a)(1) or (4) through (7) of the Bankruptcy Code—generally wage, employee benefit, and deposit claims entitled to priority—must receive deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim (if such class has accepted the plan) or cash of a value equal to the allowed amount of such claim on the effective date of the plan (if such class has not accepted the plan).[90]  Finally, section 1129(a)(9)(C) provides that the holder of a claim of a kind specified in section 507(a)(8) of the Bankruptcy Code—*i.e.*, priority tax claims—must receive cash payments over a period not to exceed five years from the Petition Date, the present value of which equals the allowed amount of the claim.[91]

71.    The Plan satisfies section 1129(a)(9) of the Bankruptcy Code.  *First*, Article II.A of the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code because it provides that each Holder of an Allowed Administrative Claim will receive Cash equal to the amount of such Allowed Claim.  *Second*, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code because no Holders of the types of Claims specified by 1129(a)(9)(B) are Impaired under the Plan.  *Third*, Article II.E of the Plan satisfies section 1129(a)(9)(C) of the Bankruptcy Code because it provides that Holders of Allowed Priority Tax Claims shall be treated in accordance with the terms of section 1129(a)(9)(C) of the Bankruptcy Code.  The Plan thus satisfies each of the requirements of section 1129(a)(9) of the Bankruptcy Code.

---

[90]    11 U.S.C. § 1129(a)(9)(B).

[91]    11 U.S.C. § 1129(a)(9)(C).

**J.      At Least One Impaired Class of Non-Insider Claims Accepted the Plan (Section 1129(a)(10)).**

72.     Section 1129(a)(10) of the Bankruptcy Code provides that, to the extent there is an impaired class of claims, at least one impaired class of claims must accept the plan, "without including any acceptance of the plan by any insider."[92] Here, Class 4, which is Impaired, voted to accept the Plan independent of any insiders' votes.  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**K.      The Plan Is Feasible (Section 1129(a)(11)).**

73.     Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that a plan is feasible as a condition precedent to Confirmation.  Specifically, the Bankruptcy Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[93]  To demonstrate that a plan is feasible, it is not necessary for a debtor to guarantee success.[94]  Rather, a debtor must provide only a reasonable assurance of success.[95]  There is a relatively low threshold

---

[92]  11 U.S.C. § 1129(a)(10).

[93]  11 U.S.C. § 1129(a)(11).

[94]  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Flintkote Co.*, 486 B.R. 99, 139 (Bankr. D. Del. 2012) (stating that the bankruptcy court "need not require a guarantee of success") (internal citations and quotation marks omitted); *In re W.R. Grace & Co.*, 475 B.R. at 115; *In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985) ("'Feasibility' does not, nor can it, require the certainty that a reorganized company will succeed."), *aff'd*, 800 F.2d 581 (6th Cir. 1986).

[95]  *Kane*, 843 F.2d at 649; *In re Flintkote Co.*, 486 B.R. at 139; *In re W.R. Grace & Co.*, 475 B.R. at 115; *see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (holding that "[t]he purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation") (internal quotation marks omitted) (quoting 5 Collier on Bankruptcy ¶ 1129.02[11] (15th ed. 1984)); *In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013718, at *61 (Bankr. D. Del. Oct. 5, 2011) (same).

of proof necessary to satisfy the feasibility requirement.[96]   As demonstrated below, the Plan is

feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.

74.     In determining standards of feasibility, courts have identified the following

probative factors:

      a.      the adequacy of the capital structure;

      b.      the earning power of the business;

      c.      the economic conditions;

      d.      the ability of management;

      e.      the probability of the continuation of the same management; and

      f.      any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.[97]

75.     The Plan is feasible.  As set forth in the Moore Declaration, the Debtors and their

advisors have thoroughly analyzed the Reorganized Debtors' ability to meet their

post-Confirmation obligations under the Plan and continue as a going concern without the need

for further financial restructuring.[98]   The Debtors negotiated and secured exit financing in the form

of the Exit Facility and the New ABL Facility to fund Plan Distributions, manage post-emergence

liquidity, and meet their obligations in the ordinary course.[99]   The Debtors' management team and

---

[96]   *See, e.g.*, *In re Prussia Assocs.*, 322 B.R. 572, 584 (Bankr. E.D. Pa. 2005) (quoting approvingly that "[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility") (internal quotation marks and citations omitted); *In re Sea Garden Motel & Apartments*, 195 B.R. 294, 305 (D.N.J. 1996); *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *on reconsideration,* 464 B.R. 208 (Bankr. D. Del. 2011).

[97]   *See, e.g.*, *In re Aleris Int'l, Inc.*, No. 09-10478 (BLS), 2010 WL 3492664, at *28 (Bankr. D. Del. May 13, 2010) (internal citations omitted).

[98]   *See* Moore Decl. ¶ 36.

[99]   *Id*. at ¶ 37.

their advisors have made significant progress in designing and implementing a business plan that will enable the Reorganized Debtors to succeed in their go-forward operations.[100]

76.     Moreover, as set forth in the Disclosure Statement, the Debtors prepared projections (the "Financial Projections") of the Debtors' financial performance for the remainder of the fiscal year ended December 31, 2025, and for fiscal years 2025 through 2028 (the "Projection Period").[101]  The Debtors have further revised these Financial Projections in light of the terms and conditions of the Exit Facility and the postponement of the Effective Date and have concluded that there is no material difference in the feasibility of the Plan.  These Financial Projections reflect a series of realistic assumptions regarding the Debtors and their industries and demonstrate the Debtors' liquidity and ability to meet their obligations in the ordinary course.  The detailed projections demonstrate the Reorganized Debtors' ability to generate sufficient cash to meet ongoing financial obligations of the business and otherwise meet their obligations under the Plan. In sum, the assets and Financial Projections of the Reorganized Debtors demonstrate a reasonable assurance that the Debtors will have and maintain sufficient liquidity and capital resources to pay amounts due under the Plan and fund their operations during the Projection Period.

77.     In addition, upon the Effective Date, the Debtors expect to have sufficient funds to make all payments contemplated by the Plan as a result of the enhanced liquidity provided by the Exit Facilities.  The Debtors, along with their professionals, have closely evaluated their Cash situation to ensure that they will be able to make all Plan payments required on the Effective Date as well as the months to come.[102]  The Debtors therefore submit that the Plan is feasible and

---

[100]    *Id.*

[101]    *See* Disclosure Statement, Exhibit D.

[102]    *See id.*; Moore Decl. ¶ 38.

Confirmation is not likely to be followed by liquidation or need for further financial reorganization of the Debtors or any successor to the Debtors under the Plan.[103]   Accordingly, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

**L.    All Statutory Fees Have Been or Will Be Paid (Section 1129(a)(12)).**

78.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28 [of the United States Code], as determined by the court at the hearing on confirmation of the plan."[104]   Section 507(a)(2) of the Bankruptcy Code provides that "any fees and charges assessed against the estate under section 1930 of chapter 123 of title 28" are afforded priority as administrative expenses.[105]

79.    The Plan satisfies section 1129(a)(12) of the Bankruptcy Code because Article XII.C of the Plan provides that all such fees and charges, to the extent not previously paid, will be paid for each quarter (including any fraction thereof) until these chapter 11 cases are converted, dismissed, or closed, whichever occurs first.[106]

80.    Accordingly, the Debtors submit that the Plan fully complies with and satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code, and no party has asserted otherwise.

**M.    Retiree Benefits Treatment (Section 1129(a)(13)).**

81.    Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits established at any level continue post-Confirmation in accordance with section 1114 of the Bankruptcy Code.

---

[103]   *See id.* ¶¶ 35–38.

[104]   11 U.S.C. § 1129(a)(12).

[105]   11 U.S.C. § 507(a)(2).

[106]   Plan, Art. XII.C.

82.     Article IV.J of the Plan provides that, with the exception of the Gunite OPEB Plan, sponsored by Gunite Corporation, a Wheel Ends Debtor, all retiree benefits as defined in section 1114 of the Bankruptcy Code in place as of the Effective Date shall be deemed to have been assumed by the Reorganized Debtors (excluding the Wheel Ends Debtors) and shall remain in place as of the Effective Date, and the Reorganized Debtors (excluding the Wheel Ends Debtors) will continue to honor such agreements as of the Effective Date.

83.     The Debtors provided notice of their proposal to modify the Gunite Corporation (Rockford, Illinois) Master Retired Bargained Employee Health Benefit Plan via service of the Plan to all affected retirees.  The Debtors' motion for appointment of a retiree committee (the "Retiree Committee") was approved on November 20, 2024[107].  On December 10, 2024, the Retiree Committee was appointed by the U.S. Trustee.[108]

84.     The Debtors were first contacted by counsel for the Retiree Committee on December 16, 2024, and the Debtors followed up on December 17, 2024 with a summary description of the Plan's treatment of the Gunite OPEB Plan, representing the Debtors' proposal to the Retiree Committee pursuant to section 1114(f) of the Bankruptcy Code.  On February 7, 2025, the Retiree Committee provided a counterproposal to the Debtors.  The Debtors and the Retiree are continuing in their negotiations concerning the Gunite OPEB Plan but, as of the filing hereof, have not reached agreement on a modification of the Gunite OPEB Plan.  The Debtors intend to either have come to agreement with the Retiree Committee regarding modifications to the Gunite OPEB Plan pursuant to section 1114(e)(1)(B) of the Bankruptcy Code or otherwise satisfy the requirements of section 1129(a)(13) of the Bankruptcy Code prior to the Effective Date

---

[107]    Docket No. 319.

[108]    Docket No. 424.

in accordance with applicable law (which may include the filing of a motion to be heard prior to the Effective Date to modify the Gunite OPEB Plan pursuant to section 1114(g) of the Bankruptcy Code).[109]  The Plan therefore satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

### N.      Sections 1129(a)(14) through 1129(a)(16) Do Not Apply to the Plan.

85.      Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations.  Since the Debtors are not subject to any domestic support obligations, the requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.  Section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.  Because none of the Debtors is an "individual," the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.  Finally, none of the Debtors is a nonprofit corporation or trust, and, therefore, section 1129(a)(16) of the Bankruptcy Code, which relates only to nonprofit corporations or trusts, is not applicable in these chapter 11 cases.

### O.      The Plan Satisfies the "Cram Down" Requirements of Section 1129(b) of the Bankruptcy Code.

86.      Section 1129(b)(1) of the Bankruptcy Code provides that, if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8) of the Bankruptcy Code, a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.[110]  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the

---

[109]  *See In re: Visteon Corp.*, 612 F.3d 210 (3d Cir. 2010).

[110]  *See* 11 U.S.C. § 1129(b).

Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.[111]

87.     The Plan satisfies section 1129(b) of the Bankruptcy Code.  The Impaired Class entitled to vote on the Plan (Class 4) voted to accept the Plan and no Holder of Claims in the Voting Class voted to reject the Plan.[112]  Classes 5, 6, and 9 were deemed to reject the Plan. Further, Classes 7 and 8 may be deemed to reject the Plan based on the Debtors' ultimate determination on whether to Reinstate or cancel Intercompany Claims and Intercompany Interests. Notwithstanding the fact Classes 5, 6, and 9, and possibly Classes 7 and 8, are deemed to have rejected the Plan, the Plan is confirmable.  The Plan satisfies the absolute priority rule (and is fair and equitable) as to the Classes deemed to reject under the Plan, because, as to such Classes, there is no Class of equal or junior priority receiving more favorable treatment.  Further, the Plan satisfies the corollary to the absolute priority rule because no Class is receiving greater than a one hundred percent recovery.  Therefore, the Plan satisfies the "fair and equitable" requirements of section 1129(b) of the Bankruptcy Code, and no party has asserted otherwise.

**1.      The Plan Does Not Unfairly Discriminate with Respect to the Impaired Classes that Have Not Voted to Accept the Plan (Section 1129(b)(1)).**

88.     Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination.[113]  In general, courts have held that a plan unfairly

---

[111]   *See* 11 U.S.C. § 1129(b)(1); *In re Route 37 Bus. Park Assocs.*, 987 F.2d at 157 n.5; *Liberty Nat'l Enter. v. Ambanc La Mesa L.P. (In re Ambanc La Mesa L.P.)*, 115 F.3d 650, 653 (9th Cir. 1997) ("the [p]lan satisfies the 'cramdown' alternative . . . found in 11 U.S.C. § 1129(b), which requires that the [p]lan 'does not discriminate unfairly' against and 'is fair and equitable' towards each impaired class that has not accepted the [p]lan").

[112]   *See* Voting Report.

[113]   *See Hargreaves v. Nuverra Env't Sols., Inc. (In re Nuverra)*, 590 B.R. 75, 93 (D. Del. 2018), *aff'd*, 834 F. App'x 729 (3d Cir. 2021), *as amended* (Feb. 2, 2021) ("As unfair discrimination is not defined in the Bankruptcy Code, courts must examine the facts and circumstances of the particular case to determine whether unfair discrimination

discriminates in violation of section 1129(b) of the Bankruptcy Code only if (a) it provides less favorable treatment to a dissenting class of creditors than to another class of creditors with similar legal rights, taking into account whether the different treatment is material and the relative risks associated with each class's treatment, and (b) there is not sufficient justification for doing so.[114] A threshold inquiry to assessing whether a proposed plan of reorganization unfairly discriminates against a dissenting class is whether the dissenting class is equally situated to a class allegedly receiving more favorable treatment.[115]

89.     The "hallmarks of the various tests [for unfair discrimination] have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."[116]  For example, preferable treatment of

---

exists."); *In re 203 N. LaSalle St. Ltd. P'ship*, 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established."), *rev'd on other grounds*, *203 N. LaSalle St. P'ship*, 526 U.S. 434; *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that a determination of unfair discrimination requires a court to "consider all aspects of the case and the totality of all the circumstances"); *In re Aztec Co.*, 107 B.R. 585, 589–91 (Bankr. M.D. Tenn. 1989) ("Courts interpreting language elsewhere in the Code, similar in words and function to § 1129(b)(1), have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

[114]   *See In re Nuverra*, 590 B.R. at 93 (holding that a plan's unequal treatment of substantially similar claims did not constitute unfair discrimination where such unequal treatment was justified); *In re Aleris Int'l*, 2010 WL 3492664, at *31 ("section 1129(b) of the Bankruptcy Code ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value the dissenting class will receive under a plan when compared to the value given to all other similarly situated classes") (citing *In re Armstrong World Indus., Inc.*, 348 B.R. 111, 121 (Bankr. D. Del. 2006)); *In re Coram Healthcare Corp.*, 315 B.R. at 349 (citing cases and noting that separate classification and treatment of claims is acceptable if the separate classification is justified because such claims are essential to a reorganized debtor's ongoing business); *In re Lernout & Hauspie Speech Prods., N.V.*, 301 B.R. 651, 661 (Bankr. D. Del. 2003) (permitting different treatment of two classes of similarly situated creditors upon a determination that the debtors showed a legitimate basis for such discrimination), *aff'd sub nom.  In re Lernout & Hauspie Speech Prod. N.V.*, 308 B.R. 672 (D. Del. 2004); *Ambanc La Mesa*, 115 F.3d at 656–57 (same); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) (stating that interests of objecting class were not similar or comparable to those of any other class and thus there was no unfair discrimination).

[115]   *See In re Aleris Int'l*, 2010 WL 3492664, at *31 (citing *In re Armstrong World Indus.*, 348 B.R. at 121).

[116]   *In re Lernout*, 301 B.R. at 660; *see also In re Exide Techs.*, 303 B.R. at 78 ("Therefore, in order to confirm the [p]lan, the [d]ebtor must show that (i) there is a reasonable basis for the [d]ebtor's separate classification of the

general unsecured creditors who primarily represent the applicable debtors' vendors, customers, and employees, as compared to the debtors' prepetition funded debt, has been upheld by courts in this district, even where the difference in treatment is significant, because such general unsecured creditors are essential to the debtors' reorganization.[117]

90.     The Debtors do not believe the different treatment of General Unsecured Claims (Class 5) rises to the level of discrimination.  Because of the ongoing business relationship between the Debtors and the Holders of General Unsecured Claims, the treatment of such Claims will have a material impact on the Debtors' future day-to-day operations and ultimately weigh heavily on the prospects of a successful reorganization.  Thus, the Plan's treatment of Class 5 is proper because the different treatment of Class 5 stems from the essential role such creditors will play in the Debtors' go-forward business and the success of their reorganization.  No party has asserted otherwise.

91.     Intercompany Claims in Class 7 and Intercompany Interests in Class 8 are not similarly situated to any other Classes, given their distinctly different legal character from all other Claims and Interests, and may be Unimpaired.  These Intercompany Claims and Intercompany Interests, which exist to support the Debtors' corporate structure, may be Reinstated because Reinstatement of intercompany claims and interests advances an efficient reorganization by

---

general unsecured creditors, the 10 percent Senior Noteholders, and the 2.9 percent Convertible Note Claims; and (ii) that the Debtor cannot confirm a plan absent the separate classification of unsecured claims").

[117] *See, e.g.*, *In re Lannett Co.*, No. 23-10559 (JKS) (Bankr. D. Del. June 8, 2023) (confirming plan where trade creditors received a one hundred percent recovery and unsecured debt claims received a nominal recovery); *In re Nuverra*, 590 B.R. at 92 (confirming plan where trade creditors received a one hundred percent recovery and other general unsecured creditors received a four percent to six percent recovery); *In re Richard Buick, Inc.*, 126 B.R. 830 (Bankr. E.D. Pa. 1991) (confirming plan where trade creditors received a one hundred percent recovery and other general unsecured creditors received a five percent recovery); *In re Robertshaw US Holdings Corp.*, No. 24-90052, 2024 WL 3897812 (Bankr. S.D. Tex. Aug. 16, 2024) (confirming plan where trade creditors received a one hundred percent recovery and other general unsecured creditors received a zero percent to five percent recovery); *In re Charter Commcn's*, 419 B.R. 221 (Bankr. S.D.N.Y. 2009) (confirming plan where trade creditors received a one hundred percent recovery and unsecured note holders received a 32.7 percent recovery).

avoiding the need to unwind and recreate the corporate structure and relationships of the Reorganized Debtors. This Reinstatement does not affect the economic substance of the Plan for the Debtors' stakeholders.

92. With respect to Existing Equity Interests (Class 9), the Debtors formed Class 9 to include Holders of Existing Equity Interests in Accuride Group Holdings, Inc. Existing Equity Interests are classified separately from Intercompany Interests because they reflect the economic entitlements of shareholders that own the Existing Equity Interests in the Debtors' enterprise.[118] In addition, no similarly situated Class will receive more favorable treatment–Holders of Intercompany Interests will not receive a recovery under the Plan and Intercompany Interests may be Reinstated only for administrative convenience in the restructuring process. Thus, the Plan's treatment of Class 9 is proper. No party has asserted otherwise.

93. Finally, with respect to Section 510(b) Claims (Class 6), the Debtors do not believe any Section 510(b) Claims exist. The Debtors formed Class 6 to include Holders of Claims that may be subordinated pursuant to section 510(b) of the Bankruptcy Code. The Plan's treatment of Class 6 is proper because no similarly situated Class will receive more favorable treatment. As there are no Holders of Section 510(b) Claims, no distributions should or will be made to Class 6. No party in interest has asserted otherwise.

94. Thus, the Plan does not discriminate unfairly in contravention of section 1129(b)(1) of the Bankruptcy Code and the Plan may be confirmed notwithstanding the deemed rejection by Classes 5, 6, and 9, and possibly Classes 7 and 8 (as applicable).

---

[118]  *See* Moore Decl. ¶ 47.

2.      **The Plan Is Fair and Equitable (Section 1129(b)(2)(B)(ii)).**

95.     A plan is "fair and equitable" with respect to an impaired class of claims or interests that rejects a plan (or is deemed to reject a plan) if it follows the "absolute priority" rule. This requires either that an impaired rejecting class of claims or interests be paid in full or that a class junior to the impaired accepting class not receive any distribution under a plan on account of its junior claim or interest.[119] Under the Plan, no Holder of a Claim or Interest junior to an Impaired rejecting Class of Claims or Interests will receive any recovery under the Plan on account of such Claim or Interest.[120]

96.     Accordingly, the Plan satisfies the absolute priority rule, does not unfairly discriminate, and is "fair and equitable" with respect to all Impaired Classes of Claims and Interests and satisfies section 1129(b) of the Bankruptcy Code, and no party has asserted otherwise.

P.      **The Plan Complies with the Other Provisions of Section 1129 of the Bankruptcy Code (Section 1129(c)–(e)).**

97.     The Plan satisfies the remaining provisions of section 1129 of the Bankruptcy Code. Section 1129(c), prohibiting Confirmation of multiple plans, is not implicated because there is only one proposed plan of reorganization.[121]

98.     Section 1129(d) of the Bankruptcy Code provides that "on request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of

---

[119] *See* 11 U.S.C. 1129(b)(2); *see also In re Armstrong World Indus.*, 348 B.R. at 114) (stating that the absolute priority rule is embodied in section 1129(b) of the Bankruptcy Code).

[120] *See In re ION Media Networks, Inc.*, 419 B.R. 585, 601 (Bankr. S.D.N.Y. 2009) ("This technical preservation of equity is a means to preserve the corporate structure that does not have any economic substance and that does not enable any junior creditor or interest holder to retain or recover any value under the Plan. The Plan's retention of intercompany equity interests for holding company purposes constitutes a device utilized to allow the Debtors to maintain their organizational structure and avoid the unnecessary cost of having to reconstitute that structure").

[121] *See* 11 U.S.C. § 1129(c).

the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."[122]   The principal purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act.[123]   The Debtors filed the Plan to accomplish their objective of reorganizing their capital structure and maximizing value for all of their stakeholders.[124] Moreover, no governmental unit or any other party has asserted otherwise.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

99.    Lastly, section 1129(e) of the Bankruptcy Code is inapplicable because none of the Debtors' chapter 11 cases is a "small business case."[125]   Thus, the Plan satisfies the Bankruptcy Code's mandatory Confirmation requirements.

III.    **The Plan Complies with the Discretionary Provisions of Section 1123(b) of the Bankruptcy Code.**

A.    **Overview of the Plan's Compliance with Section 1123(b) of the Bankruptcy Code.**

100.    Section 1123(b) of the Bankruptcy Code sets forth various discretionary provisions that may be incorporated into a chapter 11 plan.   Among other things, section 1123(b) of the Bankruptcy Code provides that a plan may:  (a) impair or leave unimpaired any class of claims or interests;  (b) provide for the assumption or rejection of executory contracts and unexpired leases;  (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor

---

[122]   11 U.S.C. § 1129(d).

[123]   *See* Moore Decl. ¶ 44.

[124]   *See id.*

[125]   *See* 11 U.S.C. § 1129(e).  A "small business debtor" cannot be a member "of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,725,625[] (excluding debt owed to 1 or more affiliates or insiders)."  11 U.S.C. § 101(51D)(B).

or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of the Bankruptcy Code.[126]

101.    The Plan is consistent with section 1123(b) of the Bankruptcy Code.  Specifically, under Article III of the Plan, Classes 1, 2, and 3 are Unimpaired because the Plan leaves unaltered the legal, equitable, and contractual rights of the Holders of Claims within such Classes.  On the other hand, Classes 4, 5, 6, 9 and potentially 7 and 8 are Impaired since the Plan modifies the rights of the Holders of Claims and Interests within such Classes as contemplated in section 1123(b)(1) of the Bankruptcy Code.[127]

102.    In addition, and under section 1123(b)(2) of the Bankruptcy Code, Article V.A of the Plan provides for the rejection of all Executory Contracts and Unexpired Leases not previously rejected, assumed, or assumed and assigned under section 365 of the Bankruptcy Code, except to the extent set forth in the Plan.[128]

103.    The Plan provides for a general settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The standards for approval of a settlement under section 1123 of the Bankruptcy Code are generally the same as those under Bankruptcy Rule 9019.[129]  The Third Circuit has provided the following four criteria that a bankruptcy court should consider when approving a settlement pursuant to Bankruptcy Rule 9019:

---

[126]  *See* 11 U.S.C. §§ 1123(b)(1)–(3), (6).

[127]  *See* Plan, Art. III.  Holders of Intercompany Claims and Intercompany Interests in Class 7 and Class 8, respectively, will either be Reinstated and therefore, Unimpaired, or set off, settled, discharged, contributed, cancelled, or released without any distribution on account of such Claims or Equity Interests, and therefore, Impaired, at the option of the Reorganized Debtors.  *Id.*

[128]  *See* Plan, Art. V.A.

[129]  *See In re Coram Healthcare Corp.*, 315 B.R. 321, 334–35 (Bankr. D. Del. 2004).

a.      the probability of success in litigation;

b.      the likely difficulties in collection;

c.      the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and

d.      the paramount interest of creditors.[130]

104.    The Debtors satisfy the above factors, as discussed herein.  The Debtors and their advisors have worked diligently to ensure the Debtors' creditors are receiving the greatest value on their Claims or Interests through the Plan, in the best interest of all stakeholders.  The Plan and Proposed Confirmation Order embody a settlement of Claims and Equity Interests between the Debtors and certain other parties in interest.  If the Debtors were forced to litigate the issues necessary to resolve such Claims and Interests outside of the Plan, such litigation would be costly, protracted, inherently uncertain, and would leave the Debtors and all stakeholders in a substantially worse-off position.  Litigation would prolong the Debtors' bankruptcy process, draining the Debtors' Estates and distracting the Debtors' key personnel and advisors, who would otherwise be focused on implementing the Restructuring Transactions and strengthening the Debtors' go-forward business.  Accordingly, the Plan's discretionary general settlement provisions satisfy the requirements of section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

**B.      The Plan's Release, Exculpation, and Injunction Satisfy Section 1123(b) of the Bankruptcy Code.**

**1.      The Debtor Release in the Plan is Appropriate.**

105.    Section 1123(b)(3)(A) of the Bankruptcy Code provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the

---

[130]    *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (citing *In re Neshaminy Office Bldg. Assocs.,* 62 B.R. 798, 803 (E.D. Pa. 1986)).

estate."[131]    Further, a debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy

Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and

in the best interests of the estate."[132]    Article VIII.C of the Plan provides for releases of the Debtors,

their Estate, and, if applicable, the Reorganized Debtors, of the Claims and Causes of Action set

forth in Article VIII.C of the Plan, including any derivative claims, asserted or assertable on behalf

of the Debtors, their Estate, or the Reorganized Debtors (the "<u>Debtor Release</u>").[133]

106.    Courts in this jurisdiction generally analyze five factors when determining the

propriety of a debtor release, commonly known as the *Zenith* or *Master Mortgage* factors.[134]

Courts typically analyze:

   a.   an identity of interest between the debtor and non debtor such that a suit
        against the non debtor will deplete the estate's resources;

---

[131]    *See Coram*, 315 B.R. at 334–35 ("The standards for approval of settlement under section 1123 [of the Bankruptcy Code] are generally the same as those under [Bankruptcy] Rule 9019."). Generally, courts in the Third Circuit approve a settlement by the debtors if the settlement "exceed[s] the lowest point in the range of reasonableness." *Id.* at 330 (internal citations omitted). *E.g.*, *In re Exaeris, Inc.*, 380 B.R. 741, 746–47 (Bankr. D. Del. 2008); *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (stating that settlement must be "within the reasonable range of litigation possibilities") (internal quotation marks omitted).

[132]    *In re Spansion, Inc.*, 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Wash. Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'") (internal quotation marks omitted). *See also In re WCI Cable, Inc.*, 282 B.R. 457, 469 (Bankr. D. Or. 2002) ("a chapter 11 plan may provide for the settlement of any claim belonging to the debtor or to the estate").

[133]    The Released Parties include each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Reorganized Debtor; (c) each Holder of a Prepetition First Lien Claim; (d) each DIP Lender and Holder of a DIP Claim; (e) each Agent; (f) the Sponsor; (g) the Committee and each of its members, solely in their respective capacities as such; (h) each Releasing Party; (i) each current and former Affiliate of each Entity in clauses (a) through the following clause (j); (j) each Related Party of each Entity in clauses (a) through the preceding clause (i); *provided* that in each case, but subject to subpart (g) hereof, an Entity shall not be a Released Party if it:  (x) elects not to opt in to the releases described in <u>Article VIII.D</u> of this Plan; (y) timely objects to the releases contained in <u>Article VIII.D</u> of this Plan and such objection is not resolved before Confirmation; or (z) is AWEA or any of its direct or indirect subsidiaries; *provided*, *further*, that in each case, an Entity shall not be a Released Party to the extent of any Antidumping Claims the Debtors hold against such Entity.

[134]    *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (citing *In re Zenith Elecs. Corp.*, 241 B.R. 92, 105 (Bankr. D. Del. 1999)); *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930, 937 (Bankr. W.D. Mo. 1994).

b. a substantial contribution to the plan by the non debtor;

c. the necessity of the release to the reorganization;

d. the overwhelming acceptance of the plan and release by creditors and interest holders; and.

e. the payment of all or substantially all of the claims of the creditors and interest holders under the plan. [135]

107.    These factors are "neither exclusive nor conjunctive requirements" but rather serve as guidance to courts in determining fairness of a debtor's releases. [136]

108.    The Debtor Release meets the applicable standard because they are fair, reasonable, and in the best interests of the Debtors' Estate.  As described in the Moore Declaration, [137] and as an analysis of the *Master Mortgage* factors demonstrates, the Debtor Release embodied in Article VIII. C of the Plan should be approved.

- ***First***, an identity of interest exists between the Debtors and the Released Parties.  Each of the Released Parties, as a stakeholder and critical participant in the Plan process, shares a common goal with the Debtors in seeing the Plan succeed and would have been unlikely to participate in the negotiations and compromises that led to the ultimate formation of the Plan without the Debtor Release.  Like the Debtors, these parties seek to confirm the Plan and implement the transaction. [138]  Moreover, with respect to certain of the releases—*e.g.*, those releasing the Debtors' current and former directors, officers, affiliates, and principals—there is a clear identity of interest supporting the release because the Debtors will assume certain indemnification obligations under the Plan that will be honored by the Reorganized Debtors. [139]  Thus, a lawsuit commenced by the Debtors (or derivatively on

---

[135]    *See In re Washington Mut., Inc.*, 442 B.R. at 346 (citing *In re Zenith Elecs. Corp.*, 241 B.R. at 110 and *In re Master Mortg.*, 168 B.R. at 937).

[136]    *Id.* (citing *In re Master Mortg.*, 168 B.R. at 935).

[137]    Moore Decl. ¶¶ 52–58.

[138]    *See In re Abeinsa Holding, Inc.*, 562 B.R. 265, 284 (Bankr. D. Del. 2016) (finding that "there is an identity of interest between the Debtors and the released parties arising out the shared common goal of confirming and implementing the Plan"); *see also Zenith*, 241 B.R. at 110 (concluding that certain releasees who "were instrumental in formulating the Plan" shared an identity of interest with the debtor "in seeing that the Plan succeed and the company reorganize").

[139]    *See* Plan Art. V.E; *cf.  In re Indianapolis Downs, LLC*, 486 B.R. at 303 ("An identity of interest exists when, among other things, the debtor has a duty to indemnify the nondebtor receiving the release").

behalf of the Debtors) against certain individuals would effectively be a lawsuit against the Reorganized Debtors themselves.

- **Second**, substantial contributions have been made by the Released Parties. As Delaware bankruptcy courts have recognized, a wide variety of acts may illustrate a substantial contribution to a debtor's chapter 11 case.[140] The Released Parties played an integral role in the formation of the Plan and have expended significant time and resources analyzing and negotiating the issues present in these chapter 11 cases to reach a value-maximizing chapter 11 plan.[141] Here, the Released Parties have also sacrificed material economic interests to ensure the viability of the Plan.[142] The value contributed by the Released Parties is certainly substantial. Without the contributions of the Released Parties, the Plan and the transaction contemplated therein would not be possible.

- **Third**, the Debtor Release is essential to the successful resolution of the chapter 11 cases because it constitutes an integral term of the Plan. Indeed, absent the Debtor Release, it is highly unlikely the Released Parties would have agreed to support the Plan and the Restructuring Transactions contemplated therein.[143] As described above, each of the Released Parties contributed substantial value to these chapter 11 cases and did so with the understanding that they would receive releases from the Debtors. In the absence of these parties' support, the Debtors would not be in a position to confirm the Plan and emerge from chapter 11. The Debtor Release, therefore, is essential to the successful resolution of these chapter 11 cases.

- **Fourth**, no party in interest has contested the Debtor Release of any hypothetical claims, and as evidenced by the Voting Report and noted herein, parties voting in Class 4 have **unanimously** voted to approve the Plan. Given the critical nature of the Debtor Release and the Plan's overall support, the Debtors submit that the releases are proper.

- **Fifth**, the Plan maximizes the value of the Debtors' assets and the distribution of available proceeds to creditors.

109. Further, as described in the Stenger Declaration, the Debtors' Special Committee, with the assistance of Quinn Emanuel Urquhart & Sullivan, LLP as independent legal counsel

---

[140]  *See id.* at 304 (finding that the non-debtor party had substantially contributed by performing services for the debtors post-petition without receiving compensation); *In re Wash. Mut., Inc.*, 442 B.R. at 347 (finding substantial contribution required the contribution of "cash or anything else of a tangible value to the [chapter 11 plan] or to creditors"); *In re Zenith Elecs. Corp.*, 241 B.R. at 111 (finding that prepetition contribution of work in negotiating a plan constituted adequate consideration for debtor's release).

[141]  Moore Decl. ¶ 53.

[142]  Moore Decl. ¶ 54.

[143]  *Id.*

("Quinn Emanuel"), conducted an independent investigation into whether the Debtors hold any viable claims and causes of action against any of the Related Parties (the "Investigation").

110.    Quinn Emanuel undertook extensive and expedited discovery of the Debtors and the Related Parties.[144]  Quinn Emanuel propounded a total of 43 requests for production on the Debtors and Crestview, and received over 44,000 documents in response.[145]  Quinn Emanuel also conducted six interviews with the Debtors' directors, officers, and senior management, and Crestview-appointed members of the Boards.[146]  From the review and analysis of those documents, advisors to the Special Committee produced an in-depth investigation report, which was reviewed by the Special Committee.[147]  Quinn Emanuel delivered an oral presentation in connection with the Investigation Report to the Special Committee, at which time the Special Committee asked questions and discussed Quinn Emanuel's findings.[148]

111.    Accordingly, for the reasons set forth above, and as supported by the Moore and Stenger Declarations, each of the *Master Mortgage* factors supports approval of the Debtor Release.  Thus, the Bankruptcy Court should approve the Debtor Release in the Plan.

>    ### 2.    The Third-Party Release is Consensual and Appropriate and Should be Approved.

112.    In addition to the Debtor Release, the Plan provides for releases by certain Holders of Claims and Interests.  Specifically, Article VIII.D of the Plan provides that each Releasing Party

---

[144] *See* Stenger Decl. ¶ 10.  There was no formal vote by the Special Committee to approve the Debtor Release. The Special Committee authorized filing of the Plan, subject to the investigation.  After the investigation concluded there were no colorable claims, the mechanic in the Plan flips to a version of the Plan that still has the releases but no longer has the "subject to investigation" language.  *See* Disclosure Statement, Art. IX.A.15.

[145] *See id.*

[146] *See id.* at ¶ 11.

[147] *See id.* at ¶ 14 and 15.

[148] *See id.*

shall release any and all Claims and Causes of Action such parties could assert against the Released

Parties (the "Third-Party Release" and together with the Debtor Release, the "Releases").   The

Third-Party Release is consensual and integral to the Plan and should therefore be approved.

113.    Numerous courts have recognized that a chapter 11 plan may include a release of

non-debtors by other non-debtors when such release is consensual.[149]  Consensual releases are

permissible on the basis of general principles of contract law.[150]  Courts have also held that an

"affirmative agreement" from an affected creditor will render a release consensual.[151]

114.    Approval of the Third-Party Release under the circumstances of these chapter 11

cases is appropriate because they are not binding on any non-consenting parties.  The Third-Party

Release is generally provided by parties participating in the formulation and negotiation of the

Plan or to the extent a party affirmatively opts in to the release.  Thus, the only parties providing

the Third-Party Release are creditors that have affirmatively acted, or otherwise agreed, to such

releases.  All parties had ample opportunity to evaluate and opt in to the Third-Party Release.  The

Disclosure Statement, the Ballots, the Confirmation Notice, the Opt-In Forms, and Notice of

Confirmation Order (as defined in the Proposed Confirmation Order) each provide recipients with

timely, sufficient, appropriate and adequate notice of the Third-Party Release.

115.    The circumstances of these chapter 11 cases warrant the Third-Party Release

because it is critical to the success of the Plan, it is fair, and it is appropriate.  Without the efforts

of the Released Parties in providing material concessions, benefits, and commitments to the

---

[149]    *See, e.g.*, *Indianapolis Downs*, 486 B.R. at 305 (collecting cases); *Spansion*, 426 B.R. at 144 (stating that "a third party release [sic] may be included in a plan if the release is consensual").

[150]    *Coram*, 315 B.R. at 336.

[151]    *See In re Zenith*, 241 B.R. at 111.

Debtors, including providing DIP financing and consenting to the use of cash collateral, and actively participating in Plan negotiations, the Debtors would not have been able to navigate the restructuring process a implement the value-maximizing equitization reorganization in the Plan for the benefit of all stakeholders.[152]  The Released Parties have been instrumental in supporting these chapter 11 cases and facilitating a smooth administration thereof.  Finally, throughout the entire case and all these negotiations, the Debtors' directors and officers steadfastly maintained their duties to maximize value for the benefit of all stakeholders, investing countless hours both pre- and post- petition.[153]

116.    115.    Accordingly, for the reasons set forth above, the Third-Party Release is an integral and necessary part of the Plan and is consensual, and therefore should be approved.

### 3.    The Exculpation Provision is Appropriate.

117.    Article VIII.E of the Plan provides that each Exculpated Party[154] shall be exculpated to the fullest extent permissible under applicable law from any Cause of Action arising out of acts or omissions in connection with these chapter 11 cases and certain related transactions, except for acts or omissions that are found to have been the product of actual fraud, willful misconduct, or gross negligence.[155]  The exculpation provision is intended to prevent collateral attacks against estate fiduciaries that have acted in good faith to help facilitate the Debtors' restructuring.  The

---

[152]  *See* Moore Decl. ¶ 58.

[153]  *See id.*

[154]  Exculpated Parties include collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Committee and each of its members, solely in their respective capacities as such; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), their respective current and former directors, limited liability company managers, officers, and attorneys, financial advisors, or other professionals that were retained during any portion of the chapter 11 cases.

[155]  Plan, Art. VIII.E.

exculpation provision is an integral part of the Plan and otherwise satisfies the governing standards in the Third Circuit.  This provision provides necessary and customary protections to estate fiduciaries whose efforts were and continue to be vital to implementing the Plan.

118.    In the Third Circuit, Courts evaluate the appropriateness of exculpation provisions based on a number of factors, including whether the plan was proposed in good faith, whether liability is limited, and whether the exculpation provision was necessary for plan negotiations.[156] Exculpation provisions that are limited to claims not involving a criminal act, actual fraud, willful misconduct, or gross negligence, are customary and generally approved in this district under appropriate circumstances.[157]  Unlike third-party releases, exculpation provisions do not affect the liability of third parties *per se* but rather set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an Exculpated Party for acts arising out of the Debtors' restructuring.[158]  Exculpation provisions for parties participating in the Plan

---

[156]  *See In re Congoleum Corp.,* 362 B.R. 167, 195-97 (Bankr. D.N.J. 2007) (evaluating the appropriateness of the plan's exculpation provisions based on whether the parties played a significant role in the negotiations that led to the plan and whether the exculpation is necessary to the plan).

[157]  *See In re Wash. Mut., Inc.,* 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the debtors' directors and officers" was appropriate); *In re BlockFi Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023) (confirming plan where exculpation provision covered the debtors and wind down debtors, the creditors' committee, and related parties, including current and former control persons and professionals); *In re Bed Bath & Beyond Inc.,* No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023) (same).

[158]  *See In re PWS Holding Corp.,* 228 F.3d 224, 245 (3d Cir. 2000) (finding that an exculpation provision "is apparently a commonplace provision in Chapter 11 plans, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Premier Int'l. Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *10 (Bankr. D. Del. Apr. 29, 2010) (approving a similar exculpation provision as that provided for under the Plan); *In re Sponsion, Inc.,* No. 09-10690 (KJC), 2010 WL 2905001, at *16 (Bankr. D. Del. 2010) (same).

process is appropriate where Plan negotiations could not have occurred without protection from liability.[159]

119.    Moreover, the exculpation provision and the liability standard it sets represent a conclusion of law that flows logically from certain findings of fact that the Bankruptcy Court must reach in confirming the Plan as it relates to the Debtors.  As discussed above, the Bankruptcy Court must find, under section 1129(a)(2), that the Debtors have complied with the applicable provisions of the Bankruptcy Code.  Additionally, the Bankruptcy Court must find, under section 1129(a)(3), that the Plan has been proposed in good faith and not by any means forbidden by law.  These findings apply to the Debtors and, by extension, to the Debtors' officers, directors, employees, and professionals.  Further, these findings imply that the Plan was negotiated at arm's-length and in good faith.  Where such findings are made, parties who have been actively involved in such negotiations should be protected from collateral attack.  Ultimately, the exculpation provision provides protection to those parties that worked hand-in-hand with the Debtors and were instrumental in assuring the success of the Debtors' restructuring.

120.    Here, the Debtors and their officers, directors, and professionals actively negotiated with Holders of Claims and Interests across the Debtors' capital structure in connection with the Plan and these chapter 11 cases.  Such negotiations were extensive and the resulting agreements were implemented in good faith with a high degree of transparency.[160]  As a result, the Plan enjoys unanimous support from the voting Holders of Claims.[161]  The Exculpated Parties played a critical

---

[159]    *In re Aegean Marine Petroleum Network, Inc.,* 599 B.R. 717, 721 (Bankr. S.D.N.Y. 2019) ("I believe that an appropriate exculpation provision should say that it bars claims against the exculpated parties based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court.").

[160]    *See* Moore Decl. ¶ 63.

[161]    *See, e.g.*, Voting Report, <u>Exhibit A</u>.

role in negotiating, formulating, and implementing the Disclosure Statement, the Plan, and related documents in furtherance of the Restructuring Transactions.[162]   Accordingly, the Bankruptcy Court's findings of good faith vis-à-vis the Debtors' chapter 11 cases should also extend to the Exculpated Parties.  In short, the exculpation provision represents an integral piece of the overall settlement embodied in the Plan and is the product of good-faith, arm's-length negotiations, and significant sacrifice by the Exculpated Parties.

121.    Under the circumstances of these chapter 11 cases, it is appropriate for the Bankruptcy Court to approve the exculpation provision and to find that the Exculpated Parties have acted in good faith and in compliance with the law.[163]   No party has asserted otherwise.

**4.      The Injunction Provision is Appropriate.**

122.    The injunction provision set forth in Article VIII.F of the Plan merely implements the Plan's release and exculpation provisions, in part, by enjoining entities from commencing or maintaining any action against the Exculpated Parties, or the Released Parties on account of or in connection with or with respect to any such claims or interests released or subject to exculpation. Thus, the injunction provision is a key provision of the Plan because it enforces the release and exculpation provisions that are centrally important to the Plan.

123.    Accordingly, to the extent the Bankruptcy Court finds that the exculpation and release provisions are appropriate, the Debtors respectfully submit that the Injunction Provision must also be appropriate.

---

[162]   *See*, *In re Verso Corp.*, No. 16-10163 (KG), Hr'g Tr. 58:18–19 (Bankr. D. Del. June 23, 2016) ("[T]he debtors did not do this alone; they did it with the help of many others.").

[163]   *See In re PWS Holding*, 228 F.3d at 246–47 (approving plan exculpation provision exception for willful misconduct and gross negligence); *In re Indianapolis Downs*, 486 B.R. at 306 (same).

**C.      The Plan Complies with Provisions of Section 1123(d) of the Bankruptcy Code.**

124.     Section 1123(d) of the Bankruptcy Code provides that "if it is proposed in a plan to cure a default the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[164]

125.     The Plan complies with section 1123(d) of the Bankruptcy Code.  The Plan provides for the satisfaction of monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan by payment of the default amount, if any, on the Effective Date or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure costs that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court by the applicable Assumption Objection Deadline or any other deadline that may be set by the Bankruptcy Court.[165]

**IV.    Modifications to the Plan Do Not Require Resolicitation.**

126.     Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before Confirmation as long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code.[166]  Further, when the proponent of a plan files the plan with modifications with the court, the plan as modified becomes the plan.  Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who have previously accepted the plan if the court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor

---

[164]   11 U.S.C. § 1123(d).

[165]   *See* Plan, Art. V.D.

[166]   *See* 11 U.S.C. § 1127(a).

or the interest of any equity security holder.  Interpreting Bankruptcy Rule 3019, courts have held that a proposed modification to a previously accepted plan will be deemed accepted where the proposed modification is not material or does not adversely affect the way creditors and stakeholders are treated.[167]  Bankruptcy Rule 3019 allows a creditor that is negatively impacted by a change to accept the change in writing.

127.    The Debtors made certain modifications reflected in the Plan (the "Modifications"). The Modifications are: (a) immaterial or technical clarifications; (b) material but implemented with the consent of the applicable Holders of Claims; or (c) modifications that resolve informal comments or objections to the Plan.  Importantly, All Holders of Claims in the Voting Class are receiving the same or better recovery as contemplated under the original Plan [Docket No. 213] unless they have voluntarily elected otherwise.  Thus, the Modifications comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Accordingly, the Debtors submit that no additional solicitation or disclosure is required on account of the modifications, and that such modifications should be deemed accepted by all creditors that previously accepted the Plan.  No party has asserted otherwise.

## WAIVER OF BANKRUPTCY RULE 3020(E)

128.    Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the Court orders otherwise."[168] Bankruptcy Rules 6004(h) and 6006(d) provide similar stays to orders authorizing the use, sale, or

---

[167]    *See, e.g., In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988); *see also In re Gen. Wireless Operations Inc.*, 2017 WL 5461361, at *4 (Bankr. D. Del. Oct. 26, 2017) (finding that additional disclosure was not required where modifications did not "materially and adversely change the treatment of any Claims or Interests"); *In re Nat'l Truck Funding LLC*, 588 B.R. 175, 178 (Bankr. S.D. Miss. 2018) ("The disclosure requirements under § 1125 apply to a modified plan only if the modification is material").

[168]    *See* Bankruptcy Rule 3020(e).

lease of property (other than cash collateral) and orders authorizing a debtor to assign an executory contract or unexpired lease under section 365(f) of the Bankruptcy Code.  Each rule also permits modification of the imposed stay upon court order.

129.    To implement the Plan, the Debtors seek a waiver of the fourteen-day stay of an order confirming a chapter 11 plan under Bankruptcy Rule 3020(e).  Given the complexity of the Plan and the various transactions implicated by the Plan, the Debtors may take certain steps to effectuate the Plan in anticipation of and to facilitate the occurrence of the Effective Date so that the Effective Date can occur promptly.  Additionally, each day the Debtors remain in chapter 11 they incur significant administrative and professional costs.  Therefore, good cause exists to waive any stay imposed by the Bankruptcy Rules so that the Proposed Confirmation Order may be effective immediately upon its entry.

## CONCLUSION

130.    For all of the reasons set forth herein, in the Declarations, and as will be further shown at the Combined Hearing, the Debtors respectfully request that the Bankruptcy Court approve the Disclosure Statement on a final basis and confirm the Plan as fully satisfying all of the applicable requirements of the Bankruptcy Code by entering the Proposed Confirmation Order, and granting such other and further relief as is just and proper.

Dated: February 10, 2025
Wilmington, Delaware

*/s/ Kenneth J. Enos*
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Jared W. Kochenash (Del. Bar. No. 6557)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:          jbarry@ycst.com
                    kenos@ycst.com
                    jkochenash@ycst.com

-and-

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Alexander D. McCammon (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:          ryan.bennett@kirkland.com
                    alex.mccammon@kirkland.com

-and-

Derek I. Hunter (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:          derek.hunter@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*